UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

SIDLEY HOLDING CORP.,

                                  Plaintiff,

                                                  Index No. 08-2513 (WHP)

         – against –

MORTON RUDERMAN,

                                  Defendant.

------------------------------------------------------------------ X

## AFFIDAVIT IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT

STATE OF NEW YORK     }
                           ss.:
COUNTY OF DUTCHESS   }

        Richard Levine, being duly sworn, deposes and says:

        1.       I am employed by plaintiff Sidley Holding Corp. ("**Sidley**") as managing agent of 110-112 East Fordham Road, Bronx, New York (the "**Building**").  As such, I maintain and am fully familiar with the books and records of Sidley pertaining to the facts set forth herein.  I have personal knowledge of the facts and circumstances set forth below and submit this affidavit in support of Sidley's motion for an order granting summary judgment in its favor.[1]

        2.       Sidley is a New York corporation (**Exhibit C**).

        3.       Sidley is the owner and landlord of the Building (**Exhibit D**).

        4.       Pursuant to an Agreement of Lease made as of May 1, 1999 (the "**Lease**") (which Lease incorporates that certain Agreement of Lease made as of August 10, 1998 between Sidley and a former tenant)(**Exhibit E**), Sidley is the landlord and Three S's and an R, LLC ("**Tenant**")

---

[1]     Copies of Sidley's complaint and Ruderman's answer thereto are annexed as **Exhibit A** and **Exhibit B**.

was the tenant of commercial space on portions of the ground floor, first floor and mezzanine levels of the Building (as more particularly described in the Lease, the "**Premises**"). The Lease was for a term of approximately nine years, expiring on August 9, 2008.

5.      As a material inducement to Plaintiff to enter into the Lease, and for other good and valuable consideration, by Guaranty dated as of May 1, 1999 (the "**Guaranty**," **Exhibit F**), defendant Morton Ruderman ("**Ruderman**") guaranteed the payment of any and all Base Rent, Added Rent (as those terms are defined in the Lease) and additional rent (collectively, "**Rent**") due under the Lease.

6.      Sidley rendered monthly statements for Rent to Tenant throughout the term of the Lease. (*See*, e.g., **Exhibit G**). Each month, the statements were sent to Tenant care of Ruderman at a facsimile number designated by Ruderman.

7.      By undated Consent to Sublease, Sidley consented to a sublease of the Premises to Statewide Management at Fordham Road, Inc. d/b/a Pizza Hut ("**Statewide Management**") and Laughing Party Co., LLC ("**Laughing Party**"). *See* **Exhibit H**. Upon information and belief, Statewide Management was wholly owned by Ruderman. Pursuant to the terms of the Sidley's consent, Tenant remained liable for the payment of all rents due under the Lease. **Exhibit H, ¶ 2.**

8.      In or about 2002, Tenant requested Sidley's consent to an assignment of the Lease to Goda Restaurants Corp. a/k/a Goda Restaurant Corp. d/b/a Pizza Hut ("**Goda Restaurant**"). As permitted under the Lease, the assignment request was denied.

9.      Upon information and belief, Statewide Management (the permitted subtenant) was dissolved by proclamation of the Secretary of State published on September 25, 2002 (**Exhibit I**). Nonetheless, Goda Restaurant apparently occupied the space with the knowledge

and consent of Tenant and Ruderman. Sidley was unaware that Goda Restaurant claimed any independent right of occupancy until after Sidley commenced eviction proceedings, as discussed below.

10    In 2007, Tenant defaulted under the Lease by failing to timely pay Rent from and after October 1, 2007. As a result, Sidley served upon Tenant a notice to cure dated December 4, 2007 (the "**Cure Notice**," **Exhibit J**) demanding payment of $64,251.29 on or before December 17, 2007 (the "**Cure Date**"). The Cure Notice advised Tenant that Sidley would serve a notice of cancellation thereby terminating the Lease in the event Tenant failed to timely cure. Neither Tenant nor Ruderman disputed the amount demanded in the Cure Notice.

11    Tenant failed to cure its default on or before the Cure Date. Accordingly, Sidley served upon Tenant a notice of termination dated December 20, 2007 (the "**Termination Notice**," **Exhibit K**) advising Tenant of Sidley's intention to terminate the Lease as of December 28, 2007 (the "**Termination Date**").

12    Tenant and its subtenants failed to vacate the Premises on or before the Termination Date. Accordingly, Sidley commenced a holdover proceeding in the Civil Court of the City of New York, County of Bronx. *See* accompanying affidavit of Heath Kushnick sworn to July 31, 2008 ("**Kushnick Aff.**"); **Exhibit L**. On or about June 24, 2008, Tenant, Goda Restaurant and all other occupants were evicted from the Premises by a New York City Marshall.

13    Sidley commenced this action in March 2008 to recover all amounts owed to it under the Lease and Guaranty, including its attorneys' fees incurred.

14    The total amount due Sidley through July 31, 2008 is $224,645.40 plus attorneys' fees and costs, none of which has been paid by Tenant or Ruderman (*see* **Exhibit O**) Copies of

monthly rent statements from October 1, 2007 through July 31, 2008 are collectively annexed hereto as **Exhibit G**. Ruderman has retained these statements but never objected to the amounts stated therein. In fact, until interposing his answer herein, Ruderman did not object to any statement of arrears since the time Tenant defaulted in October 2007.

WHEREFORE, Sidley respectfully requests that its motion be granted in its entirety.

RICHARD LEVINE

Sworn to before me this
3/ day of July, 2008.

Notary Public

HEATH B. KUSHNICK
Notary Public, State of New York
No. 02KU6016400
Qualified in New York County
Commission Expires December 27, 20 *10*

# EXHIBIT A



JS 44C/SDNY
REV. 12/2005

*Judge Pauley*

**CIVIL COVER SHEET**   08 CV 2513   FILE COPY

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| SIDLEY HOLDING CORP. | MORTON RUDERMAN |

MAR 12 2008

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Heath B. Kushnick, Esq. 212 801-9200<br>Greenberg Traurig, LLP,<br>200 Park Avenue, New York, New York 10166 | MAR 2<br>CASHIERS |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

This is an action for breach of contract. This Court has jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1).

Has this or a similar case been previously filed in SDNY at any time? No [X] Yes? [ ] Judge Previously Assigned

If yes, was this case Vol.[ ] Invol. [ ] Dismissed. No [ ] Yes [ ] If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*   NATURE OF SUIT

**TORTS**

**CONTRACT**

[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**

[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**

[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**

[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**

[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**

[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**

[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**

[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**

[ ] 861 MIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**

[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

**OTHER STATUTES**

[ ] 400 STATE REAPPORTIONMEN
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDI
[ ] 490 CABLE/SATELLITE
[ ] 810 SELECTIVE SERVIC
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE AC
[ ] 892 ECONOMIC STABILIZATION AC
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL AC TO JUSTICE
[ ] 950 CONSTITUTIONALI OF STATE STATUT
[ ] 890 OTHER STATUTOR ACTIONS

**REAL PROPERTY**

[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[x] 290 ALL OTHER REAL PROPERTY

**CIVIL RIGHTS**

[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**

[ ] 510 MOTIONS TO VACATE SENTENCE 20 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

*ACTIONS UNDER STATUTES*

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ 127,867.83 OTHER _____

*Check YES only if demanded in complaint*
JURY DEMAND: [ ] YES [X] NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.
IF SO, STATE:

JUDGE _____ DOCKET NUMBER _____

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

*(PLACE AN  x  IN ONE BOX ONLY)* **ORIGIN**

[X] 1 Original Proceeding  [ ] 2a. Removed from State Court  [ ] 3 Remanded from Appellate Court  [ ] 4 Reinstated or Reopened  [ ] 5 Transferred from (Specify District)  [ ] 6 Multidistrict Litigation  [ ] 7 Appeal to Dist Judge from Magistrate Jud Judgment

[ ] 2b. Removed from State Court AND at least one party is a pro se litigant

*(PLACE AN  x  IN ONE BOX ONLY)* **BASIS OF JURISDICTION**   *IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1332, 1441)*

[ ] 1 U.S. PLAINTIFF   [ ] 2 U.S. DEFENDANT   [ ] 3 FEDERAL QUESTION (U.S. NOT A PARTY)   [X] 4 DIVERSITY

## CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [X] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [X] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

**PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)**

Sidley Holding Corp. c/o
Greenberg traurig, LLP
200 Park Avenue, 38th Floor
New York, New York 10166
Attn: Heath B. Kushnick, Esq.

New York County

**DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)**

Morton Ruderman
50 Salem Street
Lynnfield, MA 01940

Essex County

**DEFENDANT(S) ADDRESS UNKNOWN**
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   [ ] WHITE PLAINS   [X] FOLEY SQUARE
(DO NOT check either box if this a PRISONER PETITION.)

DATE 3/12/08   SIGNATURE OF ATTORNEY OF RECORD   Heath B. Kushnick   HK - 1101

RECEIPT #

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[X] YES (DATE ADMITTED Mo. _____ Yr. _____ )
Attorney Bar Code #

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge **MAG. DOLINGER** _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

FILE COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK Judge Pauley

------------------------------------------------------------------ X

SIDLEY HOLDING CORP.,

                                                    **COMPLAINT**

                        Plaintiff,

            – against –                    08 CV 2513

MORTON RUDERMAN,

                        Defendant.

                                           MAR 12 2008
                                           U.S.D.C. S.D. N.Y.
                                           CASHIERS

------------------------------------------------------------------ X

## PRELIMINARY STATEMENT

1.      Plaintiff, Sidley Holding Corp. ("Plaintiff"), brings this action to recover rent and additional from defendant Morton Ruderman ("Defendant"), the guarantor of a commercial lease agreement by and between Plaintiff, as landlord, and non-party Three S's and an R, LLC ("Three S's"), as tenant.

## PARTIES

2.      Plaintiff is a domestic corporation.

3.      Upon information and belief, Defendant is a natural person residing in the City of Lynnfield, County of Essex, State of Massachusetts.

4.      Upon information and belief, non-party Three S's is a domestic limited liability company.

5.      Plaintiff is the owner and landlord of the building located 110-112 East Fordham Road, Bronx, New York 10468 (the "Building").

6.      Three S's was a tenant of commercial space (the "Premises") in the Building pursuant to a lease that was heretofore terminated as a result of Three S's default in the payment of rent.

7.    Upon Information and belief, Three S's and/or individuals or entities in possession of the Premises with the permission of the Three S's, remain in possession of the Premises to date and operate a Pizza Hut restaurant therefrom.

8.    Defendant is the personal guarantor of Three S's obligations under the Lease.

## JURISDICTION

9.    This Court has jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1), in that Plaintiff and Defendant are citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.    Venue is proper under 28 U.S.C. § 1391(a)(2) since the property that is the subject of this action is situated in this judicial district.

## FACTUAL ALLEGATIONS

11.    By Agreement of Lease dated May 1, 1999 (the "Lease") between Plaintiff, as landlord, and Three S's, as tenant, Three S's leased the Premises from Plaintiff.

12.    As a material inducement to Plaintiff to enter into the Lease, and for other good and valuable consideration, by Guaranty dated as of May 1, 1999 (the "Guaranty"), Defendant guaranteed the payment of any and all Base Rent, Added Rent (as such terms are defined in the Lease) and all other sums due under the Lease.

13.    As a result of Three S's default in the payment of rent, Plaintiff served a notice (the "Notice to Cure") upon Three S's, requiring Three S's to cure its default on or before December 17, 2007 (the "Cure Date").

14.    As a result of Three S's failure to cure the defaults alleged in the Notice to Cure on or before the Cure Date, Plaintiff served upon Three S's a Notice of Termination advising

Three S's of Plaintiff's intention to terminate the Lease as of December 28, 2007 (the "Termination Date").

15.    By reason of Three S's failure to vacate the Premises on or before the Termination Date, Plaintiff commenced a summary holdover proceeding in the Civil Court of the City of New York, County of Bronx, bearing Index No. L&T 900282/08 and said proceeding remains *sub judice*.

16.    Three S's is in default of the Lease for failing to pay Base Rent, Added Rent and other sums due under the Lease during the period from October 1, 2007 through March 7, 2008 in the amount of $127,867.83 (the "Arrears") despite due demand therefor.

17.    Pursuant to the terms of the Guaranty, Defendant is liable to Plaintiff for the payment of all Base Rent, Added Rent and all other sums due to Plaintiff under the Lease including, without limitation, damages as provided at Lease Article 22 and, at Plaintiff's election, a sum equal to two times the Base Rent and additional rent payable during the last month of the term of the Lease as provided in Lease Section 18.04.

18.    Pursuant to the Lease and the Guaranty, Plaintiff is entitled to recover from Defendant all of the attorneys' fees, costs and disbursements incurred by Plaintiff in prosecuting Three S's defaults under the Lease and enforcing its rights under the Guaranty

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

19.    Plaintiff repeats and realleges paragraphs 1 through 18 above as if fully set forth herein.

20.    Defendant is in default of his obligations under the Guaranty for failing and refusing to pay the Arrears to Plaintiff.

21.    As a result of the defaults by Defendant and Three S's, Defendant has incurred damages, the amount of which continues to accrue.

22.    By reason of the foregoing, Plaintiff is entitled to a money judgment against Defendant in the amount of at least $127,867.83, together with such additional amounts as may accrue through and including the date of trial.

## SECOND CAUSE OF ACTION

23.    Plaintiff repeats and realleges paragraphs 1 through 22 above as if fully set forth herein.

24.    Defendant was heretofore notified of the amounts due and owing in connection with the Lease and Guaranty.

25.    Plaintiff's communications and correspondence with Defendant constitute an account stated.

26.    At no time heretofore has Defendant disputed owing the amounts so stated.

27.    Based upon Defendant's failure to dispute the amounts demanded of it, it has accepted and agreed that such amounts are correct and that an account has been stated.

28.    Defendant has waived its right to challenge the amounts for which an account was stated and has ratified that such amounts are due and owing.

29.    By virtue of the foregoing, Plaintiff is entitled to recover of Defendant an amount to be determined by the Court but in no event less than $127,867.83.

## THIRD CAUSE OF ACTION

30.    Plaintiff repeats and realleges paragraphs 1 through 29 above as if fully set forth herein.

4

31.     Pursuant to Section 21.04 and other applicable provisions of the Lease, Three S's is liable for all of Plaintiff's costs, expenses and disbursements, including but not limited to reasonable attorneys' fees, incurred in collecting or endeavoring to collect the rents due under the Lease or enforcing any rights against Three S's under the Lease, and all of said amounts are due as additional rent under the Lease.

32.     Pursuant to Paragraph A and other applicable provisions of the Guaranty, Defendant guaranteed to Plaintiff the full and prompt performance of all of Three S's obligations under the Lease, including but not limited to the payment of attorneys' fees incurred.

33.     Pursuant to Paragraph J and other applicable provisions of the Guaranty, Defendant is liable for all of Plaintiff's costs, expenses and disbursements, including but not limited to reasonable attorneys' fees, incurred as a result of Defendant's default under the Guaranty and in enforcing Plaintiff's rights herein.

34.     Plaintiff has incurred and will continue to incur attorneys' fees, costs and expenses as a result of Three S's defaults and in enforcing its rights under the terms of the Lease and Guaranty.

35.     By reason of the foregoing, Plaintiff is entitled to a money judgment against Defendant in an amount of at least $15,000.00, the precise amount to be determined by the Court.

## RELIEF SOUGHT

**WHEREFORE,** Plaintiff respectfully demands judgment against Defendant as follows:

(a)     on the first cause of action, awarding Plaintiff a money judgment against Defendant in the amount of $127,867.83 together with such additional amounts that accrue through and including the date of trial;

5

(b)     on the second cause of action, awarding Plaintiff a money judgment against Defendant in the amount of $127,867.83 together with such additional amounts that accrue through and including the date of trial;

(c)     on the third cause of action, awarding Plaintiff a money judgment against Defendant in an amount to be determined by the Court for Plaintiff's attorneys' fees, costs and disbursements incurred in enforcing its rights under the Lease and Guaranty;

(d)     awarding Plaintiff interest and costs; and

(e)     granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 12, 2008

GREENBERG TRAURIG, LLP
*Attorneys for Plaintiff*
200 Park Avenue
New York, New York 10166
(212) 801-9200

By: _____
     Heath B. Kushnick (HK1101)
     *KushnickH@GTLaw.com*

6

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIDLEY HOLDING CORP.,

           Plaintiff,

      v.

MORTON RUDERMAN,

           Defendant.

CASE NO. 08-CV-2513 (WHP)

**ANSWER**

MORTON RUDERMAN, by his attorneys, Mitchell Silberberg & Knupp LLP, hereby responds to the Complaint of Sidley Holding Corp. as follows:

1. With respect to paragraph 1 of the Complaint, denies knowledge or information sufficient to form a belief as to truth of the allegations relating to the nature of the action alleged to be brought against Morton Ruderman, and denies the remaining allegations contained therein.

2. Denies knowledge or information sufficient to form a belief as to truth of the allegations contained in paragraphs 2, 5, 9 and 10 of the Complaint.

3. Admits the allegations contained in paragraph 3 of the Complaint.

4. Denies each and every allegation contained in paragraphs 4, 6, 7, 8, 12, 13, 14, 15, 16, 17, 18, 20, 21, 22, 24, 25, 26, 27, 28, 29, 31, 32, 33, 34, and 35 of the Complaint.

5. With respect to paragraph 11 of the Complaint, admits only that there was a document designated "Agreement of Lease" dated May 1, 1999 and refers the Court to the terms and conditions set forth therein for the rights and obligations of

1798527 1

the parties thereto, and denies the remaining allegations contained in paragraph 11 of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

6.    The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

7.    The Plaintiff has prevented the Defendant from mitigating its damages and any liability he might have pursuant to the Guaranty insofar as the Plaintiff has failed and refused to allow the Defendant to provide a tenant who is ready, willing and able to occupy the space in the place and stead of the current sub-tenant.

### THIRD AFFIRMATIVE DEFENSE

8.    The Plaintiff has waived its right to pursue the Defendant on the Guaranty based on the doctrine of equitable estoppel.

### FOURTH AFFIRMATIVE DEFENSE

9.    Plaintiff's claims are barred by the doctrine of laches.

2

17985; 7.1

DATED: New York, New York
April 7, 2008

MITCHELL SILBERBERG & KNUPP LLP

By: _____
Lauren J. Wachtler (LW 4205)
12 East 49th Street, 30th Floor
New York, New York 10017-1028
Telephone: (212) 509-3900
Facsimile: (212) 509-7239
E-mail: ljw@msk.com

Attorneys for Defendant
MORTON RUDERMAN

TO:     Heath B. Kushnick, Esq.
        Greenberg Traurig, LLP
        *Attorneys for Plaintiff*
        200 Park Avenue
        New York, NY 10166
        (212) 801-9200

3

1798527.1

AO 458 (Rev. 10/95)  Appearance

# UNITED STATES DISTRICT COURT

| SOUTHERN | DISTRICT OF | NEW YORK |
|---|---|---|

SIDLEY HOLDING CORP.,

      Plaintiff,

  v.

MORTON RUDERMAN,

      Defendant.

**APPEARANCE**

Case Number: 08-CV-2513

To the Clerk of this court and all parties of record:

      Enter my appearance as counsel in this case for

      DEFENDANT, MORTON RUDERMAN

      I certify that I am admitted to practice in this court.

| 4/8/2008 | _(signature)_ |
|---|---|
| Date | Signature |

LAUREN J. WACHTLER        LW4205
Print Name        Bar Number

MITCHELL SILBERBERG & KNUPP LLP, 12 E. 49TH ST
Address

| NEW YORK | NY | 10017 |
|---|---|---|
| City | State | Zip Code |

| (212) 509-3900 | (212) 509-7239 |
|---|---|
| Phone Number | Fax Number |

# EXHIBIT C

# STATE OF NEW YORK

# DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on January 16, 2008.

Paul LaPointe
Special Deputy Secretary of State

Rev. 06/07

CERTIFICATE OF INCORPORATION

OF

SIDLEY HOLDING CORP.

Pursuant to Article Two of the Stock Corporation Law.

WE, the undersigned, for the purposes of forming a corporation pursuant to Article Two of the Stock Corporation Law of the State of New York, certify:

FIRST:  The corporate name of said corporation shall be SIDLEY HOLDING CORP.

SECOND:  The purposes for which the said corporation is to be formed are:

To take, buy, purchase, exchange, hire, lease or otherwise acquire real estate and property either improved or unimproved, and any interest or right therein, and to own, hold, control, maintain, manage, and develop the same, in any state of the United States.

To erect, construct, maintain, improve, rebuild, enlarge, alter, manage and control directly or through ownership of stock in any corporation, and any and all kinds of buildings, houses, hotels, breweries, stores, offices, warehouses, mills, shops, factories, machinery and plants, and any and all other structures and erections which may at any time be necessary, useful or advantageous in the judgment of the Board of Directors, for the purposes of the corporation.

To sell, manage, improve, develop, assign, transfer, convey, lease, sublease, pledge, or otherwise alienate or dispose of, and to mortgage or otherwise encumber the lands, buildings, real property, chattels, real and other property of the company, real and personal and wheresoever situate, and any and all legal and equitable rights therein.

To purchase, sell, manufacture and deal in building materials, and goods, wares and merchandise and to carry on any other lawful trade or business incident to or proper or useful in connection with the purchase, sale, ownership, construction, maintenance, and management of real property.

To borrow money, with or without guarantee of payment thereof, bonds and mortgages, and other like security and to loan and advance upon mortgages on personal and real property, or on either of them.

To buy, sell and deal in, with or without guarantee of payment thereof, bonds and mortgages, and other like security and other kinds of property, whether real or personal, not prohibited or specially

6337-42-1

excepted by any law, and to do and prosecute any acts and things incident to or proper in connection with the carrying on of the business of this company.

To purchase, acquire, hold, sell, assign, transfer mortgage, pledge, and otherwise dispose of the shares of indebtedness of any corporation, domestic, or foreign, and while the holder thereof, to exercise all the rights and privileges of ownership including the right to vote thereon, and to issue in exchange therefor its own stock, bonds and other obligations.

To purchase, or otherwise acquire, undertake, carry on, improve or develop any and all of the business, good will, assets and liabilities of any person, firm, association or corporation carrying on any kind of business the same as or of a similar nature to that which this corporation is authorized to carry on, pursuant to the provisions of this certificate.

THIRD:  The total number of shares that may be issued by the corporation is two hundred (200) all of which are to be of one class and without par value.

FOURTH:  The capital of the corporation shall be at least equal to the sum of the aggregate par value of all issued shares having par value plus the aggregate amount and consideration received by the corporation for the issuance of shares without par value, plus such amounts, as, from time to time, by resolution of the Board of Directors may be transferred thereto.

FIFTH:  The location of the principal business office of said corporation shall be in the Borough of Bronx, City and State of New York, and that the address of the corporation to whom the Secretary of State shall mail a copy of process in any action or proceeding against the corporation which may be served upon him, is as follows: Harry Kerner, Esq., 33 West 42nd Street, Borough of Manhattan, City of New York.

SIXTH:  The duration of said corporation shall be perpetual.

SEVENTH:  The number of directors of said corporation shall be not less than three (3) and no more than nine (9) and a director need not be a stockholder.

6337-92-2

EIGHTH: The names and post office addresses of the directors of said corporation until the first annual meeting of the stockholders are as follows:

| NAMES | POST OFFICE ADDRESSES |
|-------|----------------------|
| JANET D'ANGELO | 33 West 42nd Street, N. Y. C. |
| HARRY KERNER | 33 West 42nd Street, N. Y. C. |
| SIDNEY PEIIPE | 33 West 42nd Street, N. Y. C. |

NINTH: The names and post office addresses of each subscriber of the certificate of incorporation, and the number of shares which each agrees to take in said corporation are as follows:

| NAMES | POST OFFICE ADDRESSES | NO. OF SHARES |
|-------|----------------------|---------------|
| HARRY KERNER | 33 West 42nd St., N.Y.C. | 1 |
| JANET D'ANGELO | 33 West 42nd St., N.Y.C. | 1 |
| SIDNEY PEIIPE | 33 West 42nd St., N.Y.C. | 1 |

TENTH: That all of the subscribers of the certificate of incorporation are of full age, and at least two-thirds of them are citizens of the United States and all of them are residents of the State of New York, and at least one of the persons named above as a Director is a citizen of the United States and a resident of the State of New York.

ELEVENTH: That the Secretary of State is hereby designated as the agent of the corporation upon whom process in any action or proceeding against it may be served.

TWELFTH: That all of the meetings of the Board of Directors are to be held in the State of New York.

IN WITNESS WHEREOF, we have made, signed, acknowledged and filed this certificate this 3rd day of November, 1944.

_Janet D'Angelo_ L.S.

_Sidney Peiipe_ L.S.

_Harry Kerner_ L.S.

6337-90-3

STATE  OF NEW YORK)
COUNTY OF NEW YORK) ss.::

On this 3rd day of November, 1944, before me
personally came, HARRY KERNER, JANET D'ANGELO, and SIDNEY
PEILTE, to me known and known to me to be the individuals
described in and who executed the foregoing certificate of
incorporation, and they severally before me signed the said
certificate, and acknowledged that they executed the same
for the purposes therein set forth.

SEYMOUR EDMOND MARTINSON
Commissioner of Deeds City of N. Y.
N. Y. Co. Clk's No. 67, Reg. No. 6-M-31
Commission Expires Sept. 21, 1946

Index No. _____ Year. _____

CERTIFICATE OF INCORPORATION

— OF —

SIDLEY HOLDING CORP.

DEPARTMENT OF STATE NEW YORK

FILED NOV 4 — 1944

TAX $ 10

FILING FEE $ 40

BY _____ CASHIER

HARRY KERNER
Attorney for
Office and Post Office Address
33 West 42nd Street
Borough of Manhattan
New York City
Esq.

To
Attorney for

Service of a copy of the within
is hereby admitted.
Dated, , 194
Attorney for

Please take notice that the within is a
copy of a
made and entered in the within entitled
and filed in the office of the
of the
k of
day of , 194
ated. Yours, &c.,

HARRY KERNER
Attorney for
Office and Post Office Address
1 West 42nd Street
ugh of Manhattan
New York City
Esq.

Please take notice that an order
of which the within is a true copy will be
sented for settlement and entry herein to
Justice
Court at
in the City of
day of , 194
o'clock in the forenoon.
, 194
Yours, &c.,

HARRY KERNER
Attorney for
Office and Post Office Address
11 West 42nd Street
ugh of Manhattan
New York City
Esq.

Attorney for

# State of New York
# Department of State } ss:

*I hereby certify, that the Certificate of Incorporation of SIDLEY HOLDING CORP. was filed on 11/04/1944, fixing the duration as perpetual, and that a diligent examination has been made of the Corporate index for documents filed with this Department for a certificate, order, or record of a dissolution, and upon such examination, no such certificate, order or record has been found, and that so far as indicated by the records of this Department, such corporation is an existing corporation.*

***



*Witness my hand and the official seal of the Department of State at the City of Albany, this 12th day of May two thousand and eight.*

Daniel Shapiro
Special Deputy Secretary of State

200805130020 * 30

# EXHIBIT D

**BX-** 34661

# CERTIFIED COPY

## CITY OF NEW YORK
## DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER, BRONX COUNTY

I hereby certify that this is a true copy of the record consisting of _____ 4 _____ pages, if a seal of this Office is embossed (raised).

Dated _1-16-08_

_____
**City Register**

LIBER 1810 PAGE 201

# THIS INDENTURE, made the 13th day of December

nineteen hundred and forty-four, between

## THE GREENWICH SAVINGS BANK,

a corporation organized under the laws of the State of New York, having its principal place of business at 1356 Broadway, in the Borough of Manhattan, City of New York

, party of the first part,

and

## SIBLEY HOLDING CORP.,

a domestic corporation having its principal off
Street, in the Borough of the Bronx, City of Ne

WITNESSETH, that the party of the first part, in consideration of

consideration and the sum of FIVE ($5.00) —————————————— dollars,

lawful money of the United States, paid

by the party of the second part, does hereby grant and release unto the party of the second part,

its successors and assigns forever,

ALL that lot of land with the buildings thereon in the Borough and County of Bronx, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of East Fordham Road, as legally opened, and the easterly side of Morris Avenue, as legally opened; running thence SOUTHERLY, along the easterly side of Morris Avenue, one hundred and six (106) feet to a point where the said side of Morris Avenue is intersected by the northerly line of lot 303 on the map entitled "Map of Building Lots at Fordham, being part of the Farm of Charles Berrian" made by L. J. Olmstead, C. E., dated October 30, 1852 and filed in the office of the Register of the County of Westchester on January 31, 1853 as map number 5, and running thence EASTERLY along said northerly line of said lot 303 on a line which makes an angle on its northerly side with the last mentioned course of 90 degrees fifty-one (51) minutes and forty (40) seconds one hundred and twenty-five (125) feet and eighty hundredths (.80) of a foot to the westerly line of Lot 331 on said map; thence NORTHERLY, at right angles with the last course and along the westerly line of lots 331, 332, 333 and 334 on said map, eighty-seven (87) feet and ninety-three hundredths (.93) of a foot to the southerly side of East One Hundred and Eighty-eighth Street; and thence WESTERLY, along the southerly side of East One Hundred and Eighty-eighth Street and East Fordham Road, one hundred twenty-eight (128) feet and sixty-eight hundredths (.68) of a foot to the point or place of beginning.

SAID PREMISES being now known as and by the Street Numbers 100-112 East Fordham Road.





Subdivision.

The party of the first part, in compliance with Section 14 of the Lien Law, covenants that it will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement, and that it will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

IN WITNESS WHEREOF, the party of the first part has caused its corporate seal to be hereunto affixed and these presents to be signed by its duly authorized officers the day and year first above written.

STATE OF NEW YORK }
COUNTY OF NEW YORK } ss.:

On the 13 day of December , one thousand nine hundred and forty-four before me came Karl Roberts G. ........



# EXHIBIT E

AGREEMENT OF LEASE, made as of May 1, 1999, between SIDLEY HOLDING

CORP., a New York corporation having an office c/o Levine Bros. Management, 47 Winslow

Road, White Plains, New York 10606 ("Landlord") and THREE S's AND AN R, LLC, a

New York limited liability company having an office c/o Mr. Morton Ruderman, Cres

Development Company, 50 Salem Street, Lynnfield, Massachusetts 01940 ("Tenant").

WHEREAS, Landlord, as landlord, and a prior tenant, as tenant, ("Former Tenant")

entered into a lease dated as of August 10, 1998 ("Original Lease"), covering certain "Former

Demised Premises", which shall mean the same as "Demised Premises" is defined in the

Original Lease;

WHEREAS, the Original Lease was clarified by a letter agreement dated as of

February 9, 1999 (with a typed version for clarity dated February 10, 1999, "Amendment")

among Landlord, Former Tenant and the tenant of the space in the "Building" (as defined in

the Former Lease) directly to the west of , and contiguous to, the Former Demised Premises

("Peko Premises"), which Peko Premises is subject to a lease ("Peko Lease") also dated as of

August 10, 1998, between Landlord, as landlord, and Peko Sport Inc., as Tenant ("Peko")

(which Original Lease and Amendment collectively are called ("Former Lease"));

WHEREAS, a portion of the Former Demised Premises was subleased by Former

Tenant, as sublessor, to Fordham Road Lot Stores, Inc., as sublessee, ("Lot Stores") pursuant

to an agreement, included in the Former Lease, whereby, upon the occurrence of certain

"Separability Conditions" (as defined in the Former Lease), such portion so subleased ("Lot

Stores Premises") would become covered by a direct lease relationship between Lot Stores, as

tenant, and Landlord, as landlord, and the Former Demised Premises not covered in the Lot

Stores Premises ("Tenant Premises") would be covered by the terms of the Former Lease

applicable to the Tenant Premises;

C&F&W 236755 01

01/20/99

WHEREAS, Landlord desires to terminate the Former Lease insofar as the Former Tenant is concerned; and

WHEREAS, Landlord and Tenant desire to enter into a new lease agreement between Landlord and Tenant precisely in accordance with all of the terms and conditions of the Former Lease, but covering only the Tenant Premises, which are applicable upon the occurrence of the Separability Conditions, as such terms and conditions are modified and amended by this Lease.

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

I.    Conditions

1.01    As a condition to the continued effectiveness of this Lease, at Tenant's cost and expense, within thirty (30) days following completion of construction work in the Peko Premises, Tenant shall, at its cost and expense, obtain and deliver to Landlord a final, unconditional certificate of occupancy for the Tenant Premises and for the Lot Stores Premises for its current use by Lot Stores or another tenant.

1.02    Landlord shall obtain, or shall have obtained, from the Former Tenant a termination agreement terminating the Former Lease, in form reasonably acceptable to both parties.

II.    Defined Terms, Incorporation of Former Lease and Effective Date

2.01    Terms used in this Lease shall have the same meaning as those in the Former Lease unless otherwise defined herein.

2.02    All of the terms and conditions of the Former Lease (which is attached hereto as Exhibit A), as they apply once the Separability Conditions have been met, are hereby

C&F&W  236755 03

2

05/20/99

incorporated into this Lease, as though Tenant herein were the Tenant therein, and they shall be deemed part of this Lease, except as modified by this Lease.

2.03    The "Effective Date" of this Lease shall be May 1, 1999.

## III.    Modification of Certain Terms

3.01    "Base Rent" shall mean:

- From the Effective Date until the end of the first Rent Year Base Rent shall mean $32,500.00, payable in equal monthly installments of $9,750.00 for May, June and July, 1999 and of $3,250.00 for the installment covering the period from August 1, 1999 to August 10, 1999.

- For the second Rent Year, $97,500.00, payable in equal monthly installments of $9,750.00 for each month, except for the second and seventh months for which no monthly installment shall be payable.

- For the third Rent Year, $120,510.00, payable in equal monthly installments of $10,042.50.

- Thereafter, as provided in the Former Lease.

3.02    "Demised Premises" and "Tenant Premises" shall mean:

That space on the ground floor (sometimes referred to as basement or cellar), first floor and mezzanine level of the Building, as shown on Exhibit "A" attached hereto.

"Guarantor" shall mean:

Morton Ruderman, who shall sign the guaranty attached hereto as Exhibit "B", and whose address is c/o Tenant at the Tenant's address.

"Proportionate Share" shall mean:  24.51%

"Tax Share" shall mean:

C&F&W: 236755.01

3

05/20/99

That percentage from dividing (a) all Base Rent payable by Tenant under the Lease during any Rent Year by (b) the total base or minimum rent, payable by all tenants of the Building (including Tenant) during the same Rent Year (or, if less than all of the first floor of the Building is leased, then the "Fair Market Value", as defined in Section 31.01D hereof, of the balance of the first floor and of the mezzanine in the Building), which as of the Effective Date is 21.56%.

## IV.    Added Rent

4.01    In lieu of payment to Landlord of any sums under Section 11.05(C)(x), while the Demised Premises are subleased to or used by others for the Permitted Use, whether or not any part of the Demised Premises are so subleased or used, Tenant shall pay Landlord, in addition to the Base Rent and other rent under this Lease, for each Rent Year during the Term and any Continuation Term, "Added Rent", which shall mean the sum of $30,000 per annum, which sum shall be pro rated, if less than a full 12 months or a full month is involved. The Added Rent shall be additional rent under the Lease and shall be paid monthly in advance on the first day of each of month, in equal installments of $2,500, except that the first installment of Added Rent shall be paid on or before June 1, 1999.

## V.    Other Modifications

5.01    Section 3.01(D) is modified to change the $32,000 figure to $9,750 and to change the $130,000 figure to $39,000.

5.02    The obligation to pay Taxes for the period from July 1 to December 31, 1998 at the time of signing the Lease was done at the time of signing the Original Lease and is inapplicable to this Lease.

5.03    Tenant represents that separate sprinkler systems for each of the premises in the Building are not required in accordance with applicable laws and codes and that, as such, they will not be installed. Tenant will maintain during the Term and any Continuation Term a service contract for the sprinkler system with a licensed, reputable sprinkler contractor, will cause all repairs and maintenance to be made to the sprinkler system and will make all payments for all of the foregoing, including any water charges therefor. In the event that Tenant is unable to obtain appropriate access to the sprinkler room of the Building located in the basement portion of the Lot Stores Premises, Tenant will either construct a door or other means of access from the Demised Premises to such sprinkler room or obtain from Peko a right, derivative to its right, to obtain such access. At Tenant's request, Landlord shall cooperate reasonably to attempt to obtain other access for Tenant to the sprinkler room if it should become necessary. Tenant will make arrangements for reimbursement from other tenants in the Building of their proportionate share of such costs based upon their respective proportionate shares of Cost of Operation.

5.04    So long as the Demised Premises are used for the Permitted Use (which shall include all or part of play and games, conducting of parties and dispensing and consumption of foods and beverages) and so long as Tenant is not in default under the Lease, then (a) Landlord shall not have the right to require a surrender of the Demised Premises under Section 11.05A or B of the Lease, (b) the number one (1) shall be changed to three (3) in Section 11.05(c)(v) of the Lease, (c) the provisions of Section 11.05(c)(vi) of the Lease shall be inapplicable, (d) as noted in Paragraph 4.01 hereof, the provisions of Section 11.05(c)(x) of the Lease shall be inapplicable, and (e) the provisions of Section 11.05(c)(xiii) and (xiv) of the Lease shall be inapplicable.

5.05    Article 32 shall be inapplicable to the Lease.

C&F&W 236755 01

5

05/20/99

## VI.    Security

6.01    Simultaneous with signing this Lease, Landlord and Former Tenant shall execute a termination agreement applicable to the Former Lease, pursuant to which the cash Security Deposit, with any accrued interest, shall be transferred as the cash Security Deposit under this Lease.

6.02    Simultaneous with the signing of this Lease, Tenant shall cause the letter of credit to be amended so as to change the name of the tenant, whose obligation is thereby secured, to Tenant.

## VII.    Legal Fees

7.01    Simultaneous with signing of this Lease, Tenant shall reimburse Landlord for Landlord's reasonable legal fees incurred in the negotiation and preparation of the Lease, and in prior negotiation among Former Tenant, Peko Sport and Lot Stores of various disputes with those tenants (except Tenant shall only be responsible for 50% of such fees involving disputes between Former Tenant and Peko Sport).

## VIII.   Guaranty and Indemnity

8.01    Simultaneous with signing of this Lease, Tenant shall obtain execution by Morton Ruderman of the guaranty, attached hereto as Exhibit "B".

8.02    Tenant shall and hereby does assume all obligations and liabilities of the Former Tenant to Landlord, if any, under the Former Lease, including, without limitation Article 15, for the period prior to the Effective Date. Landlord represents that it is not aware of any monetary default of the Former Tenant and there are no other defaults, to the extent Landlord

is aware, which would give rise to any right of Landlord to terminate the Lease or to any damages thereunder.

8.03    Tenant shall and will indemnify and hold harmless Landlord, its managing agent, principals, officers, directors, shareholders and members, of and from all claims, damages, suits, liabilities, losses and costs arising from or relating to any bankruptcy or insolvency proceeding or action of, or in any way involving, the Former Tenant, the Guarantor of the Former Lease or any entity related to or controlled by any shareholder of the Former Tenant.

## IX.    Authority to Execute

9.01    Each of Landlord and Tenant represents and warrants to the other that each has full right, power and authority to enter into this Lease, and that the person executing this Lease on its behalf is authorized to do so.

IN WITNESS WHEREOF, the parties have executed this agreement as of May 1, 1999.

TENANT:                                          LANDLORD:

THREE S's AND AN R, LLC                          SIDLEY HOLDING CORP.

By:                                              By:

Its:    Managing Member                          Its:

_O4 - 3467005_
Federal Tax I.D. Number

# NEW YORK UNIFORM ACKNOWLEDGMENT

MA

State of New York    )
                     )ss.:
County of Essex      )

Bruce Gorsky

On the 28 day of May, in the year 1999, before me the undersigned, a notary public in and for said state, personally appeared Morton Ruderman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

# LEASE AGREEMENT

### By and Between

## SIDLEY HOLDING CORP., Landlord

and

## FORMER TENANT, Tenant

Dated: As of August 10, 1998

EXHIBIT A

05/07/99

# TABLE OF CONTENTS

Page

**ARTICLE 1**

Certain Terms ........................................................................................................... 1

**ARTICLE 2**

Demise and Premises ............................................................................................... 3

**ARTICLE 3**

Rent .......................................................................................................................... 4

**ARTICLE 4**

Payment of Taxes, Assessments, Etc. ................................................................... 6

**ARTICLE 5**

Utilities and Services .............................................................................................. 8

**ARTICLE 6**

Use, Rules and Regulations .................................................................................... 8

**ARTICLE 7**

Access ..................................................................................................................... 10

**ARTICLE 8**

Tenant's Work and Tenant's Changes .................................................................. 10

**ARTICLE 9**

Repairs and Maintenance ..................................................................................... 13

**ARTICLE 10**

Insurance ................................................................................................................ 14

**ARTICLE 11**

Assignment, Mortgaging, Subletting ................................................................... 17

**ARTICLE 12**

Subordination, Attornment, Notice to Mortgagee .............................................. 20

**ARTICLE 13**

Costs of Operation ................................................................................................. 22

**ARTICLE 14**

Quiet Enjoyment .................................................................................................... 22

**ARTICLE 15**

Liability, Indemnification and Non-Recourse ..................................................... 23

**ARTICLE 16**

Destruction and Damage ....................................................................................... 24

**ARTICLE 17**

EMINENT DOMAIN; CONDEMNATION.................................................................................... 25

**ARTICLE 18**

SURRENDER ........................................................................................................................... 26

**ARTICLE 19**

BROKERAGE .......................................................................................................................... 27

**ARTICLE 20**

EVENTS OF DEFAULT AND TERMINATION ........................................................................... 27

**ARTICLE 21**

RE-ENTRY BY LANDLORD - CURING TENANT'S DEFAULTS................................................. 29

**ARTICLE 22**

DAMAGES .............................................................................................................................. 30

**ARTICLE 23**

WAIVERS, FAILURE TO ENFORCE TERMS, MODIFICATIONS............................................... 31

**ARTICLE 24**

NOTICES - SERVICE OF PROCESS......................................................................................... 32

**ARTICLE 25**

ESTOPPEL CERTIFICATE, MEMORANDUM ........................................................................... 32

**ARTICLE 26**

NO OTHER REPRESENTATIONS, CONSTRUCTION ............................................................... 33
Governing Law, Notice Prior to Suit...................................................................................... 33

**ARTICLE 27**

PARTIES BOUND ................................................................................................................... 34

**ARTICLE 28**

MISCELLANEOUS PROVISIONS ............................................................................................. 34

**ARTICLE 29**

SECURITY DEPOSIT............................................................................................................... 35

**ARTICLE 30**

SHORING................................................................................................................................ 36

**ARTICLE 31**

EXTENSION OF TERM ........................................................................................................... 36

**ARTICLE 32** ........................................................................................................................... 38

LOT STORES........................................................................................................................... 38

**EXHIBIT A**

FLOOR PLAN(S) OF DEMISED PREMISES............................................................................. 1

**EXHIBIT B** ............................................................................................................................. 1

GUARANTY ............................................................................................................................ 1

C&F&W 217738 01

# A

Access ........................................................................................................................... 10
Assessments .................................................................................................................. 6
Assignment .................................................................................................................... 17
Attornment ..................................................................................................................... 20

# B

Base Rent ...................................................................................................................... 1
Broker ............................................................................................................................ 1
Brokerage ...................................................................................................................... 27
Building .......................................................................................................................... 1

# C

Commencement Date ................................................................................................... 1
Condemnation ............................................................................................................... 25
Construction .................................................................................................................. 33
Continuation Notice ...................................................................................................... 36
Continuation Term ......................................................................................................... 36
Costs of Operation ....................................................................................................... 22
Curing Tenant's Defaults ............................................................................................. 29

# D

Damages ........................................................................................................................ 30
Demise ........................................................................................................................... 3
Demised Premises ........................................................................................................ 1
Destruction and Damage ............................................................................................. 24

# E

Eminent Domain ........................................................................................................... 25
Estoppel Certificate ..................................................................................................... 32
Events of Default .......................................................................................................... 27
Expiration Date ............................................................................................................. 2
Extension of Term ......................................................................................................... 36

# F

Failure to Enforce Terms ............................................................................................ 31

# G

Governing Law .............................................................................................................. 33
Guarantor ...................................................................................................................... 2

# I

Indemnification ............................................................................................................. 23
Insurance ...................................................................................................................... 14
Insurance Requirements .............................................................................................. 2
Interest Rate ................................................................................................................. 2

# L

Legal Requirements ...................................................................................................... 2

Lot Stores ........................................................................................................................................ 38

## M

Maintenance ..................................................................................................................................
Managing Agent .......................................................................................................................... 13
Memorandum ................................................................................................................................. 2
Miscellaneous Provisions ........................................................................................................... 32
Modifications................................................................................................................................ 34
Mortgaging ................................................................................................................................... 31
........................................................................................................................................................ 17

## N

No Other Representations............................................................................................................ 33
Non-Liability................................................................................................................................. 23
Non-Recourse................................................................................................................................ 23
Notice Prior to Suit...................................................................................................................... 33
Notice to Mortgagee .................................................................................................................... 20
Notices............................................................................................................................................ 32

## P

Parties Bound................................................................................................................................. 34
Payment of Taxes ........................................................................................................................... 6
Permitted Use .................................................................................................................................. 2
Premises ............................................................................................................................................ 3
Prepayment....................................................................................................................................... 2

## Q

Quiet Enjoyment............................................................................................................................ 22

## R

Re-Entry by Landlord.................................................................................................................. 29
Rent .................................................................................................................................................... 4
Rent Year........................................................................................................................................... 3
Repairs............................................................................................................................................. 13

## S

Security Deposit ........................................................................................................................ 3, 35
Service of Process.......................................................................................................................... 32
Subletting........................................................................................................................................ 17
Subordination ............................................................................................................................... 20
Surrender ........................................................................................................................................ 26

## T

Taxes .................................................................................................................................................. 6
Tenant................................................................................................................................................ 3
Tenant's Work and Tenant's Changes....................................................................................... 10
Term ................................................................................................................................................... 3
Termination .................................................................................................................................... 27
Terms.................................................................................................................................................. 1

## U

Use, Rules and Regulations ......................................................................................................... 8
Utilities and Services..................................................................................................................... 8

# W

Waivers............................................................................................................................................... 31

AGREEMENT OF LEASE, made as of the 10th day of August, 1998, between SIDLEY HOLDING CORP., a New York corporation, having an office c/o Levine Bros. Management, 47 Winslow Road, White Plains, New York 10606 ("Landlord") and "Tenant", as hereinafter defined.

## ARTICLE 1

### Certain Terms

**1.01**    The following terms shall have the meanings set forth opposite each of them:

**"Base Rent":**

- For the first Rent Year, $325,000.00, payable in equal monthly installments of $32,500.00 for each month except for the second and third months for which no monthly installments shall be payable.

- For the second Rent Year, $325,000.00, payable in equal monthly installments of $32,500.00 for each month except for the second and seventh months for which no monthly installment shall be payable.

- For the third Rent Year, $401,700.00, payable in equal monthly installments of $33,475.00.

- Thereafter during the Term the Base Rent for each Rent Year shall increase by 3% per Rent Year, compounded annually, so that as of the commencement of each Rent Year the Base Rent shall equal the product of multiplying 103% times the Base Rent for the immediately preceding Rent Year.

**"Building":**

The building erected in the City of New York, County of the Bronx, State of New York and known as 110-112 East Fordham Road, Bronx, New York.

**"Broker":**

None.

**"Commencement Date":**

August 10, 1998.

**"Demised Premises":**

That space on the ground floor (sometimes referred to as basement or cellar), first floor and mezzanine level of the Building generally as shown on Exhibit A attached hereto and made a part hereof, except that the westerly wall of the basement portion of the Demised Premises shall be relocated westerly to a point, along the easterly side of the columns, which is approximately 25 feet from the inside of the westerly wall of the Building.

CAF&W: 237718.01                                        I                                        05/07/99

**"Expiration Date":**

August 9, 2008 or an earlier date on which this Lease may be cancelled or terminated pursuant to the terms of this Lease.

**"Guarantor".**

Those parties signing the Guaranty attached hereto as Exhibit B, whose names and addresses are as follows: FORMER GUARANTOR, having an address the same as Tenant, and FORMER GOOD GUY GUARANTOR.

**"Insurance Requirements":**

All terms of any insurance policy covering or applicable to the Demised Premises, or any part thereof, all requirements of the insurer of any such policy, and all orders, rules regulations and other requirements of the National Board of Fire Underwriters (or any other body exercising similar functions) applicable to or affecting the Demised Premises, or any part thereof, or any use or condition of the Demised Premises, or any part thereof.

**"Interest Rate":**

The annual rate of interest equal to two (2) percentage points above the interest rate then most recently announced by any of Citibank, N.A., The Chase Manhattan Bank, N.A. and Bankers Trust Company (to be chosen by Landlord), or their successors, as their corporate base lending rate, which rate may change from time to time during the Term, which rate shall be deemed additional rent.

**"Legal Requirements":**

All laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, certificates of occupancy, authorizations, boards, courts, authorities, agencies, officials and officers, foreseen or unforeseen, ordinary or extraordinary, which now or at any time hereafter may be applicable to the Demised Premises or any part thereof, or any of the adjoining sidewalks, streets or ways, or any use or condition of the Demised Premises or any part thereof, and covenants, agreements, restrictions and encumbrances contained in any instruments, either of record or known to Tenant, affecting the Demised Premises.

**"Managing Agent":**

Levine Bros. Management, 47 Winslow Road, White Plains, New York 10606.

**"Permitted Use":**

Only for a children's play facility, and arcade games and the accompanying retail sale of fast foods and beverages and related items for on-premises and off-premises consumption, all in a manner and standard equal to that previously engaged in by Tenant's affiliate at the Guarantor's former facility.

**"Prepayment":**

$32,500.00 to be applied toward the first full monthly installment of Base Rent.

**"Proportionate Share":**

That percentage resulting from dividing (a) the number of rentable square feet of space leased by Tenant on the first floor and mezzanine by (b) the total number of rentable square feet of space on the first floor and mezzanine, as the mezzanine may change from time to time, which as of the Commencement Date is 81.69%.

**"Real Property":**

The Building and the land on which the Building is located.

**"Rent Year":**

The period commencing on the Commencement Date and ending with the day preceding the first anniversary of the Commencement Date, and each twelve-month period thereafter measured from each anniversary of the Commencement Date, except that if the period between the last such anniversary and the Expiration Date is less than twelve months, then the last Rent Year shall be such lesser period.

**"Security Deposit":**

$26,000.00 in cash and $100,000 by letter of credit, which shall be held and applied pursuant to Article 29 hereof.

**"Tax Share":**

That percentage resulting from dividing (a) the Base Rent payable under the Lease during any Rent Year by (b) the total base or minimum rent, payable by all tenants of the Building (including Tenant) during the same Rent Year (or, if less than all of the first floor of the Building is leased, then the "Fair Market Value", as defined in Section 31.01D hereof, of the balance of the first floor and of the mezzanine in the Building), which as of the Commencement Date is 71.85%.

**"Tenant":**

FORMER TENANT.

**"Term":**

The period beginning on the Commencement Date and ending at noon on the Expiration Date.

## ARTICLE 2

### Demise and Premises

**2.01**    Landlord hereby leases to Tenant, and Tenant hereby hires from Landlord, the Demised Premises for the Term, for the rents hereinafter reserved and upon and subject to the conditions (including limitations, restrictions and reservations) and covenants hereinafter provided.  Each party hereto agrees to observe and perform all of the conditions and covenants herein contained on its part to be observed and performed.

**2.02**    It is understood that Tenant has inspected, and is familiar with, the Demised Premises and that Tenant shall lease the Demised Premises in "as is" condition, which shall be that condition in which

Landlord has received the Demised Premises from the prior tenant and in which the Demised Premises presently exists, and Landlord makes no representation whatsoever to Tenant, and Tenant fully accepts the risk, regarding the quality of the Demised Premises and of the quality, quantity and extent of all parts thereof.

**2.03** Nothing herein contained shall be construed as a grant or demise by Landlord to Tenant of the space above and below the Demised Premises. It is specifically understood that there shall be reserved solely to Landlord all rights to install on the roof of the Building antenna and other equipment, devices and installations (collectively "roof installments") and access through the Building at all times during normal business hours for the purpose of making, repairing, maintaining and removing (if applicable) the roof installations, provided that the roof installations (and such access) do not damage the roof. Tenant shall have no rights whatsoever to the roof of the Building except for access for the repair and maintenance of the heating, ventilating and air-conditioning equipment located on the roof and connected to the Demised Premises.

**2.04** The demise hereunder is specifically subject to and conditioned upon access through the Demised Premises as provided in Article 7 hereof.

## ARTICLE 3

### Rent

**3.01** A. Tenant shall pay to Landlord without notice or demand and without abatement, deduction or set-off, in lawful money of the United States of America, at the office of Landlord as specified in Article 1 hereof or at such other place as Landlord may designate, the Base Rent reserved under this Lease for each Rent Year of the Term, payable in monthly installments in advance on the first day of each and every calendar month during the Term; and additional rent consisting of all such other sums of money as shall become due from and payable by Tenant to Landlord or by Tenant to others in connection with the Demised Premises or this Lease (for default in payment of which Landlord shall have the same remedies as for a default in payment of Base Rent). All such payments shall be made by check drawn on a bank or trust company which is a member of the New York Clearing House Association. Notwithstanding the foregoing, Tenant shall pay on account toward the first full calendar monthly installment of Base Rent, on the execution of this Lease, the Prepayment specified in Article 1 hereof. If the commencement of the first Rent Year shall occur on a day other than the first day of a calendar month the Base Rent shall be prorated for the period from such commencement date to the last day of the said calendar month and Landlord shall credit the excess amount of the said Prepayment toward the payment of Base Rent for the next succeeding calendar month. Unless otherwise specified in this Lease, payment of all additional rent shall be due within 5 days of billing, if due to Landlord, or if payable to others in connection with the Demised Premises or this Lease within 5 days before each such item or part thereof shall become due and payable or a lien against the Demised Premises, whichever date is earlier.

B. If any check tendered by Tenant, for any payment due, shall be dishonored by the payor bank, Tenant shall pay Landlord, without prejudice to any of Landlord's rights and remedies, in compensation for the additional administrative, bookkeeping and collection expenses incurred by reason of such dishonored check, the sum of $75.00. In addition, in such event all future payments of rent by Tenant shall be made by certified or official bank checks drawn on banks which are members of the New York Clearing House Association and have a banking office in Westchester County, or, if Landlord requests, by Federal Reserve wired funds into Landlord's account; moreover, the Prepayment and Security Deposit shall be paid by similar checks or wired funds.

C. If Tenant shall fail to pay within five (5) days after the date when the same is due any installment or payment of Base Rent or additional rent, Tenant shall be required to pay a late charge

of $.03 for each $1.00 which remains so unpaid. Such charge shall be imposed only once insofar as any specific installment or payment is concerned. Such late charge is intended to compensate Landlord for additional expenses incurred by Landlord in processing such late payments. Tenant agrees that the late charge imposed is fair and reasonable, complies with all laws, regulations and statutes, and constitutes an agreement between Landlord and Tenant as to the estimated compensation for costs and administrative expenses incurred by Landlord due to the late payment of rent to Landlord by Tenant. Tenant further agrees that the late charge assessed pursuant to this Lease is not interest, and the late charge assessed does not constitute a lender/borrower relationship between Landlord and Tenant. Nothing herein shall be intended to violate any applicable law, code or regulation, and in all instances all such charges shall be automatically reduced to any maximum applicable legal rate or charge.

D.    It is specifically understood that the Base Rent installments during the first two Rent Years aggregate $32,500.00 each month, but that so long as Tenant does not commit a default under this Lease, beyond any applicable grace period, the amount of various of those installments (as specified in the definition of Base Rent) are reduced as therein provided to result in Base Rent abatements equal to a total of $130,000.00. It is a condition of such agreement by Landlord that such abatements are only a deferral of Base Rent conditioned upon Tenant not committing any default beyond any applicable cure period and that in the event of such a default, (a) the amount of all abatements then granted ("Accrued Abatements") by Landlord to Tenant shall immediately be payable to Landlord, as Base Rent. In the event this Lease is terminated, there immediately shall be due and payable to Landlord, as Base Rent, and added to the damages set forth in Article 22 hereof, the full amount of said $130,000.00.

3.02    Whenever used in this Lease, the term (insofar as it pertains to this Lease) "fixed rent", "minimum rent", "base rent" or "basic rent", or any such term using the word "rental", "rents", or "rentals" in lieu of "rent", shall mean Base Rent; and whenever used in this Lease, the term (insofar as it pertains to this Lease) "rent", "rental", "Rent", or the plural of any of them, shall mean Base Rent and additional rent.

3.03    It is the purpose and intent of Landlord and Tenant that the Base Rent shall be absolutely net to Landlord (except as provided in Section 9.05), and that (and Tenant agrees to pay its Tax Share or Proportionate Share, as the case may be, of) all taxes, assessments, costs, expenses and other charges and obligations of every kind and nature whatsoever relating to the Demised Premises, the Building or the Real Property and improvements situated thereon which may arise or become due during or out of the Term, shall be paid by Tenant, and that Landlord be indemnified and saved harmless by Tenant from and against the same. Under no circumstances or conditions whether now existing or hereafter arising, or whether beyond the present contemplation of the parties, shall Landlord be required to make any payment or be under any obligation except as herein set forth. Tenant, however, shall not be under any obligation to pay any franchise, excise or income tax which is or may become payable by Landlord or which may be imposed against Landlord by reason hereof, or upon the income or profits of the Landlord, or any inheritance, transfer, estate or succession tax by reason of any existing law or any law which hereafter may be enacted, or any excess profits or any other taxes upon the rent received by Landlord from Tenant. For specificity and not by way of limitation:

A.    Unless otherwise specifically provided in this Lease, Landlord shall not be required to furnish any services or facilities or to make any repairs or alterations in or to the Demised Premises, and Tenant hereby assumes the full and sole responsibility for the condition, operation, repair, replacement, maintenance and management of the Demised Premises.

B.    In case any vault now constructed in front of or appurtenant to the Building, or adjoining the same, or any part thereof, or which may be hereafter constructed, or any portico, stoop, or other projection or erection of any kind beyond the stoop or Building lines of the Real Property, as the same shall be authorized and fixed by law from time to time during the Term, shall be ordered removed or shall be removed as the result or by virtue of any law, order or ordinance of any Federal, State or

Municipal authority, or of any department, bureau or officer of the City of New York, such removal, whether entire or partial, shall not constitute or be deemed or construed to be violation or breach of any covenant of this Lease on the part of Landlord to be kept and performed, or a ground for any claim for damage, diminution or abatement of rent against Landlord; and if such removal is ordered by said authorities, or any of them, or is had by law at the expense of Landlord, then the Proportionate Share of such expense shall be borne entirely by Tenant and Landlord shall not be liable in any event for any part of the Proportionate Share of the cost or expense of such removal or alteration, or for any damages or penalty for a failure to comply with any order, ordinance or law directing such removal or alteration; and Tenant shall indemnify and save harmless Landlord of and from any such damages or penalty, and shall forthwith pay on demand to Landlord any and all sums which Landlord may be obligated to pay, or may pay, for the cost or expense of such removal or alteration, or for the Proportionate Share of any damages or penalties incurred for a failure to comply with any order, ordinance or law directing such removal or alteration.

## ARTICLE 4

### Payment of Taxes, Assessments, Etc.

**4.01**    For purposes of this Lease:

A.    "Taxes" shall mean all real estate taxes and school taxes, in each case assessed, levied or imposed upon the Real Property and all assessments (including those for public betterments and improvements), transit taxes sidewalk, vault or street taxes or charges, or other Governmental charges, general, specific, ordinary or extraordinary, foreseen or unforeseen, assessed, levied or imposed upon the Demised Premises by the City of New York, the County of Bronx, or any other taxing authority, and "Tax" shall be any of such taxes. Furthermore, if at any time during the Term the methods of taxation prevailing at the date hereof shall be altered so that in lieu of, as an addition to or as a substitute for the whole or any part of the Taxes now levied, assessed or imposed on all or any part of the Demised Premises, there shall be levied, assessed or imposed (a) a tax, assessment, levy, imposition or charge based on the rents received therefrom whether or not wholly or partially as a capital levy or otherwise, or (b) a tax, assessment, levy, imposition or charge measured by or based in whole or in part upon all or any part of the Demised Premises and imposed on Landlord, or (c) a license fee measured by the rent payable by Tenant to Landlord, or (d) any other tax, levy, imposition, charge or license fee however described or imposed, then all such taxes, assessments, levies, impositions, charges or license fees or the part thereof so measured or based, shall be deemed to be Taxes. Taxes for the July 1, 1997 through June 30, 1998 Tax Year are $67,524.97, which have been protested by Landlord.

B.    "Tax Year" shall mean each twelve (12) month period commencing on July 1 and ending on June 30, any portion of which period falls within the Term.

**4.02**    Tenant shall pay Landlord, as additional rent, Tenant's Tax Share of all Taxes. Such payment shall be made to Landlord no later than 10 days following submission by Landlord to Tenant of a computation thereof together with a copy of the applicable Tax bill, except that Tenant shall pay Landlord at the time of execution of this Lease, Tenant's Share of Taxes due for the period from July 1, 1998 through December 31, 1998. At Landlord's option, such payment of Taxes (and Tenant's payment to Landlord of Tenant's Tax Share of Taxes) may be made quarterly, semi-annually or otherwise as permitted by law.

**4.03**    A.    Notwithstanding the provisions of Section 4.02, Landlord may submit to Tenant Landlord's estimate, reasonably determined, of Tenant's Share of Taxes due and payable during any Tax Year, together with the computation thereof and the basis therefor. In such event, on the first day of each month during the calendar year in which such Tax Year commences Tenant shall pay to Landlord one-

twelfth of such estimate, except that the first such payment and any future payments shall be adjusted by Landlord to the end that 30 days prior to the dates when Taxes are due, without penalties, Landlord shall have received an amount sufficient to pay all of such Tenant's Share of such Taxes without penalty.

      B.     To the extent that such estimated payments are less than the amount of such actual Taxes, Tenant shall pay to Landlord the difference within 10 days next following rendition by Landlord of an invoice therefor; to the extent that such estimated payments are greater than the amount of such Taxes, the difference shall be credited against the next monthly installment or installments of Base Rent until paid, or if the last Rent Year is involved, such difference shall be paid to Tenant within 10 days of rendition of such Landlord's statement.

      C.     If Landlord fails to furnish a Tax estimate for a Tax Year until after the commencement of the calendar year in which such Tax Year begins, then until the first day of the month following the month in which such estimate is furnished to Tenant, Tenant shall continue to pay to Landlord on the first day of each month the same monthly amount payable during the previous Tax Year as a Tax estimate.

      D.     Landlord's failure to render a statement with respect to Taxes for any Tax Year shall not prejudice Landlord's right to thereafter render a statement with respect thereto or with respect to any subsequent Tax Year.

    **4.04**   A.     Notwithstanding Section 4.02, any Tax paid by Landlord prior to the Term and covering any portion of the Term shall be adjusted in accordance with the respective portions of the Tax Year during which such portion of the Term shall be in effect, and Tenant shall pay to Landlord on the execution of this Lease the Tax Share of such Taxes allocable to the Term. Any period of less than one month shall be further adjusted and paid in accordance with the foregoing. Any Tax relating to a Tax Year, a part of which period is included within the Term and a part of which is included in a period of time prior to the Commencement Date, and which has not been paid by Landlord prior to the Term shall be similarly adjusted, and Tenant shall pay Tenant's Tax Share thereof to Landlord within 10 days of billing.

      B.     Any Tax relating to a Tax Year, a part of which period is included within the Term and a part of which is included in a period of time after the Expiration Date, shall (whether or not such Tax shall be assessed, levied, confirmed, imposed upon or in respect of or become a lien upon the Real Property, or shall become payable during the Term) be adjusted between Landlord and Tenant as of the expiration of the Term in accordance with the respective portions of the applicable Tax Year during which the Term shall be in effect; except that notwithstanding the foregoing, Tenant shall be responsible for, and there shall be no adjustment of, any Taxes attributable to any work, changes, alterations or improvements to the Building made by Tenant.

    **4.05**   Only Landlord may, at any time and from time to time, commence a protest, action or proceeding (a) to reduce the assessment applicable to Taxes, or (b) for a refund of Taxes. Tenant shall have no right to commence or participate (without Landlord's prior written approval, which shall not be unreasonably withheld) in any such action, and Tenant hereby waives any and all right which Tenant may have (whether at law, equity, or otherwise) to commence or participate in any such action. If Landlord shall receive a refund for any Tax Year, Tenant shall be entitled to that portion of any refund applicable to Taxes, payment for which shall have been made by Tenant as additional rent (including any interest paid on such refund by the taxing authorities), but not in excess of the amount of additional rent paid by Tenant for the respective Section 4.02 increase on account of such Tax Year, after deducting from such refund and interest that portion (or all, as the case may be) of the costs and expenses (including experts' and attorneys' fees) of obtaining such refund; and Landlord shall be entitled to the balance of any such refund. At Tenant's request, subject to the consent of any other tenant in the Building, Landlord shall

commence such a proceeding, provided that Tenant shall be responsible for and pay for all costs and expenses incident to such proceedings; Landlord shall not be subjected to any liability for the payment of any costs or expenses in connection with any such proceedings; and Tenant will indemnify and save harmless Landlord from any such costs and expenses.

## ARTICLE 5

### Utilities and Services

**5.01**    Tenant shall provide and pay for heat, electricity, air conditioning, alarm, sprinkler, oil, gas, water, sewer, and any and all other services and utilities ("Utilities") for the Building except for space in the Building leased to any other tenant, and Landlord shall not be required to furnish, or be liable for any interruption of, any services, utilities or facilities to, or about, the Building. In that regard, and prior to commencing other Tenant's Work, Tenant shall, at Tenant's cost and expense, cause the Utilities to be separated from those used for other space in the Building basement, first floor and mezzanine which Landlord proposes to lease to Peko Sport Inc., d/b/a Gulf West ("Gulf West") and shown on Exhibit A as "Corner Store". Tenant shall not make any installations, alterations, additions or changes to the Utility equipment or systems in the Building without prior written consent of Landlord in each such instance. Tenant shall comply with the rules and regulations applicable to the service, equipment, wiring and requirements of Landlord and of the companies supplying utilities to the Building. Tenant agrees that its use of Utilities in the Building will not exceed the capacity of existing feeders to the Building or the risers, wiring and piping installations therein, and Tenant shall not use any Utility equipment which, in Landlord's reasonable judgment, will overload such installations or interfere with the use thereof by other tenants in the Building. If, in Landlord's judgment, Tenant's Utility requirements necessitate installation of additional risers or other proper and necessary equipment or services, the same shall be provided or installed by Tenant at Tenant's expense.

## ARTICLE 6

### Use, Rules and Regulations

**6.01**    The Demised Premises shall be used and occupied, in accordance with applicable Legal Requirements and Insurance Requirements.

**6.02**    Tenant shall not use the Demised Premises or any part thereof or allow the same to be used or occupied in violation of any certificate of occupancy covering the use of the Demised Premises. The "Permitted Use" of the Demised Premises for the purposes specified in Article 1 hereof shall not in any event be deemed to include, and Tenant shall not use, or permit the use of, the Demised Premises or any part thereof for: demonstrations to the public; manufacturing or printing; the conduct of a public auction of any kind; or by any government or subdivision or agency of any government.

**6.03**    If any governmental license, permit, approvals or certificate of occupancy, shall be required for the proper and lawful conduct of Tenant's business in the Demised Premises, or any part thereof, then Tenant, at its expense, shall duly procure and thereafter maintain all of the same. Tenant shall not at any time use or occupy, or suffer or permit anyone to use or occupy the Demised Premises, or do or permit anything to be done on or about the Demised Premises, in violation of the certificate of occupancy for the Demised Premises.

**6.04**    Tenant shall not place a load upon any floor of the Building exceeding the floor load per square foot which such floor was designed to carry and which is allowed by certificate or any Legal Requirements.

**6.05**    Tenant shall comply with the following rules and regulations, as the same may be rescinded, altered, modified or amended by Landlord from time to time:

(a)    No awning or other projections shall be attached to the outside walls of the Premises or the Building without, in each instance, the prior written consent of Landlord, which shall not be unreasonably withheld.

(b)    Tenant shall store (and separate in accordance with recycling rules or guidelines, whether mandatory or voluntary, issued by any authority having jurisdiction of the Building or by Landlord) all trash and refuse in adequate containers within the Demised Premises. Tenant shall maintain such containers in a healthy, safe, neat, odor-free and clean condition in a location which is not visible to members of the public and shall attend to the daily disposal of all trash and refuse container off of the Real Property. Tenant shall store all trash, refuse and garbage in a garbage compartment which Tenant shall install and keep in repair at its sole expense.

(c)    No radio or television aerial or antenna or equipment of any type shall be erected on the roof or exterior walls of the Building without the prior written consent of Landlord granted or denied at Landlord's sole discretion. Any aerial so installed shall be subject to removal without notice at any time and any damage to the wall or roof caused by such removal shall be the responsibility of Tenant.

(d)    No loudspeakers, televisions, phonographs, CD players, radios, flashing lights or other devices whatsoever shall be used in a manner so as to be heard or seen outside of the Demised Premises without the prior written consent of the Landlord.

(e)    No auction, fire, bankruptcy or selling-out sales shall be conducted on or about the Demised Premises without the prior written consent of the Landlord, which shall not be unreasonably withheld.

(f)    The sidewalk immediately adjoining the Demised Premises shall be kept clear at all times by Tenant, and Tenant shall not place or permit any obstructions, garbage, refuse, merchandise or displays in such areas.

(g)    Except as specifically approved by Landlord in writing, Tenant shall not place any sign or obstruction of any kind in the Common Areas.

(h)    Tenant shall, at Tenant's expense, contract with a licensed, reputable, pest extermination contractor to provide for not less than monthly (but if that is inadequate, thereafter weekly) extermination of the Demised Premises.

(i)    Tenant shall not permit use of the Demised Premises, or the operation of any instrument or apparatus or equipment, so as to emit an odor or causes a noise discernible outside of the Demised Premises.

**6.06**    So long as Tenant is not in default under this Lease, Landlord will not lease any other space in the Building to a tenant for a primary use which is the same, or substantially the same, as the Permitted Use.

## ARTICLE 7

### Access

Landlord or Landlord's agents or employees shall have the right upon request made on reasonable advance notice to Tenant, or to an authorized employee of Tenant at the Demised Premises, to enter and/or pass through the Demised Premises or any part thereof, at reasonable times during reasonable hours, (i) to examine the Demised Premises or to show them to lessors of superior leases, holders of mortgages, insurance carriers, or prospective purchasers, mortgagees or lessees of the Demised Premises and (ii) for the purpose of making repairs or changes in or to the Demised Premises upon the failure of Tenant to timely do so (provided, however, that this right shall not be deemed as obligating Landlord to make any repairs which are the responsibility of Tenant in accordance with the terms hereof). Landlord's rights under this Section shall be exercised in such manner as will not unreasonably interfere with Tenant's use and occupancy of the Demised Premises. Landlord, its agents or employees, shall also have the right to enter on and/or pass through the Demised Premises, or any part hereof without notice at such times as such entry shall be required by circumstances of emergency affecting the Demised Premises.

In consideration of there not being constructed through the Demised Premises dedicated access hallways connecting the Corner Store and any other part of the Demised Premises needed for emergency access, Tenant hereby grants to Landlord and the tenant of the Corner Store, for the foregoing purposes and/or in the event access to any of the Building utility, sprinkler, mechanical or other systems of the Building shall reasonably be necessary for the tenant of the Corner Store to complete work to be performed therefor, then, a perpetual, irrevocable license to enter the Demised Premises (i) upon prior notice, which may be personal notice to a representative of Tenant at the Demised Premises, accompanied by Tenant's representative, if desired by Tenant, or (ii) without notice in case of emergency provided that notice thereafter is given to Tenant. Failure of Tenant to grant access shall be deemed a breach of this Lease. The Corner Store shall be a third party beneficiary of the respective obligation to grant access as set forth above. Tenant's indemnity in favor of Landlord as provided in Article 29 hereof shall apply if Tenant fails to grant access to Landlord or the Corner Store tenant in accordance with the foregoing.

## ARTICLE 8

### Tenant's Work and Tenant's Changes

8.01    Tenant shall accept the Demised Premises "as is", which term shall mean in the same condition and repair presently existing, and Tenant shall be responsible for any demolition or removal of any improvements existing in the Demised Premises in connection with the prior tenant's occupancy, and all other work as may be necessary to convert the Demised Premises to Tenant's requirements. Landlord shall not be responsible for performing any work with respect to such space or to the Building for occupancy by Tenant.

8.02    A.    Within 20 days of the date of this Lease, Tenant shall submit to Landlord Tenant's final working plans, specifications and drawings ("Tenant's Plans") covering all such work to be performed in the Building ("Tenant's Work"). All of Tenant's Plans are subject to the Landlord's approval, which Landlord agrees shall not be unreasonably withheld. No approval of Tenant's Plans shall be deemed an agreement by Landlord that the work included therein is in compliance with any Legal Requirements or is otherwise feasible or is the only work necessary to use and occupy the Demised Premises and obtain a certificate of occupancy therefor. Tenant's Plans shall be prepared by an architect licensed in New York State, shall be in compliance with all Legal Requirements, and shall be sufficient to obtain a building permit for all work shown thereon. All Tenant's Work shall be performed in accordance with the terms of this Lease, including, without limitation, all of those applicable to "Tenant's Changes", as hereinafter in this Article 8 provided.

B.    All Tenant's Work shall be completed not later than January 31, 1999.

C.    Among other work included in Tenant's Work shall be the following:

(1)    Construction of a demising wall(s) so as to separate the first floor portion of the Demised Premises from the corner store area, and from the common area behind such corner store area, approximately as shown on, and per the specifications shown on, Exhibit A.

(2)    Construction of a mezzanine demising wall(s) and roof access hallway wall, approximately as shown on Exhibit A.

(3)    Construction of demising walls to enclose that portion of the basement of the Building, included in the Demised Premises and to enclose the common areas, approximately as shown on, and per the specifications shown on, Exhibit A.

(4)    Repair of roof leaks.

(5)    Separation of the HVAC, alarm, electric, sprinkler and other Utility systems of the Building in accordance with Article 5 hereof.

All construction shall be effected so as to prevent any noise or odors emanating outside of the Demised Premises.

Prior to performing any work in Section 8.02 C (1) through (4), Tenant shall deliver to Gulf West (and a copy to Landlord of) a written estimate of the cost of such work, prepared by a licensed, reputable contractor (and subcontractor, if applicable). Within ten days thereafter, Gulf West either shall approve such estimate or submit a second estimate similarly prepared; failure to timely submit a second estimate shall be deemed approval of the first estimate. Tenant shall use the contractor (and subcontractor, if applicable) submitting by the lowest bid to perform such work, and upon completion, Gulf West shall pay Tenant one-half of such cost within ten days of billing. Similarly, in light of the fact that Tenant shall retain the service lines, meters and existing HVAC, electric, alarm, sprinkler and other Utility systems (collectively called "Systems") and the mechanical and sprinkler rooms in the Building, Tenant shall pay Gulf West, in accordance with the same procedure specified above in this paragraph, one-half of the cost of installing all of the foregoing-described new Systems (specifically including, without limitation, a roof-top HVAC unit and system) to and within the Corner Store, within, and the mechanical and sprinkler rooms within, ten days of billing. Failure of either party to make payment as aforesaid shall be deemed breach of such party's respective lease with Landlord. Landlord shall include such an obligation of Gulf West to pay Tenant in Landlord's lease with Gulf West, and by signing this Lease Tenant agrees to pay Gulf West as provided above; each of Tenant and Gulf West shall be a third party beneficiary of the respective payment obligations of the other as set forth above.

In the event that Landlord does not enter into a lease with Gulf West, Landlord shall impose in a lease with another tenant of the Corner Store conditions similar to those of Gulf West, as specified in the preceding paragraph.

D.    Tenant's Work may include a kitchen and bathroom.

**8.03**    Tenant shall not, at any time or from time to time during the Term, make such alterations, additions, installations, substitutions, or improvements (hereinafter collectively called "changes" and, as applied to changes provided for in this Article, "Tenant's Changes") in and to the Demised Premises,

without Landlord's prior consent in all instances, which Landlord shall not unreasonably withhold insofar as non-structural changes are concerned so long as they comply with all of the following provisions of this Article. Notwithstanding the foregoing, so long as at least ten days prior notice is given to Landlord, Landlord's consent to non-structural changes, as part of a project the aggregate cost of which does not exceed $15,000.00, shall not be required. If Landlord shall consent (or if such consent shall not be required), all Tenant's Changes shall comply, whether structural or non-structural, with the following conditions: (a) such changes will not result in a violation of the Certificate of Occupancy applicable to the Demised Premises; (b) the outside appearance, character or use of the Building shall not be affected (except that Tenant may install glass windows to allow public view into the Building in a portion of one wall of the Demised Premises, subject to Landlord's approval), and no Tenant's Changes shall weaken or impair the structural strength or lessen the value of the Building; (c) the proper functioning of any of the mechanical, electrical, sanitary and other service systems of the Building shall not be adversely affected; (d) in performing the work involved in making such changes, Tenant shall be bound by and observe all of the conditions and covenants contained in this Article; (e) at the Expiration Date, Tenant shall on Landlord's written request restore the Demised Premises to their condition prior to the making of any changes permitted by this Article, reasonable wear and tear excepted, unless at the time of granting of Landlord's consent, such requirement was waived by Landlord; (f) before proceeding with any change Tenant shall submit to Landlord plans and specifications for the work to be done, and shall request Landlord's approval in writing, and, if such change requires approval by or notice to the lessor of a superior lease or the holder of a superior mortgage, Tenant shall not proceed with the change until such approval has been received, or such notice has been given, as the case may be, and all applicable conditions and provisions of said superior lease or superior mortgage with respect to the proposed change or alteration have met or complied with at Tenant's expense; any change for which approval has been received shall be performed strictly in accordance with the approved plans and specifications, and no amendments or additions to such plans and specifications shall be made without the prior written consent of Landlord; and Tenant shall not be permitted to install and make a part of the Demised Premises any materials, fixtures or articles which are subject to liens, conditional sales contracts, security agreements or chattel mortgages; (g) Tenant shall furnish Landlord with a surety company bond in such company and form as shall be reasonably satisfactory to Landlord, guaranteeing that Tenant shall and will timely make, erect and complete the proposed improvements in accordance with the final plans and specifications therefor and in compliance with the requirements of all governmental authorities having jurisdiction thereof, and will pay the full cost of the work required in connection with said alterations and improvements. In lieu of the above requirements for the delivery of a bond by Tenant to Landlord, Tenant may furnish a cash deposit or other security to Landlord, which security shall be reasonably satisfactory to Landlord; and (h) Tenant shall comply with all other terms and conditions of this Lease in connection with Tenant's Changes. Landlord shall have a representative available during regular business hours of business days to review proposed Tenant's Changes.

**8.04**   All Tenant's Changes shall at all times comply with all Legal Requirements and Insurance Requirements, and Tenant, at its expense, shall obtain all necessary governmental permits and certificates, and cure any conditions (including, but not limited to any existing and future conditions applicable to the elevator and air-conditioning) for the commencement and prosecution of Tenant's Changes and for final approval thereof upon completion, and shall cause Tenant's Changes to be performed in and in good and first class workmanlike manner, using materials and equipment at least equal in quality and class to the original installations of the Building. Throughout the performance of Tenant's Changes, Tenant, at its expense, shall carry and shall cause all contractors, agents and other persons performing work to carry all additional insurance under Article 10 applicable as a result of, or based upon, Tenant's Changes. Tenant shall furnish Landlord with satisfactory evidence that such insurance is in effect prior to the commencement of Tenant's Changes.

**8.05**     Tenant, at its expense, and with diligence and dispatch, shall procure the cancellation or discharge of all notices of violation arising from or otherwise connected with Tenant's Changes. Tenant shall defend, indemnify and save harmless Landlord against any and all mechanics and other liens in connection with Tenant's Changes, repairs or installations, including but not limited to the liens of any conditional sales of, or chattel mortgages upon, any materials, fixtures, or articles so installed in and constituting part of the Demised Premises and against all costs, attorney's fees, fines, expenses and liabilities reasonably incurred in connection with any such lien, conditional sale or chattel mortgage or any action or proceeding brought thereon. Tenant, at its expense, shall commence the necessary proceedings to procure the satisfaction or discharge of all such liens within thirty (30) days of the filing of such lien against the Demised Premises or the Building and shall, within the minimum time period possible under the laws of the State of New York, cause such lien to be discharged. If Tenant shall fail to comply with the foregoing requirements within the aforesaid time periods, then, in addition to any other right or remedy, Landlord may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien by deposit or by bonding proceedings.

**8.06**     All Tenant's Changes, and all replacements thereto, shall at once be and become the property of Landlord without payment of any kind.

## ARTICLE 9

## Repairs and Maintenance

**9.01**     Tenant shall, at all times during the Term, at its sole cost and expense, keep the sidewalks and streets adjoining the Demised Premises and any sidewalks, pathways or parking areas located on the Demised Premises in good order and repair, and free from snow, ice or any unlawful obstructions; and Tenant will, at all times make all repairs to the Demised Premises, of whatever nature, including but not limited to interior and exterior, extraordinary as well as ordinary, structural and non-structural, and will keep all improvements and the fixtures, machinery and equipment located in or on (including, without limitation, alarm systems, sprinkler systems, and heating, ventilating, air-conditioning systems, elevators, electrical, plumbing and mechanical systems, (for all of the foregoing of which Tenant shall at all times maintain full maintenance and repair service contracts with experienced reputable companies) and signs) the Demised Premises and every part thereof in first-class order and repair and in accordance with the Legal Requirements and Insurance Requirements. It is specifically understood and agreed that Landlord shall have no duty whatsoever to keep the sidewalks and streets adjoining the Demised Premises free from snow and ice, nor to make any repairs of any kind to the Demised Premises or to the sidewalks and streets adjacent thereto, or to any other improvements, or to the fixtures, machinery and equipment located thereon, or to the Personal Property, during the Term of this Lease or any renewal term thereof, except as specifically provided in Section 9.04 hereof.

**9.02**     In the event Tenant defaults in making any repairs to, or maintenance of, the Demised Premises and, at its option, Landlord elects to make such repairs (at the expense of Tenant and subject to any other terms of this Lease) during Tenant's continued occupancy of the Demised Premises (which election shall not waive any other rights Landlord may have hereunder, including, but not limited to, the right of eviction), Landlord shall have no liability to Tenant by reason of any inconvenience, annoyance, interruption or injury to Tenant's business arising from Landlord making said repairs. Tenant shall pay Landlord all Landlord's costs and expenses, with interest at the Interest Rate, incurred in connection with such repairs, as additional rent.

**9.03**     When used in this Lease the term "repair" shall be deemed to include restoration and replacement as may be necessary to achieve and/or maintain first-class working order and condition.

9.04    Tenant shall promptly notify Landlord of any written notice it receives of the violation of any Legal Requirements applicable to the Demised Premises, and at Tenant's sole cost and expense Tenant and its contractors, employees and agents, subtenants and licensees shall faithfully observe and comply with all such Legal Requirements.

9.05    Notwithstanding Section 9.01 hereof, Landlord shall, as a "Cost of Operation" (as defined in Section 13.01), maintain and repair the common areas of the Building. Landlord shall maintain and repair the structural aspects of: the foundation, bearing walls and roof of the Building (a) at Landlord's cost and expense and not as a Cost of Operation, unless (b) if covered by or as a result of any act or omission of Tenant, at Tenant's sole cost and expense. Except as provided in the previous sentence, Landlord shall have no responsibility whatsoever to maintain or repair the Building or the Real Property, it being understood that this Lease and all other leases of space in the Building shall be net, net, net.

## ARTICLE 10

### Insurance

10.01    Tenant shall, at its sole cost and expense, maintain at all times during the Term the following types of insurance:

A.    Commercial general liability insurance to afford protection initially in an amount of not less than $7,000,000 combined single limit of liability for bodily injury, death and property damage arising out of any one occurrence, under an occurrence-basis policy, against any and all claims for personal injury, death or property damage occurring in, upon, adjacent, or connected with the Real Property and any part thereof; from time to time during the Term the foregoing limits of insurance shall be increased to those required by the holder of any superior mortgage or superior lease or as are currently carried with respect to similar properties where the Building is located. There shall be added to or included within said comprehensive general liability insurance all other coverages as may be usual to Tenant's use of the Demised Premises, including, without limitation, products and completed operations liability, independent contractors liability, broad form comprehensive general liability endorsements, broad form property damage liability, host liquor liability, explosion, collapse and underground property damage, environmental impairment/pollution liability (if applicable) and owners and contractors protective liability coverage during the course of construction. The policy or policies and the certificates of insurance specifically shall contain the indemnity clause set forth in Article 15 typed thereon evidencing that said "hold harmless" obligation of Tenant has been insured.

B.    Worker's compensation and employer's liability as required by law.

C.    New York State disability benefits liability as required by law.

D.    During the performance by or on behalf of Tenant of any Tenant's Changes or any other work under this Lease and until completion thereof, owners and contractors protective liability coverage in an amount of not less than $2,000,000.

E.    "All Risk" property insurance upon Tenant's property, including contents and trade fixtures; such coverage is to be written on a replacement cost basis and in an amount of not less than 100% of the full replacement value thereof.

F.    Such other insurance and in such amounts as Landlord, the holder of a superior mortgage or superior lease may reasonably require from time to time and as are carried with respect to properties similar to the Real Property.

Tenant's failure to keep in force the aforementioned insurances shall be regarded as a material default hereunder entitling Landlord to exercise any or all of the remedies provided in this Lease for Tenant's default.

10.02    A.    Landlord shall, as a Cost of Operation, insure the Building against loss or damage by fire and such other hazards and risks as are from time to time customarily included in the broad form of extended coverage endorsements (commonly known as "all risk" endorsements) attached to the fire insurance policies in the State of New York.

B.    During the course of any Tenant's Changes, Tenant shall maintain, at its own cost and expense, Builders' Risk insurance on a non-reporting computed value basis with extended coverage.

C.    At least ten business days prior to the performance of any Tenant's Work, Tenant's Changes and all other betterments, improvements and all other work in, on, attached to or becoming part of the Demised Premises (sometimes collectively called "betterments and improvements"), Tenant shall submit to Landlord all information necessary for Landlord to increase, if necessary, the amount of Landlord's insurance policy, (and thereafter throughout the Term shall submit any updated information necessary (and not less than annually shall certify replacement costs to Landlord) so Landlord at all times may maintain its property insurance coverage on the Building in order that the betterments and improvements may be insured. Tenant shall make payment to Landlord, within ten days of being billed therefor, of the amount of the insurance premium applicable to providing such coverage on Tenant's Work, Tenant's Changes and all other such betterments and improvements.

10.03    At all times during the Term Tenant shall maintain, at Tenant's sole cost and expense, (i) insurance protecting Landlord and Managing Agent against any and all lost rents under this Lease (Base, additional or otherwise) for a period of at least one (1) year as a result of any injury or damage to the Demised Premises, unless Landlord obtains such insurance as a Cost of Operation, (ii) insurance covering all plate glass in the Demised Premises (iii) boiler insurance, if the Building contains a boiler.

10.04    With respect to all insurance provided by Tenant under this Article 10 or by others performing work for Tenant hereunder:

A.    Such insurance shall be written by insurance companies licensed to do business in the State of New York, authorized to issue such insurance policies and having a rating of no less than "A/8" in the most current edition of Bests Key Rating Guide. The original insurance policies (together with reasonably adequate evidence of waivers of subrogation required by this Article 10 and of timely payment of insurance premiums) shall be deposited with Landlord together with all renewals, replacements and endorsements. Tenant shall have the right to insure and maintain such insurance under blanket insurance policies covering other premises used or operated by Tenant so long as such blanket policies are aggregated so that at all times when required by this Lease there is adequate insurance attributable to the Demised Premises or to this Lease so as to comply with the insurance provisions set forth in this Lease.

B.    There shall be maintained deductibles in such amounts as Tenant shall reasonably determine but in no event in excess of $5,000 with respect to a property insurance policy and in no event in excess of $10,000 with respect to a liability insurance policy.

C.    Landlord, Landlord's Managing Agent and the holder of any superior mortgage and of any superior lease, to the extent that Tenant has been notified (collectively called "Landlord and Others in Interest") shall be (i) included as an additional named insured under all insurance required to be provided by Tenant under this Lease except under Sections 10.01B and C, and (ii) a named insured under

insurance required to be provided by Tenant under this Lease pursuant to Section 10.03.

D.    All property insurance policies under Section 10.03 shall cover the interest of Landlord and Others in Interest, and the policies therefor shall provide that adjustment of any losses thereunder shall be settled or finalized only by, and be payable to, Landlord and Others in Interest. All such property insurance policies shall contain a provision allowing other insurance that is provided to or for Landlord. All such property insurance policies shall be required of Tenant regardless of whether Tenant or others on behalf of Tenant perform Tenant's Changes or any other work in the Demised Premises.

E.    At least 10 days prior to commencement of construction of any work in the Demised Premises, Tenant and Tenant's contractor shall deliver to Landlord (and Others in Interest, if required by them) policies evidencing all insurance coverages provided in this Article 10. Tenant's contractor shall be required to comply with all of such insurance obligations only through final completion of all such work.

F.    At its own cost and expense, Tenant or its general contractor shall, in accordance with all of the insurance requirements of this Article 10, obtain professional liability insurance for all architects, designers and engineers with regard to all of their work in or in connection with the Demised Premises, in a minimum policy amount of $1,000,000.

G.    The limits of all insurance provided under this Article 10 (i) shall not limit Tenant's liability to Landlord under this Lease, and (ii) shall be subject to increase to the same extent as provided under Section 10.01 with respect to liability insurance.

H.    All policies of insurance maintained by Tenant under this Article 10 shall be written as primary policies not contributing with, nor in excess of, insurance coverage that Landlord and Others in Interest may have. Tenant shall not carry separate or additional insurance which, in the event of any loss or damage, is concurrent in form or would contribute with the insurance required to be maintained by Tenant under this Lease.

I.    Each policy required to be provided hereunder (and each certificate of insurance issued with respect thereto) shall contain endorsements by the insurer, without disclaimers, that the policies will not be cancelled, materially changed, amended, reduced or non-renewed without at least thirty (30) days prior notice to Landlord and Others in Interest, that the act or omission of any insured will not invalidate the policy as to any other insured, and that Tenant (or the general contractor, as the case may be) solely shall be responsible for payment of all premiums under such policies and that neither Landlord nor Others in Interest shall have any obligations for the payment thereof.

J.    In the event Tenant shall fail to procure and place any insurance required under this Lease, after notice to Tenant, Landlord may, but shall not be obligated to, procure and place same, in which event the amount of the premium paid plus interest thereon at the Interest Rate shall be refunded by Tenant to Landlord within 10 days of notice, as additional rent.

**10.05**  Tenant shall procure and maintain at all times during which Tenant shall be required under this Lease to maintain property insurance a clause in, or a written endorsement on, all policies applicable to such insurance pursuant to which the insurer waives subrogation (or consents to a waiver by Tenant of a right of recovery) against Landlord, Others in Interest and the employees, agents and licensees of any of the foregoing, and Tenant agrees not to make claim against or seek to recover against (and Tenant hereby releases Landlord for any claim which it otherwise might have against) Landlord and Others in Interest in connection with any loss or damage covered by any such policies. If Tenant shall decide not to insure for) or to self-insure part of any loss for) business interruption or to the extent that Tenant shall be a self-

insurer (including, without limitation, any deductible under any insurance policy), Tenant hereby releases Landlord and Others in Interest from all loss or damage which could have been covered by an insurance policy if Tenant had chosen.

10.06   If Tenant shall decide not to insure for (or to self-insure or co-insure part of any loss for) business interruption and/or if Tenant shall at any time fail to maintain property insurance as, and to the extent, required under this Lease, Tenant hereby releases Landlord and Others in Interest from all loss or damage which could have been covered by such insurance if Tenant had chosen to insure for same.

## ARTICLE 11

## Assignment, Mortgaging, Subletting

11.01   Neither this Lease nor the Term and estate hereby granted, nor any part hereof or thereof, nor the interest of Tenant in any sublease or the rentals thereunder, shall be assigned, mortgaged, pledged, encumbered or otherwise transferred by Tenant by operation of law or otherwise, and neither the Demised Premises nor any part thereof, shall be encumbered in any manner by reason of any act or omission on the part of Tenant or anyone claiming under or through Tenant, or shall be sublet or be used or occupied or permitted to be used or occupied by anyone other than Tenant or for any purpose other than as permitted by this Lease, except as expressly otherwise provided in this Article. For purposes of this Article 11, (i) the transfer of a majority of the issued and outstanding capital stock of any corporate tenant, its parent or any entity having a controlling interest in either (including, without limitation, any capital stock issued in connection with any transfer), or of a corporate subtenant, or the transfer of a majority of the total interest in any partnership tenant or subtenant, however accomplished, whether in single transaction or in a series of related or unrelated transactions, shall be deemed an assignment of this Lease, and (ii) a takeover agreement shall be deemed a transfer of this Lease.

11.02   If this Lease be assigned, whether or not in violation of the provisions of this Lease, Landlord may collect rent from the assignee. If the Demised Premises or any part thereof be sublet or be used or occupied by anybody other than Tenant, whether or not in violation of this Lease, Landlord may after default by Tenant, and expiration of Tenant's time to cure such default, collect rent from the subtenant or occupant. In either event, Landlord may apply the net amount collected to the rents herein reserved, but no such assignment, subletting, occupancy or collection shall be deemed a waiver of any of the provisions of Section 11.01, or the acceptance of the assignee, subtenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of Tenant's obligations under this Lease. The consent by Landlord to assignment, mortgaging, subletting or use or occupancy by others shall not in any wise be considered to relieve Tenant from obtaining the express written consent of Landlord to any other or further assignment, mortgaging, or subletting or use or occupancy by others not expressly permitted by this Article. Tenant agrees to pay to Landlord reasonable counsel fees incurred by Landlord in connection with any proposed assignment of Tenant's interest in this Lease or any proposed subletting of the Demised Premises or any part thereof (including, without limitation, the preparation and/or review of any and all documents in connection with any rights under this Article 11). References in this Lease to use or occupancy by others, that is, any one other than Tenant, shall not be construed as limited to subtenants and those claiming under or through subtenants but as including also licensees and others claiming under or through Tenant, immediately or remotely.

11.03   Upon at least 20 days prior notice to Landlord, and provided that Tenant shall have fully and faithfully complied with all the terms, covenants and conditions of this Lease on the part of Tenant then to have been performed if Tenant is a corporation, this Lease may be assigned to a corporation into which Tenant merges or consolidates in accordance with applicable statutory provisions for the merger or consolidation of corporations provided that, by operation of law or by effective provisions contained in the instruments of merger or consolidation the liabilities of the corporations participating in such merger

or consolidation are assumed by the corporation surviving such merger or consolidation, or to any entity which controls, is controlled by, or under common control with Tenant, or to the purchaser of all or substantially all of the assets of Tenant, so long as in all of the foregoing instances, the Demised Premises continue to be used for the Permitted Use; the transfer is not principally for the purpose of transferring the leasehold estate created hereby; the net worth of the assignee is at least equal to or in excess of the net worth of Tenant immediately prior to such assignment; the assignee assumes by documents satisfactory to Landlord all of Tenant's obligations to be performed under this Lease; the Security Deposit is increased to an amount equal to four monthly installments of rent then payable under this Lease; and subject to all of the other terms and conditions of this Lease. The acquisition by Tenant, its corporate successors or assigns, of all or substantially all the obligations and liabilities of any corporation, shall be deemed a merger for purposes of this Article.

Moreover, upon 10 days prior notice to Landlord, (together with a copy of the final form of assignment and assumption agreement), Tenant may assign this Lease to a New York corporation to be formed for the operation of the Demised Premises provided such corporation assumes all of Tenant's duties and obligations under, and in accordance with, the terms of the Lease.

**11.04**    Notwithstanding the foregoing, Tenant shall have the right to enter into, as part of the Permitted Use, license agreements with purveyors of recognized fast foods and beverages for the sale and consumption of such foods and beverages at the Demised Premises, upon prior notice to Landlord but without Landlord's consent.

**11.05**    A.    In the event that at any time or from time to time prior to or during the Term Tenant desires to sublet all or any portion of the Demised Premises Tenant shall submit to Landlord a written request for Landlord's consent to such subletting, which request shall contain or be accompanied by the following information:

1.    a description identifying the space to be sublet (which shall include appropriate means of ingress and egress);

2.    the terms and conditions (including without limitation the proposed commencement and termination dates) of the proposed subletting;

3.    the name and address of the proposed subtenant;

4.    the nature and character of the business of the proposed subtenant and of its proposed use of the Demised Premises; and

5.    current financial information, and any other information as Landlord may reasonably request, with respect to the proposed subtenant.

Landlord shall have the option to be exercised by notice given to Tenant within twenty (20) days after the later of (i) receipt of Tenant's request for consent or (ii) receipt of such further information as Landlord may reasonably request, to require a surrender of the Demised Premises or as to the part thereof involved, as the case may be.

The foregoing option to require a surrender shall not be applicable to a sublease to "Lot Stores", as defined in Article 32 hereof.

B.    If Landlord shall exercise its option to require a surrender of the Demised Premises, then upon the proposed commencement date of the subletting specified in Tenant's notice given to Landlord the Demised Premises or the part thereof involved, as the case may be, shall be delivered to

C&F&W 23773801                                    18                                    01/07/99

Landlord in accordance with the provisions of the Lease relating to surrender of the Demised Premises at the expiration of the Term, and this Lease shall cease and terminate insofar as the Demised Premises or part thereof involved, as the case may be, is concerned with the same force and effect as though such proposed commencement date were the date set forth in this Lease as the expiration of the Term. If only part of the Demised Premises is involved, the terms and conditions of the Lease shall remain in full force and effect as to the remainder of the Demised Premises, except that the Base Rent and additional rent shall be proportionately reduced based upon the number of square feet of such part of the Demised Premises surrendered, and except further to the extent that appropriate modifications of other terms or provisions of this Lease should be made to reflect such elimination of such part of the Demised Premises surrendered. Notwithstanding the foregoing, in the event that less than all of the Demised Premises is surrendered,

1.    Landlord shall cause to be constructed, at Tenant's sole cost and expense, such alterations and connections as may be required in order to physically separate such surrendered part of the Demised from the balance of the Demised Premises;

2.    At least thirty (30) days prior to the proposed commencement date specified above, Landlord shall have free access to enter to the Demised Premises in order to complete such construction referred to in clause "1" above, and to the extent that there are less than thirty (30) days between Landlord's exercise of its option to require a surrender pursuant to clause (x) above and such proposed commencement date, such proposed commencement date shall be extended by a like number of days.

C.    If Landlord shall not exercise its option under Section 11.05A, Tenant shall not sublet without Landlord's prior consent, which consent shall not be reasonably withheld or delayed, provided that with respect to any subletting the following further conditions shall be fulfilled:

(i)    There shall be no advertisement, public communication or listing of the availability of the Demised Premises for subletting without the prior written consent of Landlord, which shall not be unreasonably withheld; it is specifically understood that it shall not be unreasonable for Landlord to deny its consent if any advertisement or public communication shall list the rental rate in any way or shall adversely reflect on the dignity, character or prestige of the Building;

(ii)    No subletting shall be to a person or entity which has a financial standing, is of a character, is engaged in business, is of a reputation, or proposes to use the sublet premises in a manner, not in keeping with the standards in such respects of the other tenancies of the Building;

(iii)    The subletting shall be expressly subject to all of the obligations of Tenant under this Lease, and, without limiting the generality of the foregoing, the sublease shall impose at least the same restrictions and conditions with respect to use as are contained in Section 1.01 and Article 6 hereof, and shall specifically provide that there shall be no further subletting of the sublet premises;

(iv)    That part, if any, of the term of any such sublease or any renewal or extension thereof, which shall extend beyond a date one (1) day prior to the expiration or earlier termination of the term, shall be a nullity;

(v)    No such subletting shall result in there being, in addition to Tenant, more than one (1) subtenant, user or occupant in the Demised Premises;

(vi)    The Base Rent and additional rent for any such subletting shall be not less than the greater of (a) that provided for under this Lease on a per square foot basis for the space as proposed to be sublet, and (b) the then going market rental rate for comparable space and for a comparable term in the Building (or if none is or has been currently leased or subleased, then comparable space and term in a

comparable building in the area in which the Building is located);

(vii)    The subleased premises shall be used for the Permitted Use;

(viii)    The business of the subtenant shall not be in violation of any restriction against competition contained in any other lease to which Landlord is a party;

(ix)    Landlord shall be furnished with a copy of the agreement of sublease to be executed, at least ten (10) days prior to its execution, and with a duplicate original of the sublease, within ten (10) days after the date of its execution;

(x)    Tenant shall pay to Landlord, as additional rent, a sum equal to the 50% of the amount of (a) all Base Rent and additional rent and any other consideration paid or payable to Tenant by any subtenant which is in excess of the Base Rent and additional rent then being paid by Tenant to Landlord pursuant to the terms hereof, and (b) any other profit or gain realized by Tenant from any such subletting; if only a part of the Demised Premises is sublet, then the Base Rent and additional rent paid therefor by Tenant to Landlord shall be deemed to be that fraction thereof that the area of said sublet space bears to the entire Demised Premises;

(xi)    Tenant shall have fully and faithfully complied with all of the terms, covenants and conditions of this Lease on the part of the Tenant then to have been performed under this Lease; and

(xii)    Every sublease shall contain substantially the following language:

"In the event a default under any superior lease covering all or any portion of the premises demised hereby results in the termination of such superior lease, this sublease shall, at the option of the lessor under such superior lease, remain in full force and effect and the subtenant hereunder shall attorn to and recognize such lessor as owner and landlord hereunder and shall promptly upon such lessor's request, execute and deliver all instruments necessary or appropriate to confirm such attornment and recognition. The subtenant hereunder hereby waives all rights under any present or future laws or otherwise to elect, by reason of the termination of such superior lease, to terminate this sublease or surrender possession of the premises demised hereby."

(xiii)    The Security Deposit for the premises proposed to be sublet shall equal four times the monthly installment of Base Rent and additional rent provided for in Section 11.05(c)(vi) above for such premises.

(xiv)    At Landlord's request, the subtenant shall pay rent under its sublease directly to Landlord, and the amount so paid shall be credited against rent due and payable by Tenant under this Lease. Failure of any subtenant to pay Landlord shall not in any way reduce or relieve Tenant's obligation to make full payment of all rent under, and in accordance with, this Lease.

### ARTICLE 12

### Subordination, Attornment, Notice to Mortgagee

12.01    This Lease, and all rights of Tenant hereunder, are and shall be (a) subject and subordinate in all respects to all present and future ground leases of the land and/or the Building constituting part of the Demised Premises ("superior leases"), (b) subject to all mortgages and building loan agreements, which may now or hereafter affect the land and/or the Building and/or any superior leases, (c) at the option of the holder of the first mortgage on the Building, subordinate to the first

mortgage thereon, and (d) if consented to by such holder of the first mortgage, at the option of the holder of any junior or secondary mortgages, subordinate to such junior or secondary mortgages (any of which mortgages referred to in clauses (b), (c) and (d) hereof, whether or not subordinate, are herein referred to as "superior mortgages"), and the foregoing shall extend to each and every advance made or hereafter to be made under the superior mortgages, and to all renewals, modifications, replacements and extensions of the superior leases and superior mortgages and spreaders, consolidations and correlations of the superior mortgages. This Section shall be self-operative (after the holder of any superior mortgages exercises its option or grants its consent, as above provided) and no further instrument of subordination shall be required. In confirmation of such subordination, Tenant shall promptly execute and deliver at its own cost and expense any instrument, in recordable form, if required, that Landlord, the lessor of any superior lease or the holder of any superior mortgage or any of their respective successors in interest may request to evidence such subordination.

    **12.02**   Tenant agrees without further instruments of attornment in each case, to attorn to lessor under any superior lease, or to the holder of any superior mortgage or any successor to such holder's interest, upon such holder's or successor's request, as the case may be, to waive the provisions of any statute or rule or law now or hereafter in effect which may give or propose to give Tenant any right of election to terminate this Lease or to surrender possession of the Demised Premises in the event a superior lease is terminated or a superior mortgage is foreclosed, and that unless and until said lessor, or holder, as the case may be, shall elect to terminate this Lease, Tenant's obligations under this Lease shall not be affected in any way whatsoever by any such proceeding or termination (it being understood, however, that such holder or successor in interest shall under no circumstances be bound by any payment of rent for more than one month in advance, except for the Security Deposit, if any, or be bound by any amendment or modification of the Lease without the consent of such holder or successor in interest), and Tenant shall take no steps to terminate this Lease without giving written notice to said lessor under the superior lease, or holder of a superior mortgage, and a reasonable opportunity to cure (without such lessor or holder being obligated to cure), any default on the part of the Landlord under this Lease. This Section shall be self-operative and no further instrument of attornment shall be required. In confirmation of such attornment, Tenant shall promptly execute and deliver at its own cost and expense any instrument, in recordable form, if required, that Landlord, the lessor of any superior lease or the holder of any superior mortgage or any of their respective successors in interest may request to evidence such attornment.

    **12.03**   If any act or omission by Landlord would give Tenant the right, immediately or after lapse of time, to cancel or terminate this Lease or to claim a partial or total eviction, Tenant will not exercise any such right until (a) it has given written notice of such act or omission to each holder of a superior mortgage and to each holder of a superior lease, whose name and address shall have previously been furnished to Tenant, by delivering notice of such act or omission addressed to each such party at its last address so furnished and (b) a reasonable period for remedying such act or omission shall have elapsed following such giving of notice and following the time when such senior interest holder shall have become entitled under such senior interest, as the case may be, to remedy the same (which shall in no event be less than the period to which Landlord would be entitled under this Lease to effect such remedy) provided such senior interest holder shall, with reasonable diligence, give Tenant notice of its intention to remedy such act or omission and shall commence and continue to act upon such intention.

    **12.04**   Landlord shall request an agreement from the holder of any superior mortgage and from the holder of any superior lease on the Building, in such holder's standard form, that this Lease shall not be terminated in any proceeding to terminate any ground lease nor in any proceeding to foreclose any superior mortgage, so long as Tenant has fully complied with all of its obligations under this Lease, provided that Tenant shall be responsible for all costs, if any, incurred by Landlord in connection

therewith, and if such holders do not deny such request, Landlord shall use reasonable efforts to obtain such agreements.

## ARTICLE 13

### Costs of Operation

**13.01**  Regarding in Costs of Operation, the following shall be applicable:

A.    "Costs of Operation" shall mean all costs and expenses incurred by Landlord in connection with the operation, maintenance, and repair of any and all parts of the "Real Property" and of the Building and the improvements thereon and therein, including, without limitation, the following:  all materials, supplies and equipment, purchased or hired therefor; service contracts; fuel, electricity, gas, water; cleaning and sanitary; refurbishing; extermination; all insurance costs of Landlord applicable to the Real Property (including, without limitation, primary and excess liability, and further including vehicle insurance, fire and extended coverage, vandalism and all broad form coverages including, without limitation, riot, strike, and war risk insurance, flood insurance, rent insurance and sign insurance); legal (other than those for preparation of this and other leases) and accounting fees, commissions and charges; damages and other losses; taxes (including, without limitation, sales and use taxes); security systems, and management fees or if no managing agent is employed by Landlord, a sum in lieu thereof which is not in excess of then prevailing rates for management fees payable in Bronx County for similar retail buildings, it being understood that presently the management fee is 5% of Base Rent and base rent(s) payable under other leases in the Building.

B.    From time to time, Landlord shall furnish to Tenant a written statement of the Costs of Operation and shall also show the amount of estimated payments, if any, made by Tenant for the Costs of Operation in question. Within 10 days of submission of such a written statement, Tenant shall pay Landlord, as additional rent, the Proportionate Share of such Costs of Operation; there shall be credited against such payment any estimated payments made by Tenant with respect to such Costs of Operation.

C.    Landlord may submit to Tenant Landlord's estimate, reasonably determined, of Costs of Operation due and payable or to become due and payable during any Rent Year, together with the computation thereof and the basis therefor, in which event on the first day of each month thereafter Tenant shall pay to Landlord one-twelfth of such estimated sum (plus, if such statement is submitted after the commencement of any Rent Year, then one-twelfth of such sum times the number of months, or partial months, which have elapsed since such commencement).

D.    Landlord's failure to render a statement with respect to Costs of Operation for any period shall not prejudice Landlord's right to thereafter render a statement with respect thereto or with respect to any subsequent period.

**13.02**  Costs of Operation shall be adjusted and paid to the same extent as provided in Section 404 A and B applicable to Taxes.

## ARTICLE 14

### Quiet Enjoyment

**14.01**  Landlord covenants that if, and so long as, Tenant pays all of the Base Rent and additional rent due hereunder, and keeps and performs each and every covenant, agreement, term, provision and condition herein contained on the part and on behalf of Tenant to be kept and performed, Tenant shall quietly enjoy the Demised Premises without hindrance or molestation by Landlord or by any other person lawfully claiming the same, subject to the covenants, agreements, terms, provisions and conditions of this Lease and to any superior leases and/or superior mortgages.

## ARTICLE 15

## Non-Liability, Indemnification and Non-Recourse

**15.01**   Tenant shall hold Landlord harmless against any and all claims, damages, suits or causes of action for damages arising after the commencement of the term hereof and any orders, decrees or judgments which may be entered therein, brought for damages or alleged damages resulting from any injury to person or property or from loss of life sustained in or about the Demised Premises, or in or upon the sidewalks, vaults or streets in front of or appurtenant thereto by any person or persons whatever. It is the intention and agreement that Landlord shall not be liable for any personal injuries or damage to Tenant or its officers, agents, employees, contractors, representatives, successors, assigns, subtenants, licensees, invitees or to any other persons whatsoever or to any occupant (collectively "Tenant and Others") of any part of the Real Property, or for any injury or damage to any goods, wares, merchandise or property of any or all of Tenant and Others, irrespective of how the same may be caused, whether from action of the elements or acts of negligence of the owner or occupants of the adjacent properties.

Tenant shall and will indemnify and save harmless Landlord of and from any and all liability, loss, damage or expense, causes of action, suits, claims and judgments, including reasonable legal expenses and disbursements in connection with defending against any such action, suit or claim arising from injury to persons or property of any and every nature and for any matter or thing growing out of the occupation of the Real Property, or any part thereof including stores, or arising or growing out of the use, occupation, management or possession of the Demised Premises, or any part thereof, or of the vaults, sidewalks adjacent thereto, occasioned by any or all of Tenant and Others including, without limitation, that which may be caused by the operation of New York City or of any of its departments, bureaus, etc. in the construction of any public work, or of any other matter, at any time during the Term.

**15.02**   Notwithstanding any contrary provisions of this Lease whatsoever, including, without limitation, those pertaining to use and Permitted Use, Tenant shall not use, or permit the use of the Demised Premises, so as to create or result in, directly or indirectly, (a) any sudden or gradual spill, leak, discharge, escape, seepage, infiltration, abandonment, dumping, disposal or storage of any hazardous or industrial waste, substance or contamination, effluent, sewage, pollution or other detrimental or deleterious material or substance (including without limitation asbestos), or the disposal, storage or abandonment on the Demised Premises of any material, tank or container holding or contaminated by any of the foregoing or residues thereof, or the installation of any material or product containing or composed of any of the foregoing, in, on, from under or above the Demised Premises (the foregoing occurrences being hereinafter collectively called "Environmental Hazard"), or (b) any violation, or state of facts or condition which would result in a violation, of any Federal, State or local statute, law, code, rule, regulation or order applicable to any Environmental Hazard (the foregoing being hereinafter collectively called "Legal Violation"). In the event of the violation of the foregoing by Tenant, in addition to all other rights and remedies of Landlord under this Lease, regardless of when the existence of the Environmental Hazard or Legal Violation is determined, and whether during the Term or after the Expiration Date, (I) Tenant shall, immediately upon notice from Landlord, at Tenant's sole cost and expense, at Landlord's option, either (x) take all action necessary to test, identify and monitor the Environmental Hazard and to remove the Environmental Hazard from the Demised Premises and dispose of the same and restore the Demised Premises to the condition existing prior to such removal, and/or to remedy any Legal Violation, all in accordance with applicable Federal, State and local statutes, laws, codes, rules, regulations or orders or (y) reimburse Landlord for all costs and expenses incurred by Landlord for engineering or environmental consultant or laboratory services) in testing, investigating, identifying and monitoring the Environmental Hazard and in removing and disposing of the Environmental Hazard and in restoring the Demised Premises, and/or in remedying any Legal Violation; and (II) Tenant shall and hereby does defend with legal counsel acceptable to Landlord, indemnify and save harmless Landlord and Others in

23

Interest against and from all liabilities, obligations, damages, penalties, claims, costs, charges and expenses, including architects' and attorneys' fees and disbursements which may be imposed upon or incurred by or asserted against Landlord and Others in Interest, whether by any governmental authority, Tenant or other third party, by reason of any violation or alleged violation of any of the foregoing provisions of this Section.

Landlord represents that it is not aware of any asbestos in the Demised Premises.

**15.03**  Anything to the contrary in this Lease notwithstanding, Tenant shall look solely to the estate and interest of Landlord, its successors and assigns, in the Real Property (or the proceeds thereof) for the collection of a judgment (or other judicial process) requiring the payment of damages or money by Landlord in the event of any default by Landlord hereunder, and no other property or assets of Landlord, its agents, directors, officers, shareholders, partners or principals (disclosed or undisclosed) shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to either this Lease, the relationship of Landlord and Tenant hereunder or Tenant's use and occupancy of the Demised Premises, or any other alleged liability of Landlord to Tenant.

## ARTICLE 16

### Destruction and Damage

**16.01**  If the Demised Premises, Building and/or access thereto shall be partially or totally damaged or destroyed by fire or other casualty, then, Landlord, subject to its rights under Section 15.03 hereof, substantially shall repair the damage and restore and rebuild the Demised Premises and/or access thereto as nearly as may be reasonably practical to its condition and character immediately prior to such damage or destruction, with reasonable diligence after notice to it of the damage or destruction.

**16.02**  In case of substantial damage or destruction of the Demised Premises, Tenant may terminate this Lease by notice to Landlord, if Landlord has not completed the making of the required repairs and restored and rebuilt the Demised Premises and/or access thereto within nine (9) months from the date of such damage or destruction, and such additional time after such date (but not to exceed six (6) months) as shall equal the aggregate period Landlord may have been delayed in doing so by adjustment of insurance or Events of Force Majeure.

In case the Building shall be so damaged by such fire or other casualty that substantial renovation, reconstruction or demolition of the Building shall, in Landlord's opinion, be required (whether or not the Demised Premises shall have been damaged by such fire or other casualty), then Landlord may, at its option, terminate this Lease and the Term and estate hereby granted, by notifying Tenant in writing of such termination, within one hundred twenty (120) days after the date of such damage. If at any time prior to Landlord giving Tenant the aforesaid notice of termination or commencing the repair and restoration pursuant to Section 16.01, the holder of a superior mortgage or the lessor of a superior lease or any person claiming under or through the holder of such superior mortgage or the lessor of such superior lease takes possession of the Building through the foreclosure or otherwise, such holder, lessor, or person shall have a further period of sixty (60) days from the date of so taking possession to terminate this Lease by appropriate written notice to Tenant. In the event that such a notice of termination shall be given pursuant to either of the next two (2) preceding sentences, this Lease and the Term and estate hereby granted shall expire as of the date of such termination with the same effect as if that were the date hereinbefore set for the expiration of the Term, and the Base Rent and additional rent due and to become due hereunder shall be apportioned as of such date if not earlier abated pursuant to Section 16.02. Nothing contained in this Section 16.02 shall relieve Tenant from any liability to Landlord or to its insurers in connection with any damage to the Demised Premises or the Building by fire or other casualty if Tenant shall be legally liable in such respect.

**16.03**    No damages, compensation or claim shall be payable by Landlord for inconvenience, loss of business or annoyance arising from any repair or restoration of any portion of the Demised Premises or of the Building pursuant to this Article. Landlord shall use due diligence to effect such repair or restoration promptly and in such manner as not unreasonably to interfere with Tenant's use and occupancy and in consultation with Tenant.

**16.04**    Landlord will not be required to carry insurance of any kind on Tenant's Property or on Tenant's Work, Tenant's Changes or any other work except to the extent that Tenant shall have notified Landlord of any such work pursuant to Section 10.02C hereof and except further to the extent that such work shall be insurable under Landlord's policy, and Landlord shall not be obligated to repair any damage to, or restore or rebuild, Tenant's Property or such excess work or to replace the same. For purposes of this Article 16 the term casualty damage, to the extent Landlord is responsible under this Article 16, shall not be deemed to include damage caused by vandalism, unknown cause or other act not normally covered under fire and extended coverage insurance policies applicable to office buildings in the area in which the Building is located, if such causes are included in the repair obligations under Article 16 hereof for which Tenant is responsible to pay.

**16.05**    The provisions of this Article shall be considered an express agreement governing any case of damage or destruction of the Demised Premises by fire or other casualty, and Section 227 of the Real Property Law of the State of New York, providing for such a contingency in the absence of an express agreement, and any other law of like import, now or hereafter in force, shall have no application in such case.

**16.06**    Tenant's obligation to make payment of the rent and all other charges on the part of Tenant to be paid and to perform all other covenants and agreements on the part of Tenant to be performed shall not be affected by any such damage or destruction of the Building any part of the Demised Premises or Tenant's property by any loss, damage or destruction. Landlord shall credit to the rent payable hereunder the proceeds of any rent insurance proceeds received by Landlord during the period of restoration to the extent necessary to pay such rent.

**16.07**    Notwithstanding any of the foregoing provisions of this Article, if Landlord or the lessor of any superior lease or the holder of any superior mortgage shall be unable to collect all of the insurance proceeds (including rent insurance proceeds) applicable to damage or destruction of the Demised Premises or the Building by fire or other cause, by reason of some action or inaction on the part of Tenant or any of its employees, agents or contractors, then, without prejudice to any other remedies which may be available against Tenant, the abatement of Tenant's rents provided for in this Article shall not be effective to the extent of the uncollected insurance proceeds.

## ARTICLE 17

### Eminent Domain; Condemnation

**17.01**    In the event that the Real Property, Building, or any part of the Demised Premises, shall be taken in condemnation proceedings or by the exercise of any right of eminent domain or by agreement between any superior lessors and lessees and/or Landlord on the one hand and any governmental authority authorized to exercise such right on the other hand, Landlord shall be entitled to collect from any condemnor the entire award or awards that may be made in any such proceeding without deduction therefrom for any estate hereby vested in or owned by Tenant, to be paid out as in this Article provided. Tenant hereby expressly assigns to Landlord all of its right, title and interest in or to every such award and also agrees to execute any and all further documents that may be required in order to facilitate the collection thereof by Landlord.

**17.02**   At any time during the Term if title to the whole or a substantial portion of the Building or Demised Premises shall be taken in condemnation proceedings or by the exercise of any right of eminent domain or by agreement between any superior lessors and lessees and/or Landlord on the one hand and any governmental authority authorized to exercise such right on the other hand, at Landlord's option, this Lease shall terminate and expire on the date of such taking and the Base Rent and additional rent provided to be paid by Tenant shall be apportioned and paid to the date of such taking.

**17.03**   Either party may elect to terminate this Lease if that portion of the Building shall be reduced by more than 25% by notice of such election to the other party given not later than thirty (30) days after (i) notice of such taking is given by the condemning authority, or (ii) the date of such taking, whichever occurs later. Upon the giving of such notice this Lease shall terminate on the date of service of such notice and the Base Rent and additional rent due and to become due, shall be prorated and adjusted as of the date of the taking. If both parties fail to give such notice upon such partial taking, and this Lease continues in force as to any part of the Building not taken, the rents apportioned to the part taken shall be prorated and adjusted as of the date of taking and from such date the Base Rent and additional rent shall be reduced to the amount apportioned to the remainder of the Building.

**17.04**   Notwithstanding the foregoing provisions of this Article and subject to the interests of any mortgagee or lessor or grantor under any superior mortgage or superior lease, Tenant shall be entitled to appear, claim, prove and receive in the proceedings relating to any taking mentioned in the preceding Sections of this Article, such portion of each award made therein as represents any moving or relocation expenses to which Tenant may be entitled, and any special awards or allowances provided by law to tenants whose space has been taken by eminent domain, so long as the foregoing does not reduce Landlord's award and does not include the value of the leasehold estate which shall belong to Landlord.

**17.05**   In the event of any such taking of less than the whole of the Building which does not result in a termination of this Lease, or in the event of such a taking of all or any part of the Demised Premises which does not result in a termination of this Lease, subject to compliance with the provisions of any superior mortgage and superior lease, Tenant (or Landlord as and to the extent provided in Article 16 hereof as if damage and destruction covered thereby were involved) shall proceed with reasonable diligence to repair, alter and restore the remaining part of the Building and the Demised Premises to substantially the same condition as it was in immediately (a) prior to the date of this Lease or (b) at the option of the party making such repair, alteration or restoration, prior to the date of such taking to the extent that the same may be feasible, so as to constitute a tenantable Building and Demised Premises.

## ARTICLE 18

### Surrender

**18.01**   On the last day of the Term, or upon any earlier termination of this Lease, or upon any re-entry by Landlord upon the Demised Premises, Tenant shall quit and surrender the Demised Premises to Landlord free of all tenancies, licenses and occupancies and free of all liens and encumbrances, broom clean, in good order, condition and repair except for ordinary wear and tear and damage by fire or other insured casualty.

**18.02**   Prior to such surrender, Tenant shall (a) remove all of Tenant's property, (b) at Landlord's request, repair any damage and make any replacements to the Building or the Demised Premises resulting from or necessitated by such removal, and restore those parts of the Demised Premises from which the removal referred to in subparagraph (a) above occurred, to a condition which will blend with and be comparable to and compatible with adjacent areas. If Tenant shall fail to perform as provided in this Section 18.02 hereof, Landlord shall have the right (but not the obligation) to do so at Tenant's cost and expense, without further notice or demand upon Tenant, and Tenant shall indemnify Landlord against all

loss or liability resulting therefrom, including without limitation, any delay in granting occupancy of the Demised Premises to a future occupant, and, at Landlord's option, Tenant shall be deemed a Tenant from month to month pursuant to Section 18.04 hereof until compliance with the removal, repair and restoration provisions of this Section 18.02 hereof has fully been satisfied. Where furnished by or at the expense of Tenant, furniture, trade fixtures and business equipment (not constituting part of the Demised Premises) shall be removed by the Tenant at or prior to the termination of this Lease provided however, that the removal thereof will not structurally injure the Building or necessitate fundamental changes in or repairs to the Building. Tenant shall pay or cause to be paid to Landlord the cost of repairing any damage arising from such removal. Any personal property of Tenant which shall remain in the building after the termination of this Lease and the removal of Tenant from the building, may, at the option of Landlord be deemed to have been abandoned by Tenant and either may be retained by Landlord as its property or be disposed of, without accountability, in such manner as Landlord may see fit. Landlord shall not be responsible for any loss or damage occurring to any property owned by Tenant.

18.03   Tenant hereby indemnifies and agrees to hold Landlord harmless from and against any loss, cost, liability, claim, damage, fine, penalty and expense, including reasonable attorneys' fees and disbursements, resulting from delay by Tenant in surrendering the Demised Premises upon the termination of this Lease as provided in this Article 18, including without limitation, any claims made by any succeeding tenant or prospective tenant based upon such delay.

18.04   In the event Tenant remains in possession of the Demised Premises after the termination of this Lease without the execution by Landlord and Tenant of a new Lease, Tenant, at the option of Landlord, shall be deemed to be occupying the Demised Premises as a tenant from month to month, at a monthly rental equal to two times the Base Rent and additional rent payable during the last month of the Term, subject to all of the other terms of this Lease insofar as the same are applicable to a month-to-month tenancy, and without in any way whatsoever waiving the provisions of Section 18.03 hereof.

## ARTICLE 19

### Brokerage

19.01   Tenant represents that, it dealt with no broker or other party who is entitled to any fee or commission or who was instrumental in the negotiation of this Lease, and Tenant hereby indemnifies Landlord and agrees to hold Landlord harmless from any and all losses, costs, damages, expenses, claims and liabilities, including, without limitation, court costs and attorneys' fees and disbursements, arising out of any inaccuracy or alleged inaccuracy of the above representation.

## ARTICLE 20

### Events of Default and Termination

20.01   A.    This Lease and the Term and estate hereby granted are subject inter alia to the limitation that whenever Tenant shall make an assignment for the benefit of creditors, or shall file a voluntary petition under any bankruptcy or insolvency law, or an involuntary petition alleging an act of bankruptcy or insolvency is filed against Tenant, or whenever a petition shall be filed by or against Tenant seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or any future federal bankruptcy act or any other present or future applicable federal, state or other statute or law, or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Tenant or of all or any substantial part of its properties, or whenever a permanent or temporary receiver of Tenant or of, or for, the property of Tenant shall be appointed, or if Tenant shall plead bankruptcy or insolvency as a defense in any action or proceeding, then, Landlord, (a) at any time after receipt of notice of the occurrence of any such event, or (b) if such

event occurs without the acquiescence of Tenant, at any time after the event continues for sixty (60) days may give Tenant a notice of intention to end the Term at the expiration of five (5) days from the service of such notice of intention, and upon the expiration of said five (5) day period (whether or not the event resulting in such default shall have been cured within such five (5) day period) this Lease and the Term and estate hereby granted, whether or not the Term shall theretofore have commenced, shall terminate with the same effect as if that day were the Expiration Date, but Tenant shall remain liable for damages as provided as in Article 22. The foregoing provisions of this Section 20.01 also shall be applicable to Guarantor as though wherever the word "Tenant" is used the words "and/or Guarantor" immediately followed.

B.      If this Lease is assigned to any person or entity pursuant to the provisions of the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), any and all consideration payable or otherwise to be delivered in connection with such assignment shall be paid or delivered to Landlord, shall be and remain the exclusive property of Landlord and shall not constitute property of Tenant or of the estate of Tenant within the meaning of the Bankruptcy Code. Any and all monies and other consideration constituting Landlord's property under the preceding sentence not paid or delivered to Landlord shall be held in trust for the benefit of Landlord and be promptly paid to or turned over to Landlord.

C.      If, pursuant to the provisions of the Bankruptcy Code, Tenant assumes this Lease and proposes to assign the same to any person or entity who shall have made a bona fide offer to accept an assignment of this Lease on terms acceptable to Tenant then notice of such proposed assignment, setting forth (i) the name and address of such person, (ii) all of the terms and conditions of such offer, and (iii) the adequate assurance to be provided Landlord to assure such person's future performance under this Lease, including, without limitation, the assurance referred to in § 365(b)(3) of the Bankruptcy Code, shall be given to Landlord by Tenant no later than twenty (20) days after receipt by Tenant but in any event no later than ten (10) days prior to the date that Tenant shall make application to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Landlord shall thereupon have the prior right and option, to be exercised by notice to Tenant given at any time prior to the effective date of such proposed assignment, to accept an assignment of this Lease upon the same terms and conditions and for the same consideration, if any, as the bona fide offer made by such person, less any brokerage commissions which may be payable out of the consideration to be paid by such person for the assignment of this Lease.

20.02  A.      This Lease and the Term and estate hereby granted are subject to the further limitation that (a) whenever Tenant shall default in the payment of any installment of Base Rent, or in the payment of any additional rent, on any day upon which the same shall be due and payable, following ten days notice from Landlord to Tenant given not more than two times per Rent Year, or (b) whenever Tenant shall do or permit anything to be done, whether by action or inaction, contrary to any of Tenant's obligations hereunder, other than the payment of rent, and if such situation shall continue and shall not be remedied by Tenant within thirty (30) days after Landlord shall have given to Tenant a notice specifying the same, or, in the case of a happening or default which cannot with due diligence be cured within a period of thirty (30) days and the continuance of which for the period required for cure will not subject Landlord to the risk of civil or criminal liability or termination of any superior lease or foreclosure of any superior mortgage, if Tenant shall not duly institute within such thirty (30) day period and diligently prosecute to completion within an additional 30 days all steps necessary to remedy the same, or, (c) whenever any event shall occur or any contingency shall arise whereby this Lease or any interest therein or the estate hereby granted or any portion thereof or the unexpired balance of the Term hereof would, by operation of law or otherwise, devolve upon or pass to any person, firm or corporation other than Tenant, except as expressly permitted by Article 22, or (d) whenever Tenant shall abandon the Demised Premises, or a substantial portion of the Demised Premises shall remain vacant for a period of ten (10) consecutive days, unless such vacancy arises as a result of a casualty; then in any such event covered by subsections "a", "b", "c", or "d" of this Section 20.02, at any time thereafter, Landlord may give to Tenant a notice of

intention to end the Term of this Lease at the expiration of three (3) days from the date of service of such notice of intention, and upon the expiration of said three (3) days (whether or not the event resulting in such default shall have been cured within such three (3) day period) this Lease and the Term and estate hereby granted, whether or not the Term shall theretofore have commenced, shall terminate with the same effect as if that day were the Expiration Date, but Tenant shall remain liable for damages as provided in Article 22.

        B.     Notwithstanding any cure period provided in this Lease with regard to a default in the timely performance of any obligation under this Lease, if any such default shall occur more than three (3) times in any period of twelve (12) months, then, notwithstanding that such defaults shall have each been cured within the period after notice, if any, as provided in this Lease, any further similar default shall be deemed to be deliberate, and Landlord thereafter may serve the said three (3) days' notice of termination referred to in Section 20.02A upon Tenant without affording to Tenant an opportunity to cure such further default.

## ARTICLE 21

## Re-Entry by Landlord – Curing Tenant's Defaults

        **21.01**  If this Lease shall terminate for any reason whatsoever, Landlord or Landlord's agents and employees may, without further notice, immediately or at any time thereafter, enter upon and re-enter the Demised Premises, or any part thereof, and possess or repossess itself thereof either by summary dispossess proceedings, ejectment or by any suitable action or proceeding at law, or by agreement, or otherwise, and may dispossess and remove Tenant and all other persons and property from the Demised Premises without being liable to indictment, prosecution or damages therefor, and may repossess the same, and may remove any persons therefrom, to the end that Landlord may have, hold and enjoy the Demised Premises and the right to receive all rental income again as and of its first estate and interest therein. In the event of any termination of this Lease under the provisions of Article 19 or re-entry under this Article by reason of default hereunder on the part of Tenant, Tenant shall thereupon pay to Landlord the Base Rent and additional rent due up to the time of such termination of this Lease or of such recovery of possession of the Demised Premises by Landlord, as the case may be, and shall also pay to Landlord damages as provided in Article 22.

        **21.02**  In the event of any breach or threatened breach by Tenant of any of the agreements, terms, covenants or conditions contained in this Lease, Landlord shall be entitled to enjoin such breach or threatened breach and shall have the right to invoke any right and remedy allowed at law or in equity or by statute or otherwise as though re-entry, summary proceedings, and other remedies were not provided for in this Lease.

        **21.03**  Each right and remedy of Landlord provided for in this Lease shall be cumulative and shall be in addition to every other right or remedy provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by Landlord of any one or more of the rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by Landlord of any or all other rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise.

        **21.04**  If Tenant shall default in the performance of any covenant, agreement, term, provision or condition herein contained, Landlord without thereby waiving such default, may perform the same for the account and at the expense of Tenant without notice in case of emergency and in any other case if such default continues after three (3) days from the due date of the giving by Landlord to Tenant of written notice of intention to do so. Bills for any reasonable and necessary expense incurred by Landlord in

connection with any such performance by Landlord for the account of Tenant, and reasonable and necessary bills for all costs, expenses and disbursements, including (without being limited to) reasonable counsel fees, incurred in collecting or endeavoring to collect the Base Rent or additional rent or other charge or any part thereof or enforcing or endeavoring to enforce any rights against Tenant under or in connection with this Lease, or pursuant to law, whether or not any action or proceeding is instituted, payable by Tenant, within three (3) days of notice to Tenant and if not paid when due, the amounts thereof shall immediately become due and payable as additional rent under this Lease together with interest thereon at the Interest Rate from the date the said bills should have been paid in accordance with their terms. Landlord reserves the right, without liability to Tenant and without constituting any claim or constructive eviction, to suspend furnishing or rendering to Tenant any property, material, labor, utility or other service, wherever Landlord is obligated to furnish or render the same at the expense of Tenant, in the event that (but only for so long as) Tenant is in arrears in paying Landlord therefor.

## ARTICLE 22

### Damages

**22.01**   If this Lease is terminated under the provisions of Article 20, or if Landlord shall re-enter the Demised Premises under the provisions of Article 21 or in the event of the termination of this Lease, or of re-entry by reason of default hereunder on the part of Tenant, Tenant shall pay to Landlord as damages, at the election of Landlord, either,

A.   on demand, a sum which at the time of such termination of this Lease or at the time of any such re-entry by Landlord, as the case may be, represents the excess of (1) the aggregate of the Base Rent and the additional rent payable hereunder which would have been payable by Tenant (conclusively presuming the additional rent to be the same as was payable for the year immediately preceding such termination) for the period commencing with such earlier termination of this Lease or the date of any such re-entry, as the case may be, and ending with the expiration of the Term, had this Lease not so terminated or had Landlord not so re-entered the Demised Premises, over (2) the aggregate fair market rental value (calculated as of the date of such termination or re-entry) of the Demised Premises for the same period, or,

B.   sums equal to the Base Rent and the additional rent (as above presumed) payable hereunder which would have been payable by Tenant had this Lease not so terminated, or had Landlord not so re-entered the Demised Premises, payable quarterly but otherwise upon the terms therefor specified herein following such termination or such re-entry and until the expiration of the Term, provided, however, that if Landlord shall relet the Demised Premises or any portion or portions thereof during said period, Landlord shall credit Tenant with the net rents received by Landlord from such reletting, such net rents to be determined by first deducting from the gross rents as and when received by Landlord from such reletting the expenses incurred or paid by Landlord in terminating this Lease or in re-entering the Demised Premises and in securing possession thereof, as well as the expenses of reletting, including altering and preparing the Demised Premises or any portion or portions thereof for new tenants, brokers' commissions, advertising expenses, attorneys' fees, and all other expenses properly chargeable against the Demised Premises and the rental therefrom; it being understood that any such reletting may be for a period shorter or longer than the remaining Term of this Lease, but in no event shall Tenant be entitled to receive any excess of such net rents over the sums payable by Tenant to Landlord hereunder, nor shall Tenant be entitled in any suit for the collection of damages pursuant to this Subsection to a credit in respect of any net rents from a reletting, except to the extent that such net rents are actually received by Landlord. If the Demised Premises or any part thereof should be relet in combination with other space, then proper apportionment shall be made of the rent received from such reletting and of the expenses of reletting.

If the Demised Premises or any part thereof be relet by Landlord for the unexpired portion of the Term, or any part thereof, before presentation of proof of such damages to any court, commission, or tribunal, the amount of rent reserved upon such reletting shall, prima facie, be the fair and reasonable rental value for the Demised Premises, or part thereof, so relet during the term of the reletting. Landlord however shall in no event and in no way be responsible or liable for any failure to relet the Demised Premises or any part thereof or for failure to collect any rent due upon any such reletting.

22.02    Suit or suits for the recovery of such damages, or any installments thereof, may be brought by Landlord from time to time at its election, and nothing contained herein shall be deemed to require Landlord to postpone suit until the date when the Term would have expired if it had not been so terminated under the provisions of Article 20, or under any provision of law, or had Landlord not re-entered the Demised Premises. Nothing herein contained shall be construed to limit or preclude recovery by Landlord against Tenant of any sums or damages to which, in addition to the damages particularly provided above, Landlord may lawfully be entitled by reason of any default hereunder or otherwise on the part of Tenant. Nothing herein contained shall be construed to limit or prejudice the right of the Landlord to prove for and obtain as liquidated damages by reason of the termination of this Lease or re-entry on the Demised Premises for the default of Tenant under this Lease, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved whether or not such amount be greater, equal to, or less than any of the sums referred to in Section 22.01.

22.03    Anything in this Lease to the contrary notwithstanding, if Tenant shall at any time be in default hereunder, whether or not Landlord shall institute an action or summary proceeding against Tenant based upon such default and whether or not such default results from non-payment of Base Rent or additional rent, or if Tenant requests Landlord to review or execute documents (including, without limitation, any sublease or occupancy documents) in connection with this Lease or to grant its consent or approval to the making of Tenant's Changes or any other thing, or otherwise if it is reasonably prudent for Landlord to contact legal counsel, architects, engineers or other representatives or agents as to the form or substance of any of the foregoing, then Tenant shall reimburse Landlord, as additional rent, for all fees, charges and disbursements of such attorneys, architects, engineers or other representatives or agents, thereby incurred by Landlord.

## ARTICLE 23

### Waivers, Failure to Enforce Terms, Modifications

23.01    Intentionally omitted.

23.02    Tenant waives Tenant's rights, if any, to assert a counterclaim in any summary proceeding brought by Landlord against Tenant for nonpayment of rent, and Tenant agrees to assert any such claim against Landlord only by way of a separate action or proceeding.

23.03    Tenant waives Tenant's rights, if any, to designate the items against which any payments made by Tenant are to be credited, and Tenant agrees that Landlord may apply any payments made by Tenant to any items it sees fit, irrespective of and notwithstanding any designation or request by Tenant as to the items against which any such payments shall be credited.

23.04    To the extent not prohibited by applicable law, Landlord and Tenant hereby waive trial by jury in any action, proceeding or counterclaim brought by either against the other or any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, or Tenant's use or occupancy of the Demised Premises, or any emergency or other statutory remedy with respect thereto.

**23.05**  The failure of either party to insist in any one or more instances upon the strict performance of any one or more of the agreements, terms, covenants, conditions or obligations of this Lease, or to exercise any right, remedy, or election herein contained, shall not be construed as a waiver or relinquishment for the future of the performance of such one or more obligations of this Lease or of the right to exercise such election, but the same shall continue and remain in full force and effect with respect to any subsequent breach, act or omission.  The manner of enforcement or the failure of Landlord to enforce any of the Rules and Regulations set forth herein, or hereafter adopted against the Tenant and/or any other tenant in the Building shall not be deemed a waiver of any such Rules and Regulations.

## ARTICLE 24

### Notices - Service of Process

**24.01**  Any notice, statement, demand, request or other communication required or permitted pursuant to this Lease or otherwise shall be in writing and shall be deemed to have been properly given if addressed to the other party at the address hereinabove set forth, and (a) if sent to such address by (i) registered or certified United States mail, return receipt requested, postage prepaid, or (ii) United States Express Mail or private, reputable overnight courier, charges prepaid, or (b) if personally delivered to such address to an officer, partner or other authorized representative of the other party, receipt requested, then in any of such events referred to in clauses (a) and (b) above, notice shall be deemed to have been given, rendered or made upon such delivery, or if rejected, when delivery was attempted.  Either party may, by notice as aforesaid, designate a different address or addresses for notices, statements, demands or other communications intended for it.  Notice given by counsel for either party shall be deemed valid if addressed and sent as aforesaid.

**24.02**  Tenant shall give notice to Landlord (and to the holder of any superior lease and superior mortgage of which Tenant has notice) promptly after Tenant learns thereof, (i) of any accident in or about the Demised Premises or the Building, (ii) of all fires in the Demised Premises, (iii) of all damages to or defects in the Demised Premises, including the fixtures, equipment and appurtenances thereof, for the repair of which Landlord might be responsible or which constitutes Landlord's property, and (iv) of all damage to or defects in any parts or appurtenances of the Building's sanitary, electrical, heating, ventilating, air conditioning, elevator and other systems located in or passing through the Demised Premises.

## ARTICLE 25

### Estoppel Certificate, Memorandum

**25.01**  Tenant agrees, at any time and from time to time, as requested by Landlord, or the holder of any superior lease or superior mortgage, upon not less than ten (10) days' prior notice, to execute and deliver without cost or expense to the Landlord a statement prepared by Landlord or such holder certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications), certifying the dates to which the Base Rent and additional rent have been paid, and stating whether or not, to the best knowledge of Tenant, Landlord is in default in performance of any of its obligations under this Lease, and, if so, specifying each such default of which the Tenant may have knowledge, specifying that Tenant shall not look to the holder of a superior lease or superior mortgage for the return of any Security Deposit to the extent that the Security Deposit has not been transferred to such holder, and specifying as to such other matters as may be reasonably requested and as are part of the standard form or request of such holder, it being intended that any such statement delivered pursuant thereto may be relied upon by any other person with whom the Landlord, or the holder of any superior lease or superior mortgage, may be dealing.

C&F&W 23773801

32

05/07/99

**25.02** Tenant agrees not to record this Lease. At the request of either party, Landlord and Tenant shall promptly execute, acknowledge and deliver a memorandum with respect to this Lease sufficient for recording, containing restrictions against any sublease of any part of the Demised Premises other than the Corner Store, which the requesting party may record. Such memorandum shall not in any circumstance be deemed to change or otherwise affect any of the obligations or provisions of this Lease.

## ARTICLE 26

### No Other Representations, Construction, Governing Law, Notice Prior to Suit

**26.01** This Lease supersedes and revokes all previous negotiations, arrangements, letters of intent, offers to lease, lease proposals, brochures, "Representations" (meaning covenants, promises, assurances, agreements, representations, conditions, warranties, statements and understandings), and information conveyed, whether oral or in writing, between the parties hereto or their respective representatives or any other person purporting to represent Landlord or Tenant. Tenant expressly acknowledges and agrees that Landlord has not made and is not making, and Tenant, in executing and delivering this Lease, is not relying upon, and has not been induced to enter into this Lease by, any Representations, except to the extent that the same are expressly set forth in this Lease or in any other written agreement which may be made and executed between the parties concurrently with the execution and delivery of this Lease and shall expressly refer to this Lease, and no such Representations not so expressly herein set forth shall be used in the interpretation or construction of this Lease, and Landlord shall have no liability for any consequences arising as a result of any such Representations not so expressly herein set forth.

**26.02** If any of the provisions of this Lease, or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Lease shall be valid and enforceable to the fullest extent permitted by law so long as nothing shall cause to occur the Commencement Date if the closing of the Personalty Agreement and Realty Agreement does not occur.

**26.03** This Lease shall be governed and construed in all respects by laws of the State of New York.

**26.04** Notwithstanding any contrary provision of this Lease, Tenant shall not under any circumstances commence any action or proceeding or take any action based upon an alleged breach or default of this Lease by or through landlord unless and until (a) Tenant shall have notified Landlord thereof, specifying in detail the facts of the alleged breach or default, and (b) Landlord shall not have cured, or used due diligence to cure, said alleged breach or default within 30 days after receipt of said notice.

## ARTICLE 27

### Parties Bound

**27.01** The obligations of this Lease shall bind and benefit the successors and assigns of the parties with the same effect as if mentioned in each instance where a party is named or referred to, except that no violation of the provisions of Article 11 shall operate to vest any rights in any successor or assignee of Tenant, and that the provisions of this Article shall not be construed as modifying the conditions of limitation contained in Article 19. However, the obligations of Landlord under this Lease shall not be binding upon Landlord herein named with respect to any period subsequent to the transfer of its interest in the Building as owner or lessee thereof and in the event of such transfer said obligations shall thereafter be binding upon each transferee of the interest of Landlord herein named as such owner or lessee of the Building, but only with respect to obligations arising during the period commencing with such transfer and ending with a subsequent transfer within the meaning of this Article, and such transferee, by accepting such interest, shall be deemed to have assumed such obligations except only as may be expressly otherwise provided elsewhere in this Lease. A Lease of Landlord's entire interest in the Building as owner or lessee thereof shall be deemed a transfer within the meaning of this Article 27.

## ARTICLE 28

### Miscellaneous Provisions

**28.01** All work that Tenant does or shall do in the Demised Premises, shall be done by contractors licensed to do business in the State of New York, and shall at all Legal Requirements and Insurance Requirements. Tenant, as additional rent, shall indemnify and hold harmless Landlord, against any loss or damage Landlord may sustain by reason of, and against, any orders, decrees, judgments, attorneys' fees and expenses resulting from, failure of Tenant to comply with the provisions hereof.

**28.02** The Article headings in this Lease and the Table of Contents prefixed to this Lease are inserted only as a matter of convenience or reference, and are not to be given any effect whatsoever in construing this Lease.

**28.03** Any provision of this Lease which requires a party not to unreasonably withhold its consent, (a) shall be read as if the word "withhold" read "withhold, delay or defer", and (b) shall never be the basis for any award of damages (unless exercised in intentional and deliberate bad faith) or give rise to a right of setoff to the other party, but shall be the basis for a declaratory judgment or specific injunction with respect to the matter in question.

**28.04** This Lease is offered to Tenant for signature with the express understanding that it shall not be binding upon Landlord unless and until Landlord shall have executed and delivered a fully executed copy to Tenant, and until the holder of any and all superior mortgages shall have approved the same. There presently is no superior mortgage covering the Building.

**28.05** Each of the persons executing this Lease on behalf of Landlord and Tenant hereby represents and warrants to the other that (s)he has been duly authorized to execute this Lease for and on behalf of Landlord and Tenant.

**28.06** This Lease may be executed in two (2) or more counterparts each of which as so executed shall constitute one agreement, binding on all of the parties hereto, notwithstanding that all the parties are not signatory to the original or the same counterpart; provided, however, that no provision of this Lease shall become effective and binding unless and until all parties hereto have duly executed this Lease, at

34

which time this Lease shall then become effective and binding as of the date first above written.

## ARTICLE 29

### Security Deposit

**29.01** Tenant shall deposit with Landlord the Security Deposit, as security for the punctual performance by Tenant of each and every obligation of it under this Lease, (x) $26,000 in the form of cash and (y) $100,000 in the form of cash or by a sight, demand, unconditional one year letter of credit, in form reasonably acceptable to Landlord, issued by a national, commercial bank having an office in New York, New York, naming Landlord as payee, and providing that (a) in the event of any default by Tenant beyond any applicable cure period, Landlord may draw down on such letter of credit and retain all or any part of the proceeds to cure the default or to reimburse Landlord for any sum which Landlord may spend by reason of the default, as permitted by the Lease, and (b) in the event that such letter of credit is not renewed or replaced with a like-kind letter of credit prior to 30 days before the maturity or expiration date of such letter of credit, then the full amount of such letter of credit shall be drawn and payable to Landlord on such 30th day, whereupon Landlord shall deposit such proceeds in a bank account. Notwithstanding the foregoing, the letter of credit need not be renewed or issued beyond the end of the third Rent Year. Effective as of the increase in Base Rent under the Lease, the amount of that portion of the Security Deposit provided in clause (x) hereof also shall be increased so as to equal at all times 2 current monthly installments of Base Rent. In the case of every such draw on a letter of credit, Tenant shall, on demand, pay to Landlord the proceeds so drawn which shall be placed in trust and segregated in a bank account and added to the Security Deposit so that the same shall at all times equal the original amount of the Security Deposit. If at the end of the Term Tenant shall not be in default under this Lease, the Security Deposit, or any balance thereof remaining after Landlord's curing of any default by Tenant, shall be returned to Tenant, within thirty (30) days after the Expiration Date. In the event of a sale of the Real Property, the leasing of the whole Real Property, or the transfer of the Real Property (or of any of the benefits under the Lease) to the holder of any superior mortgage or superior lease, Landlord shall have the right to transfer the security, whether then in form of a letter of credit or bank account, to the vendee, lessee or holder, and if so transferred Landlord shall thereupon be released by Tenant from all liability for the return of such security; and, only to the extent of receipt of the Security Deposit by the new Landlord, Tenant agrees to look to the new landlord solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer made of the security to a new Landlord. In connection with any such transfer where any of the security then is in the form of a letter of credit, Tenant shall cause the letter of credit to be amended so as to name such transferee as payee, or if the foregoing is not effected by Tenant, Landlord shall draw down the letter of credit and transfer the proceeds thereof to such transferee. Tenant further agrees that it will not assign or encumber or attempt to assign or encumber the Security Deposit and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance. That portion of the Security Deposit in the form of cash shall be kept in an interest-bearing account with interest accruing to Tenant.

In the event Tenant defaults in the payment of any installment of Base Rent, or in the payment of any additional rent, on any day upon which the same shall be due and payable, following notice from Landlord to Tenant given not more than two times in any Rent Year, then Tenant immediately upon notice from Landlord shall deposit with Landlord, to be added to the Security Deposit, a sum equal to one monthly installment of Base Rent then payable under the Lease.

## ARTICLE 30

### Shoring

**30.01**  If an excavation or other substructure work shall be undertaken or authorized upon land adjacent to the Building or in the vaults beneath the Building or in subsurface space adjacent to the said vaults, Tenant, without liability on the part of the Landlord therefor, shall afford to the person causing or authorized to cause such excavation or other substructure work license to enter upon the Demised Premises for the purpose of doing such work as such person shall deem necessary to protect or preserve any of the walls or structures of the Building or surrounding lands from injury or damage and to support the same by proper foundations, pinning and/or underpinning, and, except in case of emergency, if so requested by Tenant such entry shall be accomplished in the presence of a representative of Tenant, who shall be designated by Tenant promptly upon Landlord's request.  The said license to enter shall be afforded by Tenant without any claim for damages or indemnity against the Landlord, and Tenant shall not be entitled to any diminution or abatement of rent on account thereof.

## ARTICLE 31

### Extension of Term

**31.01**  Provided that this Lease is in full force and effect, that Tenant has fully and faithfully complied with all of its obligations under this Lease, and that Tenant has not assigned this Lease, then Tenant (but not any subtenant or assignee) shall have the option to continue leasing for an additional period of five years commencing on the moment immediately following the Expiration Date ("First Continuation Term") upon the following terms and conditions:

A.  The space to be included in the First Continuation Term shall be the same space as was included in the Lease at the moment immediately prior to the commencement of the First Continuation Term.

B.  Tenant shall exercise its option to lease for the First Continuation Term by notifying Landlord thereof ("First Continuation Notice") not later than ten full calendar months prior to the commencement of the First Continuation Term.

C.  Provided that Tenant complies with the conditions in Section 31.01B hereof, then the following terms shall be applicable to the First Continuation Term:

(i)  The Demised Premises shall be delivered to Tenant "as is", in their same condition.

(ii)  No rent concession or abatement shall be applicable.

(iii)  Tenant's obligation to pay all additional rent shall continue through the First Continuation Term, and the annual Base Rent for each Rent Year during the First Continuation Term shall be increased to the greater of (a) 103% of the Base Rent payable during the last year of the original Term to be increased as of the commencement of each succeeding Rent Year of the First Continuation Term by 103% of the Base Rent payable during the immediately preceding Rent Year, and (b) the amount determined under Section 31.01D hereof.

(iv)  All of the other terms and conditions of this Lease shall be applicable to the First Continuation Term other than rent, any further right to renew (except for the Second Continuation Term), and other than as may be reasonably necessary because a renewal term rather than an

original term, and a previously occupied space rather than a new space, is involved.

D.    Promptly following receipt by Landlord of the First Continuation Notice timely given as provided in Section 31.01B, Landlord shall notify Tenant of the amount which, in Landlord's reasonable opinion, represents the fair market Base Rent during the Continuation Term. Fair market Base Rent ("Fair Market Rent") shall mean the annual fair rental value of the Demised Premises (without deduction for the cash value of free rent and leasehold improvements), which renewing, non-equity tenants are then receiving in connection with a lease for comparable space in a building of the same age, quality, size, location, services, amenities, quality of construction and appearance to that of the Building on the date of the commencement of the First Continuation Term and otherwise containing the same provisions as this Lease contains with respect to the First Continuation Term. Within twenty (20) days of such notice, (a) if Tenant agrees, Tenant shall notify Landlord that Tenant so agrees that the Base Rent therein noted constitutes the "Fair Market Rent", as hereinafter provided or (b) if Tenant disagrees, Tenant shall specify what Base Rent, in Tenant's opinion, constitutes the Fair Market Rent ("Tenant's Base Rent Notice"), or (c) if Tenant does not respond, Tenant shall be deemed to disagree. In the event Tenant agrees as provided in clause (a) above, the Base Rent set forth in Landlord's said notice shall be deemed the Fair Market Rent. In the event Tenant disagrees as provided in clauses (b) or (c) above, the following procedure shall be used in determining Fair Market Rent (sometimes hereinafter called "Fair Market Rent Procedure"):

In the event the parties cannot agree upon the Fair Market Rent within 7 business days following the foregoing 20 day period, then at the request of either party to the other (called the "Initial Request"), the parties shall jointly choose an impartial real estate broker (who shall have had at least ten (10) years experience as a broker in commercial office leasing in the Bronx, New York area), whose decision shall be final and binding. If the parties do not agree upon such a third party broker and notify in writing the other thereof within 7 business days of the Initial Request, then within 6 additional business days each party shall choose such a real estate broker (having the foregoing credentials) and notify in writing the other thereof, and the joint decision of such real estate brokers regarding Fair Market Rent shall be final and binding, (or, failing such choice, or, if such choice is made, failing notice to the other within such 6 additional business day period, the decision of one such real estate broker timely chosen and noticed shall be final and binding). If the two real estate brokers timely chosen and noticed do not agree within 7 business days of the end of the 6 business day period mentioned above during which they were chosen, then they shall choose a third such real estate broker within 5 business days, or if they do not agree upon a third, then either party may make a request of the Chairman of the Real Estate Section of the New York County Bar Association of the appointment of such a broker, and the decision of such third real estate broker regarding Fair Market Rent shall be final and binding.

E.    Within fifteen (15) days following Landlord's submission to Tenant of a First Continuation Term Agreement in accordance with the terms of Section 31.01, Tenant shall sign and return the same to Landlord.

31.02    Provided that this Lease is in full force and effect, that Tenant has fully complied with all of its obligations under the Lease applicable to the First Continuation Term, and that Tenant has not assigned this Lease, then Tenant (but not any subtenant or assignee) shall have the option to continue leasing for an additional period of five years commencing on the moment immediately following the expiration of the First Continuation Term ("Second Continuation Term") upon the following terms and conditions:

A.    The same terms and conditions of subsections A through E of Section 31.01 shall be applicable to the Second Continuation Term and are incorporated into this Section 31.02, except that (i) reference therein to "Section 31.01B", "Expiration Date", "original Term", "First Continuation Term" and "First Continuation Notice" shall be deemed changed for purposes of this Section 31.02 to "Section

31.02B, "end of the First Continuation Term", "First Continuation Term" and "Second Continuation Term", respectively, and (ii) the parenthetical language in Section 31.01C(iv) shall be deleted for purposes of Section 31.02C(iv).

## ARTICLE 32

### Lot Stores

**32.01**  It is understood that simultaneous with the execution of this Lease, Tenant is entering into a sublease ("Sublease") with Fordham Road Lot Stores, Inc. ("Subtenant"), all of the shares of stock of which are owned by Lot Stores, Inc. ("Subtenant Guarantor"), both having a principal place of business and address at 6 Sutton Place, Edison, New Jersey 08817. Tenant and Subtenant have not yet precisely defined which portion of the first floor and basement will be covered by the Sublease, but it will be approximately 60% of the first floor portion, approximately 11% of the basement portion and none of the mezzanine portion of the Demised Premises. Since Landlord is unwilling to delay execution of a lease of the Demised Premises while Tenant and Subtenant decide the exact portion of the Demised Premises so to be sublet ("Sublease Premises"), Landlord is entering this Lease with Tenant and is consenting to the Sublease on the terms and conditions set forth in Section 32.02 hereof, provided that once the "Separability Conditions" (as defined in Section 32.02 E hereof) are met, this Lease shall become separated into two separate and independent leases, one between Landlord and Subtenant with respect to the Sublease Premises and one between Landlord and Tenant with respect to the Demised Premises other than the Sublease Premises ("New Demised Premises"), all in accordance with the terms and conditions hereinafter in this Article 32 provided.

**32.02**  Landlord hereby consents to the Sublease, insofar as Tenant's and Subtenant's relationship between each other is concerned, but insofar as Landlord is concerned:

A.  Until the precise area of the Sublease Premises is determined between Tenant and Subtenant (and reasonably approved by Landlord), Subtenant shall be directly responsible and liable to Landlord hereunder for that portion of (i) the Base Rent equal to $45.43 times 60% of the gross number of square feet in the first floor portion of the Demised Premises as shown on Exhibit A, (ii) 60% of the Proportionate Share, (iii) 60% of the Tax Share and (iv) 60% of the Prepayment; and Tenant shall be directly liable to Landlord for the remaining 40% of the foregoing items. All payments of rent shall be made directly to Landlord by Subtenant and Tenant in accordance with the terms of the Lease.

B.  Once the precise area of the Sublease Premises is determined as above provided, each of Tenant and Subtenant, respectively, shall be responsible for that percentage of the foregoing items which the exact gross number of square feet in the first floor portion of the Sublease Space and New Demised Premises (determined in accordance with "BOMA" measurement standards) bears to the total number of gross square feet on the first floor portion of the Demised Premises (but not less than 100% of the foregoing those items, as provided in the Lease). Upon the foregoing determination, Tenant and Subtenant shall adjust between them any payments made to Landlord prior thereto pursuant to Section 32.02 A above.

C.  The Security Deposit shall be made only by Tenant and shall pertain only to the obligations of Tenant to Landlord under this Lease and not to those of Subtenant to Landlord. Subtenant shall not be required to make any security deposit with Landlord.

D.  Tenant shall remain fully liable to Landlord for all terms and conditions on the part of Tenant to be performed hereunder, including those of Subtenant (other than payment of Base Rent) if Subtenant fails timely to comply with its obligations to Landlord hereunder.

E.     "Separability Conditions" shall mean:

(i)     separating the Demised Premises into the Sublease Premises and the New Demised Premises in accordance with all Legal Requirements; and

(ii)    the issuance of a final, unconditional certificate of occupancy for the Sublease Premises by the Department of Buildings, City of New York (or other authority having jurisdiction) and any other permit on approval necessary under Legal Requirements for Subtenant to conduct business for its Permitted Use in the Sublease Premises; and

(iii)   completion of the separation of the Utility Systems in the Building in accordance with Article 5 hereof with respect to all of the Sublease Premises, New Demised Premises and, Corner Store.

F.     Notwithstanding that Landlord consents to the Sublease, insofar as Landlord's relationship with each of Subtenant and Tenant is concerned, the terms and conditions of this Lease and not the Sublease shall govern.

G.     Subject to the provisions of this Article 32, until the precise area of the Sublease Premises is determined as provided in Section 32.02 A hereof, (i) Tenant and Subtenant each, jointly and severally, shall be directly responsible and liable to Landlord for all of the insurance and indemnity obligations of Tenant under the Lease, and (ii) Subtenant shall be directly responsible and liable to Landlord for all of other obligations of Tenant under the Lease insofar as the approximately 5,548 square foot area representing the proposed Sublease Premises, as outlined on Exhibit A attached to the Sublease, is concerned.

H.     Neither Tenant nor Subtenant shall be responsible for payment of Landlord's counsel fees, pursuant to the last sentence of Section 11.02, with respect to the Sublease or the preparation of this Lease.

I.     If either Subtenant or Tenant shall default under the terms hereof, so long as the Sublease shall be in effect and the Separability Conditions not be met, Landlord shall notify the non-defaulting party who shall have the right to cure the defaulting party's obligations within any applicable cure period provided in this Lease.

J.     If Tenant shall default as specified in Section 32.02 I above, and Landlord shall terminate this Lease with Tenant, this Lease shall continue as a direct lease between Landlord and Subtenant insofar as the Sublease Premises is concerned, in accordance with the provisions of this Lease following (and as though there had occurred the) completion of the Separability Conditions, and

Subtenant agrees to complete the Separability Conditions not later than 60 days following such termination.

K.     Until the Separability Conditions are completed, Subtenant Guarantor shall be liable to Landlord, jointly and severally with Subtenant, for the prompt and full performance of each and every obligation of Subtenant under this Lease, all in accordance with the provisions of Paragraphs A through and including L of Exhibit B, as though Subtenant Guarantor and its address were used in lieu of FORMER GOOD GUY GUARANTOR and FORMER GUARANTOR and their addresses, and as though reference to Paragraph M were deleted. Upon such completion, the guaranty of Subtenant Guarantor described in this Paragraph K shall be of no further effect (except as provided by its terms) and the guaranty described in Paragraph J of Section 32.03 hereof shall become effective.

L.    Landlord's consent to the Sublease shall not vary or modify any terms or conditions of this Lease.

**32.03**    Except as otherwise provided in this Article 32, all of the terms and conditions of the Lease shall apply with respect to the Sublease Premises, whether prior or subsequent to the Separability Conditions, subject to the following modifications applicable only to the Sublease Premises:

A.    No monthly installments of Base Rent (modified as provided in Section 32.02 A and B) shall be payable for the second, third, and first one-half of the fourth months and the first one-half of the twelfth month of the first Rent Year and for the second month of the second Rent Year.

B.    Following the third Rent Year, the Base Rent shall increase on each of the fourth, seventh and tenth Rent Years by 6%, compounded, so that as of the commencement of each of such Rent Years, the Base Rent shall equal the product of multiplying 106% times the Base Rent for the immediately preceding Rent Year. The Base Rent for each the fifth and sixth Rent Years shall be the same as the Base Rent for the fourth Rent Year, and the Base Rent for each of the eight and ninth Rent Years shall be the same as the Base Rent for the seventh Rent Year.

C.    Additional Rent shall be due within 10 days of billing (as opposed to 5 days specified in Section 3.01 A).

D.    The late charge referred to in Section 3.01 C of the Lease, and Landlord's right to terminate under Section 20.02 B hereof, shall not be imposed until Subtenant shall have failed to make timely payment and Landlord shall have notified Subtenant, at lease three times in any Rent Year.

E.    Excluded from the "absolutely net" rent provision in Section 3.03 of the Lease shall be (i) those exclusions from Costs of Operation, as provided in Section 13.01 hereof, and (ii) repairs to the structural aspects of the roof, bearing walls and foundation of the Building (unless such repairs are caused by, or as a result of any act or omission of, Subtenant).

F.    Regarding insurance, Landlord shall maintain in its fire and extended coverage or "all risk" policy covering the Building permission to waive the insurer's right of subrogation, and based thereon Landlord waives its right of recovery, against Subtenant in connection with any loss or damage covered by such policy.

G.    Insofar as Subtenant's use of the Sublease Premises is concerned, Permitted Use shall mean the retail sale of "low-end" general merchandise (including but not limited to, apparel, clothing, footwear, accessories, housewares, novelties and domestics).

H.    So long as Subtenant is not in default beyond any applicable cure period, Landlord shall obtain (as opposed to use reasonable efforts to obtain) an agreement of the nature described in Section 12.04, which shall be in such holder's commercially-reasonable standard form.

I.    In lieu of Sections 13.01 and 13.02, the following shall apply:

"**13.01**    Regarding Costs of Operation, the following shall be applicable:

A.    "Costs of Operation" shall mean all commercially reasonable and customary costs and expenses attributable to the Term of the Lease actually incurred by Landlord in connection with the operation, maintenance, and repair of any common areas of the "Real Property" and of the Building and the exterior of the Building, including, without limitation, the following:  all materials, supplies

and equipment, purchased or hired therefor; service contracts; fuel, electricity, gas, water, cleaning and sanitary; extermination; all insurance costs of Landlord applicable to the Real Property (including, without limitation, primary and excess liability, and further including vehicle insurance, fire and extended coverage, vandalism and all broad form coverages including, without limitation, riot, strike, and war risk insurance, flood insurance, rent insurance and sign insurance); sales and use taxes; and accounting fees, commissions and charges incurred solely in connection with the preparation of statements, and estimated and year-end payments, of the Costs of Operation and Taxes; and security systems. Tenant shall not be responsible for any "management" or "administrative" fees or fees of the same type called by another name.

B.      From time to time, Landlord shall furnish to Subtenant a written statement of the Costs of Operation together with copies of invoices for Costs of Operation (and if not paid then Landlord will send copies of paid invoices promptly following payment) and shall also show the amount of estimated payments, if any, made by Subtenant for the Costs of Operation in question. Within 20 days of submission of such a written statement, Subtenant shall pay Landlord, as additional rent, its Proportionate Share of such Costs of Operation; there shall be credited against such payment any estimated payments made by Subtenant with respect to such Costs of Operation.

C.      Landlord may submit to Subtenant Landlord's estimate, reasonably determined, of Costs of Operation due and payable or to become due and payable during any Rent Year, together with the computation thereof and the basis therefor, in which event on the first day of each month thereafter Tenant shall pay to Landlord one-twelfth of such estimated sum (plus, if such statement is submitted after the commencement of any Rent Year, then one-twelfth of such sum times the number of months, or partial months, which have elapsed since such commencement). Within 120 days after the expiration of any such Rent Year Landlord shall send to Tenant a statement summarizing all Costs of Operation and computation and details of Tenant's Proportionate Share of Costs of Operation for such Rent Year, together with copies of paid invoices of Costs of Operation. If Subtenant's Proportionate Share of Costs of Operation is more than the estimated payments for the applicable Rent Year, Subtenant shall pay the difference to Landlord within 20 days following Subtenant's receipt of Landlord's statement, invoices and demand for payment. If Tenant's Proportionate Share of Costs of Operation for the applicable Rent Year is less than the estimated payments for the applicable Rent Year, the difference shall be reimbursed by Landlord to Tenant within 20 days of demand therefore or applied against the next rent, if any, payable under the Lease.

D.      Landlord's failure to render a statement with respect to Costs of Operation for any period shall not prejudice Landlord's right to thereafter render a statement with respect thereto or with respect to any subsequent period. Notwithstanding the foregoing, Landlord's failure to present a statement for any charge, together with receipted bills and a demand for payment therefore within twelve full calendar months after the date the charge was incurred by Landlord shall release Subtenant from any and all obligations therefor.

13.02  Costs of Operation shall be adjusted and paid to the same extent as provided in Section 4.04 A and B applicable to Taxes except as set forth in this

Article. Subtenant may, within 45 days of receipt of a statement pertaining to Costs of Operation, upon reasonable notice and during normal business hours, audit Landlord's books and records pertaining to such Costs of Operation. Landlord shall reasonably cooperate with Subtenant and shall make such books and records available to Tenant. If any audit discloses that Tenant paid in excess of its Proportionate Share of Costs of Operation, then (i) Landlord shall pay such excess to Tenant within 20 days after Subtenant demands payment therefor together with interest, and (ii) if any excess is greater than 7%, Landlord shall pay Subtenant the reasonable cost of Subtenant's audit within 20 days after demand therefor."

J.    By executing this Lease, Subtenant Guarantor shall be deemed to have executed in favor of Landlord a guaranty in the same form as Exhibit B, of all of Subtenant's duties and obligations under the Lease, including, without limitation, Paragraph M of Exhibit B, as though the names and addresses of the guarantors therein were changed to the name and address of Subtenant Guarantor.

K.    Section 31.01 D (and reference thereto in Section 31.01 C (iii)) shall be deleted for purposes of the Sublease Premises.

CAF&W 237718 01                          42                          05/07/99

IN WITNESS WHEREOF, the parties hereto have executed this Lease on the day and year first above-written.

LANDLORD:

SIDLEY HOLDING CORP.

Witness for Landlord

By: _____

Its: _____

TENANT:

FORMER TENANT

Witness for Tenant

By: _____

Witness for Tenant

Its: _____ President _____
                              (Authorized Signatory)

_____
Federal Tax I.D. Number

ACCEPTED AND APPROVED:

FORDHAM ROAD LOT STORES, INC.

By:_____

Its:_____ President _____
          (authorized Signatory)

LOT STORES, INC.

By:_____

Its:_____ President _____
          (authorized Signatory)

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF                  )

On this_____day of, August, before me personally came _____, to me known, who, being by me duly sworn did depose and say that (s)he resides at _____
_____ that he is the _____ President     of FORMER TENANT, the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that (s)he signed his name thereto by like order.


                                        Notary Public

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF                  )

On this_____day of, August, before me personally came _____, to me known, who, being by me duly sworn did depose and say that (s)he resides at _____
_____ that (s)he is the _____ President   of Fordham Road Lot Stores, Inc., the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that (s)he signed his name thereto by like order.


                                        Notary Public

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF                  )

On this_____day of, August, before me personally came _____, to me known, who, being by me duly sworn did depose and say that (s)he resides at _____
_____ that (s)he is the _____ President   of Lots Stores, Inc., the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that (s)he signed his name thereto by like order.


                                        Notary Public

                                                                    05/07/99

**EXHIBIT A**

**Floor Plan(s) of Demised Premises**

A-1

**EXHIBIT B**

**Guaranty**

A.      The undersigned New York corporation, FORMER GUARANTOR, having an address at _____ _____, and the undersigned individual, FORMER GOOD GUY GUARANTOR, in consideration of the execution and delivery by SIDLEY HOLDING CORP., a corporation organized under the laws of the State of New York, as landlord ("Landlord"), of the lease of even date herewith of space at 110-112 East Fordham Road, Bronx, New York ("Lease") to FORMER TENANT, as tenant ("Tenant") and in order to induce Landlord to execute and deliver the Lease to Tenant, and in further consideration of the sum of TEN ($10.00) DOLLARS and other good and valuable consideration, to it in hand paid by Landlord, the receipt whereof is hereby acknowledged, DOES HEREBY ABSOLUTELY GUARANTEE to the Landlord, its successors and assigns, the full and prompt performance by Tenant of all of the obligations of Tenant under the Lease, as the same may be extended, including, without limitation, the payment by Tenant of all Base Rent and additional rent reserved under, and as defined in, the Lease, and any arrears thereof, and any other sum or sums required to be paid by Tenant under any of the terms of the Lease, that may be or become due or payable to Landlord, its successors and assigns, and the payment by Tenant of any and all damages that may arise in consequence of the non-performance by Tenant of any of the covenants or agreements required to be performed by Tenant pursuant to the Lease, except insofar as the principal of FORMER TENANT is concerned only, to the extent provided in Paragraph M below.

B.      The undersigned waive all requirements of notice of the acceptance of this Guaranty. This Guaranty shall be a continuing guaranty.

C.      This Guaranty shall not be discharged, impaired, or in any way affected, nor shall the undersigned be released from liability hereunder because, or on account of, any waiver, modification, alteration, amendment, or extension, at any time and from time to time, of any of the terms or provisions of the Lease (including, without limitation, the Term), or by reason of any other act or thing which but for this provision of this Guaranty might be deemed a legal or equitable discharge of a surety, or by reason of the failure of Landlord, its successors or assigns, to proceed promptly or otherwise; and the undersigned hereby expressly waives and surrenders any defense to its liability hereunder based upon any of the foregoing waivers, modifications, alterations, amendments, extensions, or delays, or any of them.

D.      It is specifically agreed that Landlord, its successors and assigns, may proceed under this Guaranty without being required to give to the undersigned notice of any default on the part of Tenant under the Lease and without being required to institute any proceedings against Tenant.

E.      The obligations herein of the undersigned are independent of the obligations of Tenant. The undersigned waive any right to require Landlord to pursue any other remedy in Landlord's power whatsoever.

F.      For the purpose of this Guaranty and the obligations and liabilities of the undersigned herein, the term "Tenant" shall be deemed to include any and all licensees, assignees, subtenants, permittees or others directly or indirectly operating or conducting business in or from the Demised Premises, as fully as if any of the same were the named Tenant under the Lease.

G.      The undersigneds' obligations herein shall remain fully binding although Landlord may have

C&F&W 237718.01

B-1

05/13/99

released, returned or misapplied other collateral at any time given as security for Tenant's obligations (including other guaranties) and/or released Tenant from the performance of its obligations under the Lease.

H.     This Guaranty shall remain in full force and effect notwithstanding the institution by or against Tenant of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Lease in any such proceedings or otherwise.

I.     If this Guaranty is signed by more than one party, their obligations shall be joint and several, and the release of any one of such guarantors shall not release any other of such guarantors.

J.     Landlord may, without notice, assign this Guaranty in whole or in part.

K.     In the event that Landlord should institute any suit against the undersigned for violation of or to enforce any of the covenants or conditions of this Guaranty or to enforce any right of Landlord hereunder, the undersigned shall reimburse Landlord for its attorneys' fees, disbursements and court costs incurred by Landlord thereby.

L.     The execution of this Guaranty prior to execution of the Lease shall not invalidate this Guaranty or lessen the obligations of the guarantor hereunder.

M.     Insofar only as FORMER GOOD GUY GUARANTOR individually is concerned, his liability under this Guaranty shall terminate (except as hereafter provided) upon the occurrence of all of the following:  (a) the expiration of 180 days following Tenant's notice to Landlord of the date on which Tenant shall vacate and surrender the Demised Premises, (b) the surrender and vacation of the Demised Premises by Tenant in accordance with the terms of the Lease, including, but not limited to, free and clear of all liens, free and clear of all property in which any others have any rights and free and clear of occupancy and use (or any rights or claims of rights thereto) by any occupant, subtenant, licensee or others (excluding Landlord or anyone occupying the Demised Premises through Landlord after Tenant's surrender and vacation of the Demised Premises), (c) the delivery to Landlord of all keys, magnetic access cards, alarm access codes and similar items to fully enjoy occupancy to the Demised Premises, (d) a notice, by Tenant to Landlord, of such surrender and vacation specifying all of the foregoing, specifying the date of such surrender and vacation, and specifying that this Lease has been terminated as of a past date specified in such notice, and (e) the full payment of all Base Rent and additional rent up to the date all of the foregoing have been completed.  Notwithstanding any limitations to the contrary in this Paragraph, the principal of FORMER TENANT understands and agrees that he will be personally liable for all costs and expenses incurred by Landlord as provided in Paragraph K.  Notwithstanding such vacancy and surrender, Tenant shall continue to be liable under the terms of this Lease for breach thereof, and no acceptance by Landlord of any surrender or vacancy under this Guaranty shall be deemed to modify, release, satisfy or otherwise relieve Tenant of any liability whatsoever under the Lease.  The undersigned understand and agree that in the event of Tenant's early termination of this Lease the Security Deposit held by Landlord pursuant to the terms of this Lease shall not be applied to Base Rent or additional rent due, or any other liability to Landlord through the date Tenant vacates the Demised Premises, and will not reduce the undersigneds' liability, if any, as provided for in this Guaranty.

N.     With regard to (a) the parties signing this Guaranty represent and warrant to Landlord that so long as this Guaranty is in affect, all or substantially all of the assets of the undersigned shall not be sold or otherwise transferred except to a party which assumes all of the obligations of the undersigned under this Guaranty, and any transfer or attempted transfer in violation hereof shall be deemed a fraudulent transfer, and (b) the maximum liability for the period following satisfaction of the obligations set forth in this

Guaranty through the time of compliance with all of the conditions in Paragraph M hereof shall be the amount of Base Rent and additional rent payable under the Lease for the 12 months next following the time of compliance with all such conditions.

This Guaranty shall inure to the benefit of Landlord, its successors and assigns, and shall bind the undersigned and its successors and assigns.

IN WITNESS WHEREOF, the undersigned has hereunto set his hand and seal as of the 10th day of August, 1998.

ATTEST:                                    GUARANTOR:

                                           FORMER GUARANTOR

_____

                                           By:_____
                                                    (Signature)

                                           Its:_____
                                                      (Title)

                                           _____

                                           FORMER GOOD GUY GUARANTOR

STATE OF NEW YORK )
) ss.:
COUNTY OF )

      On this     day of August, 1998, before me personally appeared _____, to me known who, being by me duly sworn did depose and say that (s)he resides at _____ _____, that (s)he is the President of FORMER GUARANTOR, the corporation described in and which executed the foregoing instrument; that (s)he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that (s)he signed her/his name thereto by like order.

_____
Notary Public

STATE OF NEW YORK )
)ss.:
COUNTY OF )

      On this ___ day of August, 1998, before me personally appeared FORMER GOOD GUY GUARANTOR, to me known and known to me to be the individual described in and who executed the foregoing instrument, and he duly acknowledged that he executed the same as his free act and deed.

_____
NotaryPublic

C&F&W 237738 01

B-4

05/07/99

## AGREEMENT.

Dated: February 10, 1999

Reference is made to two leases dated as of August 10, 1998 with Sidley Holding Corp. ("Sidley"), as Landlord: a lease with Peko Sport Inc. ("Peko") and a Lease with former tenant ("Former Tenant"). Each tenant has obligations to the other in connection with the build-out of its premises and the build-out of the other's premises. The build-out has not necessarily proceeded in accordance with the requirements of the two leases, and the two tenants wish to modify their obligations to the other. It is understood that no modification of the Former Tenant lease will affect, in anyway, the rights or obligations of Lot Stores, Inc. or Fordham Road Lot Stores, Inc. ("Lot"), either under the Former Tenant lease or under the Sublease between them.

The parties agree as follows:

1.    As of February 9, 1999 the electricity service to the building has been changed from Sidley, and Former Tenant or an affiliate of Former Tenant has opened an account and assumed all electric obligation of the building. The account will remain in that name until the work referred to in Paragraph 3 is complete and three separate accounts are opened as provided therein. Former Tenant will do nothing to interrupt electricity usage of the building until that work is complete, and all tenants will be allowed to utilize electricity in their respective spaces. Within 5 days of submission to Former Tenant of a closing electric bill through February 9, 1999, Former Tenant will make full payment to Sidley.

2.    The paid and outstanding electric bill in the amount of $10,081.06, as of January 22, 1999 has been be paid by Former Tenant in that amount. Former Tenant will make separate arrangements with Lot and Peko regarding reimbursement of that bill, as well as of the closing bill. To effect this, Landlord's architect will cause an independent electrical engineer to survey usage in the Building from August 10, 1998 through the date of completion of the work in Paragraph 3, which the parties agree will be binding, including usage and any penalties or rate increases imposed by Con Edison. Within 5 days of preparation of a bill based upon such survey evidencing appropriate charge to Peko, Peko shall pay the full amount to Former Tenant. The cost

C&F&W 218066 01                                  1                                       05/12/99

EXHIBIT A

of such engineer will be shared 1/3 to Peko and 2/3 to Former Tenant. Each of Peko and Former Tenant shall be responsible for their own riser costs.

3.    Separation of electric service in the mechanical/utility room of the building into three separate meters and accounts (one for each of Peko, Former Tenant and Lot), as well as additional amperage into the building such that there are a total of 2,000 amps (400 for Peko, 1,200 for Former Tenant and 400 for Lot), together with other electrical conduit work connecting the mechanical/utility room with each of the three premises, shall be done by Sevan Electrical Contracting Corporation, which company has given a firm cost estimate of $28,500.00, unless Former Tenant shall submit to Peko not later than Friday, February 12, 1999 a written estimate from a reputable electrical contractor for a lower amount for all work included in Sevan's estimate, and the cost will be paid 1/3 by Peko and the balance by Former Tenant (which will make separate arrangements with Lot regarding the latter's contribution). Any electrical contractor shall contract with both Peko and Former Tenant. Three separate electric accounts will be established with Consolidated Edison Company, as well as with other utility companies as necessary, within 24 hours of completion of the above electrical work. Subject to not interfering with other work in the plenum above Former Tenant's ceiling, Peko shall have the right to connect its utilities from the mechanical/utility room through Former Tenant's plenum to Peko's space. Former Tenant will not enclose the basement ceiling until Peko's gas and electrical conduits have been installed.

4.    Regarding HVAC:

a)    Former Tenant will purchase and install (bid use of a crane) a 10 ton air conditioning unit to service the Former Tenant space. Unit to be located on dunnage from which Lot removed unit. Cost to be split 50/50 between Peko and Former Tenant and Peko to pay such 50% within 5 days of billing by Former Tenant. Within 10 days each will obtain and deliver to the other a written estimate from a reputable HVAC contractor of the cost solely of the foregoing work, and Former Tenant shall use the lowest estimate.

b)    Each of Peko and Former Tenant shall pay for gas and electric costs to their HVAC units and for all ductwork connected therewith.

(bb) Former Tenant relinquishes all rights to the HVAC unit, and associated ductwork, above the middle of Peko's store.

c)    At its cost Former Tenant shall install fire dampers in existing ductwork above the Peko space and install a new return on the roof into Former Tenant space for units serving the Former Tenant space, as necessary.

d)    Peko at its cost shall demolish the existing unused ductwork.

5.    Regarding plans and specifications for each of the premises both parties agree to submit to the Landlord's architect by Friday, February 12, 1999 for her final approval plans necessary for filing (as well as those filed insofar as Peko is concerned) with the Building Department.

6.    Each of the parties agrees that it will file by February 19, 1999 all plans, if necessary, with all required governmental authorities for all work done, and to be done, in their respective premises; that no work will be done without filing such plans and without obtaining all necessary building permits. Each represents that in its premises there are no outstanding violations or work done to date which could result in a violation, and that all work will be done so not to result in any violation.

7.    Peko will complete all necessary carpentry work to separate its premises from the adjoining Former Tenant premises, the cost of which already has been paid to Peko's contractor. Each will pay at its cost any needed improvements in such work necessary to comply with code within 10 days of notice from either Landlord's architect or their own architect.

8.    50% of the cost of reversing the side on which the chain connected to the Former Tenant security gate is located and (totaling $200.00) will be paid by Peko to Former Tenant not later than February 20, 1999.

9.    Each party will give the other full and complete access to the others premises, upon reasonable notice and upon accompaniment by a representative of other (who shall be made available promptly), to the extent reasonably necessary to complete all of the aforementioned work.

10.    Each party agrees to indemnify and hold harmless the other from any loss, claim, negligence, expense, liability or damage resulting to the other based upon, or arising out of, work done by the indemnifying party in the other's premises. Each agrees to carry all insurance required by their respective leases.

11.    Each party agrees to pay 50% of Landlord's reasonable attorney's fees which have been and are incurred, in connection with resolution of disputes between them.

12.    Peko shall pay 18.31% and Former Tenant the balance of the cost of repairing all parts of the roof of the building. Each shall within 10 days obtain a written estimate and deliver it to the other within 10 days of the date hereof, and they shall use the lowest bidder.

13.    Each of Peko and Former Tenant shall pay 50% of the cost of removing and relocating the mechanical room door and the less expensive of 2 estimates, one obtained from each of Peko and Former Tenant, shall be used.


Former Tenant                                     Peko Sport Inc.


By:_____        By:_____


Its:_____        Its:_____
        Authorized Signatory                       Authorized Signatory


ACCEPTED and AGREED:


Sidley Holding Corp.


By:_____
        Roslyn Levine

Its:____President_____

*[handwritten text at top, partially legible:]*
*paragraph 3, which the parties agree will be binding, including... charge and any penalty or late interest imposed by Con Edison. within 5 days of preparation of a bill based upon such... evidencing appropriate charge to Peko, Peko shall pay the full amount to ▮▮▮. The cost of such engineer will be shared 1/3 to Peko and 2/3 to ▮▮▮. Each of Peko and ▮▮▮ shall be responsible for their own ... costs.*

## AGREEMENT

Dated: February 9, 1999

▮ = FORMER
TENANT

Reference is made to two leases dated as of August 10, 1998 with Sidley Holding Corp. ("Sidley"), as Landlord: a lease with Peko Sport Inc. ("Peko") and a Lease with ▮▮▮▮▮▮▮▮▮▮. Each tenant has obligations to the other in connection with the build-out of its premises and the build-out of the other's premises. The build-out has not necessarily proceeded in accordance with the requirements of the two leases, and the two tenants wish to modify their obligations to the other. It is understood that no modification of the ▮▮▮ lease will affect, in anyway, the rights or obligations of Lot Stores, Inc. or Fordham Road Lot Stores, Inc. ("Lot"), either under the ▮▮▮ lease or under the Sublease between them.

The parties agree as follows:

1.    As of February 9, 1999 the electricity service to the building has been changed from Sidley, and ▮▮▮ or an affiliate of ▮▮▮ has opened an account and assumed all electric obligation of the building. The account will remain in that name until the work referred to in Paragraph 3 is complete and three separate accounts are opened as provided therein. ▮▮▮ will do nothing to interrupt electricity usage of the building until that work is complete, and all tenants will be allowed to utilize electricity in their respective spaces. Within 5 days of submission to ▮▮▮ of a closing electric bill through February 9, 1999, ▮▮▮ will make full payment to Sidley.

2.    The paid and/outstanding *[handwritten: has been]* electric bill in the amount of $10,081.06, as of January 22, 1999 ~~will be~~ /paid by Sidley ~~with funds received today from ▮▮▮~~ in that amount. ▮▮▮ will make separate arrangements with Lot and Peko regarding reimbursement of that bill, as well as of the closing bill. *[handwritten: To aff. J this, L's architect will ... an independent electrical ... for ... in the Building]*

3.    Separation of electric service in the mechanical/utility room of the building into three separate meters and accounts (one for each of Peko, ▮▮▮ and Lot), ~~as well~~ *[handwritten: Current]* as additional amperage into the building such that there are a total of 2,000 amps (400 for Peko, 1,200 for ▮▮▮ and 400 for Lot), together with ~~other~~ electrical conduit work connecting the mechanical/utility room with each of the three premises, shall be done by *[handwritten: Deva Electrical Contracting]* , which company has given a firm cost estimate of $28,500.00 , and the cost will be paid by Peko and the balance by ▮▮▮ *[handwritten: 1/3]* (which will make separate/arrangements with Lot regarding the latter's contribution). ~~Payment will be made not later than February ___, 1999 to _____~~ *[handwritten: Three]*

*[handwritten text at bottom:]*
*... shall submit to Peko not later than Friday, February 12, 1999. 2 written estimates from a proposed electrical contractor for a lower amount of ... detailing all work... engineer's estimate.*

separate electric accounts will be established with Consolidated Edison Company, as well as with other utility companies as necessary, within 24 hours of completion of the above electrical work. Subject to not interfering with other work in the plenum above █████'s ceiling, Peko shall have the right to connect its utilities from the mechanical/utility room through █████'s plenum to Peko's space. █████ *will not enclose the basement ceiling until Peko's finance electric conduits has been installed.*

4.    Regarding HVAC:

a) *[handwritten, largely illegible]*

b) *[handwritten, largely illegible]*

c) *[handwritten, largely illegible]*

d) *[handwritten, largely illegible]*

5.    Regarding plans and specifications for each of the premises~~, which has been submitted to Landlord, the parties agree as follows:~~ *by February 19, 1999* *Building Dept*

6.    Each of the parties agrees that it ~~has filed~~ *will* all necessary ~~plans~~ with all required governmental authorities for all work done, and to be done, in their respective premises; that no work will be done without filing such plans and without obtaining all necessary building permits~~, and that each has filed plans and obtained permits necessary for the electric work, referred to in Paragraph 3, to be completed~~. Each represents that in its premises there are no outstanding violations or work done to date which could result in a violation, and that all work will be done so not to result in any violation.

7.    Peko will complete all necessary carpentry work to separate its premises from the adjoining █████ premises, the cost of which already has been paid to Peko's contractor. *[handwritten]*

8.    50% of the cost of reversing the side on which the chain connected to the Pizza security gate is located and (totaling $ _200.00_ a ) will be paid to ▓▓▓ not later than February 20, 1999.

9.    Each party will give the other full and complete access to the others premises, upon reasonable notice and upon accompaniment by a representative of other, to the extent reasonably necessary to complete all of the aforementioned work. *(to be made available promptly),*

10.    Each party agrees to indemnify and hold harmless the other from any loss, claim, negligence, expense, liability or damage resulting to the other based upon, or arising out of, work done by the indemnifying party in the other's premises. *Each agree to carry all insurance required by their respective lease.*

11.    Each party agrees to pay 50% of Landlord's reasonable attorney's fees which have been and are incurred, in connection with resolution of disputes between them.

12. *Peko shall pay to 3½% and ▓▓▓ the balance of the cost of repairing all parts of the roof of the building. Each shall within 10 days obtain a written estimate and deliver it to the other within 10 days of the date hereof, and they shall use the lowest bidder.*

13. *Each of Peko and ▓▓▓ shall pay 50% of the cost of removing and relocating the mechanical room door and the [fees?] expenses of 2 entrances. One phone line of Peko and ▓▓▓ shall be used. [obtained?]*

▓▓▓                                                  Peko Sport Inc.

By: _____                  By: _____

Its: _____President_____                  Its: _____Officer_____
Authorized Signatory                        Authorized Signatory

ACCEPTED and AGREED:


Sidley Holding Corp.

By: _____
       Roslyn Levine

Its:   President

**EXHIBIT F**

## Guaranty

A.      The undersigned individual, residing at 31 Wildwood Drive, Lynnfield, Massachusetts 01940, in consideration of the execution and delivery by SIDLEY HOLDING CORP., a corporation organized under the laws of the State of New York, as landlord ("Landlord"), of the lease of even date herewith of space at 110-112 East Fordham Road, Bronx, New York ("Lease") to THREE S's AND AN R, LLC, as tenant ("Tenant") and in order to induce Landlord to execute and deliver the Lease to Tenant, and in further consideration of the sum of TEN ($10.00) DOLLARS and other good and valuable consideration, to it in hand paid by Landlord, the receipt whereof is hereby acknowledged, DOES HEREBY ABSOLUTELY GUARANTEE to the Landlord, its successors and assigns, the full and prompt performance by Tenant of all of the obligations of Tenant under the Lease, as the same may be extended, including, without limitation, the payment by Tenant of all Base Rent and additional rent reserved under, and as defined in, the Lease, and any arrears thereof, and any other sum or sums required to be paid by Tenant under any of the terms of the Lease, that may be or become due or payable to Landlord, its successors and assigns, and the payment by Tenant of any and all damages that may arise in consequence of the non-performance by Tenant of any of the covenants or agreements required to be performed by Tenant pursuant to the Lease, only to the extent provided in Paragraph M below.

B.      The undersigned waive all requirements of notice of the acceptance of this Guaranty. This Guaranty shall be a continuing guaranty.

C.      This Guaranty shall not be discharged, impaired, or in any way affected, nor shall the undersigned be released from liability hereunder because, or on account of, any waiver, modification, alteration, amendment, or extension, at any time and from time to time, of any of the terms or provisions of the Lease (including, without limitation, the Term), or by reason of any other act or thing which but for this provision of this Guaranty might be deemed a legal or equitable discharge of a surety, or by reason of the failure of Landlord, its successors or assigns, to proceed promptly or otherwise; and the undersigned hereby expressly waives and surrenders any defense to its liability hereunder based upon any of the foregoing waivers, modifications, alterations, amendments, extensions, or delays, or any of them.

D.      It is specifically agreed that Landlord, its successors and assigns, may proceed under this Guaranty without being required to give to the undersigned notice of any default on the part of Tenant under the Lease and without being required to institute any proceedings against Tenant.

E.      The obligations herein of the undersigned are independent of the obligations of Tenant. The undersigned waive any right to require Landlord to pursue any other remedy in Landlord's power whatsoever.

F.      For the purpose of this Guaranty and the obligations and liabilities of the undersigned herein, the term "Tenant" shall be deemed to include any and all licensees, assignees, subtenants, permittees or others directly or indirectly operating or conducting business in or from the Demised Premises, as fully as if any of the same were the named Tenant under the Lease.

G.    The undersigneds' obligations herein shall remain fully binding although Landlord may have released, returned or misapplied other collateral at any time given as security for Tenant's obligations (including other guaranties) and/or released Tenant from the performance of its obligations under the Lease.

H.    This Guaranty shall remain in full force and effect notwithstanding the institution by or against Tenant of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Lease in any such proceedings or otherwise.

I.    Landlord may, without notice, assign this Guaranty in whole or in part.

J.    In the event that Landlord should institute any suit against the undersigned for violation of or to enforce any of the covenants or conditions of this Guaranty or to enforce any right of Landlord hereunder, the undersigned shall reimburse Landlord for its attorneys' fees, disbursements and court costs incurred by Landlord thereby.

K.    The execution of this Guaranty prior to execution of the Lease shall not invalidate this Guaranty or lessen the obligations of the guarantor hereunder.

L.    Insofar only as the undersigned individually is concerned, his liability under this Guaranty shall terminate (except as hereafter provided) upon the occurrence of all of the following: (a) the expiration of 180 days following Tenant's notice to Landlord of the date on which Tenant shall vacate and surrender the Demised Premises, (b) the surrender and vacation of the Demised Premises by Tenant in accordance with the terms of the Lease, including, but not limited to, free and clear of all liens, free and clear of all property in which any others have any rights and free and clear of occupancy and use (or any rights or claims of rights thereto) by any occupant, subtenant, licensee or others (excluding Landlord or anyone occupying the Demised Premises through Landlord after Tenant's surrender and vacation of the Demised Premises), (c) the delivery to Landlord of all keys, magnetic access cards, alarm access codes and similar items to fully enjoy occupancy to the Demised Premises, (d) a notice, by Tenant to Landlord, of such surrender and vacation specifying all of the foregoing, specifying the date of such surrender and vacation, and specifying that this Lease has been terminated as of a past date specified in such notice, and (e) the full payment of all Base Rent and additional rent up to the date all of the foregoing have been completed.  Notwithstanding any limitations to the contrary in this Paragraph, the undersigned understands and agrees that he will be personally liable for all costs and expenses incurred by Landlord as provided in Paragraph J. Notwithstanding such vacancy and surrender, Tenant shall continue to be liable under the terms of the Lease for breach thereof, and no acceptance by Landlord of any surrender or vacancy under this Guaranty shall be deemed to modify, release, satisfy or otherwise relieve Tenant of any liability whatsoever under the Lease.  The undersigned understands and agrees that in the event of Tenant's early termination of this Lease the Security Deposit held by Landlord pursuant to the terms of this Lease shall not be applied to Base Rent or additional rent due, or any other liability to Landlord through the date Tenant vacates the Demised Premises, and will not reduce the undersigned's liability, if any, as provided for in this Guaranty.

This Guaranty shall inure to the benefit of Landlord, its successors and assigns, and shall bind the undersigned and its successors and assigns.

IN WITNESS WHEREOF, the undersigned has hereunto set his hand and seal as of the 1st day of May, 1999.

ATTEST:                                          GUARANTOR:

_____                          _____
                                                 Morton Ruderman


STATE OF     *MA*          )
                           )ss.:
COUNTY OF *ESSEX*          )


On this _28_ day of May, 1999, before me personally appeared Morton Ruderman, to me known and known to me to be the individual described in and who executed the foregoing instrument, and he duly acknowledged that he executed the same as his free act and deed.

_____
Notary Public

Bruce A. Gorsky
NOTARY PUBLIC
My commission expires Aug. 13, 2004

**EXHIBIT G**

# Sidley Holding Corp.
32 Eton Drive
Slingerlands, NY 12159

## Rent Bill

| Date | Invoice # |
|---|---|
| 10/1/2007 | 141 |

| Bill To |
|---|
| Three S's & an R |

| Item | Description | Amount |
|---|---|---|
| Rent | | 12,432.94 |
| Management Fee | | 551.41 |
| Additional Rent | | 2,500.00 |
| Real Estate Tax | | 2,861.94 |
| Late Payment | | 755.28 |
| PAST DUE | late payment | 723.03 |
| PAST DUE | Legal Fees | 5,633.33 |
| | **Total** | **$25,457.93** |

PI 0001

# Sidley Holding Corp.
32 Eton Drive
Slingerlands, NY 12159

## Rent Bill

| Date | Invoice # |
|------|-----------|
| 11/1/2007 | 144 |

| Bill To |
|---------|
| Three S's & an R |

| Item | Description | Amount |
|------|-------------|--------|
| Rent | | 12,432.94 |
| Management Fee | | 551.41 |
| Additional Rent | | 2,500.00 |
| Real Estate Tax | | 2,861.94 |
| Late Payment | | 763.74 |
| PAST DUE | October Rent | 25,457.93 |
| | **Total** | **$44,567.96** |

# Sidley Holding Corp.

32 Eton Drive
Slingerlands, NY 12159

## Rent Bill

| Date | Invoice # |
|------|-----------|
| 11/30/2007 | 147 |

| Bill To |
|---------|
| Three S's & an R |

| Item | Description | Amount |
|------|-------------|--------|
| Rent | | 12,432.94 |
| Management Fee | | 551.41 |
| Additional Rent | | 2,500.00 |
| Real Estate Tax | | 2,861.94 |
| Late Payment | | 1,337.04 |
| PAST DUE | | 44,567.96 |
| | **Total** | **$64,251.29** |

# Sidley Holding Corp.
32 Eton Drive
Slingerlands, NY 12159

## Rent Bill

| Date | Invoice # |
|------|-----------|
| 1/1/2008 | 150 |

| Bill To |
|---------|
| Three S's & an R |

| Item | Description | Amount |
|------|-------------|--------|
| Rent | | 12,432.94 |
| Management Fee | | 551.41 |
| Additional Rent | | 2,500.00 |
| Real Estate Tax | | 2,861.94 |
| Late Payment | | 1,927.54 |
| PAST DUE | | 64,251.29 |
| | **Total** | **$84,525.12** |

PI 0004

# Sidley Holding Corp.
32 Eton Drive
Slingerlands, NY 12159

## Rent Bill

| Date | Invoice # |
|------|-----------|
| 2/1/2008 | 153 |

| Bill To |
|---------|
| Three S's & an R |

| Item | Description | Amount |
|------|-------------|--------|
| Rent | | 12,432.94 |
| Management Fee | | 551.41 |
| Additional Rent | | 2,500.00 |
| Real Estate Tax | | 2,861.94 |
| Late Payment | | 2,535.75 |
| Water Bill | | 924.42 |
| PAST DUE | | 84,525.12 |
| | **Total** | **$106,331.58** |

PI 0005

# Sidley Holding Corp.
32 Eton Drive
Slingerlands, NY 12159

# Rent Bill

| Date | Invoice # |
|------|-----------|
| 3/1/2008 | 156 |

| Bill To |
|---------|
| Three S's & an R |

| Item | Description | Amount |
|------|-------------|--------|
| Rent | | 12,432.94 |
| Management Fee | | 551.41 |
| Additional Rent | | 2,500.00 |
| Real Estate Tax | | 2,861.94 |
| Late Payment | | 3,189.95 |
| Water Bill | Past Due | 924.42 |
| PAST DUE | | 105,407.17 |
| | **Total** | **$127,867.83** |

# Sidley Holding Corp.
32 Eton Drive
Slingerlands, NY 12159

## Rent Bill

| Date | Invoice # |
|------|-----------|
| 4/1/2008 | 159 |

| Bill To |
|---------|
| Three S's & an R |

| Item | Description | Amount |
|------|-------------|--------|
| Rent | | 12,432.94 |
| Management Fee | | 551.41 |
| Additional Rent | | 2,500.00 |
| Real Estate Tax | | 2,861.94 |
| Late Payment | | 3,836.03 |
| | | 0.00 |
| PAST DUE | | 127,867.83 |
| | **Total** | **$150,050.15** |

PI 0007

# Sidley Holding Corp.
32 Eton Drive
Slingerlands, NY 12159

## Rent Bill

| Date | Invoice # |
|------|-----------|
| 5/1/2008 | 162 |

| Bill To |
|---------|
| Three S's & an R |

| Item | Description | Amount |
|------|-------------|--------|
| Rent | | 12,432.94 |
| Management Fee | | 551.41 |
| Additional Rent | | 2,500.00 |
| Real Estate Tax | | 2,861.94 |
| Late Payment | | 4,501.50 |
| Fines | | 1,000.00 |
| PAST DUE | | 150,050.15 |
| | **Total** | **$173,897.94** |

PI 0008

6/10/2008 11:49 PM  FROM: Fax   TO: 12128055598   PAGE: 001 OF 001

# Sidley Holding Corp.
5 Denim Dr
Wappingers Falls, NY 12590

## Rent Bill

| Date | Invoice # |
|------|-----------|
| 6/1/2008 | 165 |

**Bill To**

Three S's & an R

| Item | Description | Amount |
|------|-------------|--------|
| Rent | | 12,432.94 |
| Management Fee | | 551.41 |
| Additional Rent | | 2,500.00 |
| Real Estate Tax | | 2,861.94 |
| Late Payment | | 5,216.94 |
| Fines | | 1,000.00 |
| PAST DUE | | 173,897.94 |
| | **Total** | **$198,461.17** |

PI 0184

# Sidlev Holding Corp.

5 Denim Dr
Wappingers Falls, NY 12590

# Rent Bill

| Date | Invoice # |
|------|-----------|
| 7/1/2008 | 168 |

**Bill To**

Three S's & an R

| Item | Description | Amount |
|------|-------------|--------|
| Rent | | 13,432.94 |
| Management Fee | | 551.41 |
| Additional Rent | | 2,500.00 |
| Real Estate Tax | | 3,746.04 |
| Late Payment | | 5,953.84 |
| PAST DUE | | 198,461.17 |
| | **Total** | **$224,645.40** |

# EXHIBIT H

## LANDLORD'S CONSENT TO SUBLEASE

THIS AGREEMENT, by and between SIDLEY HOLDING CORP. ("Landlord") and THREE S's AND AN R, LLC ("Tenant") made pursuant to a certain lease agreement dated as of May 1, 1999 ("Lease").

The parties hereto agree as follows:

1. <u>Landlord's Consent to Sublease</u>. Landlord hereby consents to a sublease by Tenant of a portion of the Demised Premises to STATEWIDE MANAGEMENT AT FORDHAM ROAD, INC., having an address at 44-27 Purves Street, Long Island City, New York 11101, and to another portion of the Demised Premises to LAUGHING PARTY CO., LLC, having an address at 14 Weyman Avenue, New Rochelle, New York 10805 (collectively "Sublessees"), on the condition and understanding that Tenant, as sublessor, and Sublessees comply with the terms of Article 11 of the Lease.

2. <u>No Effect on Lease</u>. Notwithstanding any provisions contained in this Agreement to the contrary, Landlord's consent and the terms of this Agreement shall not be construed as a waiver of any rights of Landlord under the Lease and shall not be deemed to be a consent to any subsequent assignment, subletting, occupation or use of any portion of the Demised Premises by any party or any person or entity. Tenant shall remain liable for the payment of all rents and the performance by Tenant and Sublessee of all covenants, agreements, terms and conditions set forth in the Lease.

C&F&W. 238546.01

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the day and year first above written.

ACCEPTED and AGREED:

THREE S's AND AN R, LLC                           SIDLEY HOLDING CORP.

By: _____                      By: _____
        (Signature)                                        Roslyn Levine, President

Its:    Managing Member


GUARANTOR OF LEASE

_____
Morton Ruderman

# EXHIBIT I

# State of New York
# Department of State } ss:

I hereby certify, that the records of this Department show that STATEWIDE
MANAGEMENT AT FORDHAM ROAD, INC. the Certificate of Incorporation of
which was filed on 11/25/1998

It was dissolved by proclamation of the Secretary of State published on
09/25/2002 pursuant to the Tax Law and that such dissolution has not been
annulled.

***

*WITNESS my hand and the official seal
of the Department of State at the City of
Albany, this 04th day of February  two
thousand and eight.*

200802050311  88

*Special Deputy Secretary of State*

# EXHIBIT J

**NOTICE TO CURE**

December 4, 2007

To:    **THREE S'S AND AN R, LLC**
110-112 East Fordham Road
Portions of the ground floor, first floor and mezzanine level
Bronx, New York, 10468

Re:    Agreement of Lease made as of May 1, 1999 (the "**Lease**"), between
Sidley Holding Corp. ("**Landlord**"), as landlord, and Three S's and an R,
LLC ("**Tenant**"), as tenant, incorporating that certain Agreement of Lease
made as of August 10, 1998 (as amended, the "**1998 Lease**"), between
Landlord and a former tenant, for portions of the ground floor (sometimes
referred to as basement or cellar), first floor, and mezzanine level
(collectively the "**Premises**") in the building known as and located at 110-
112 East Fordham Road, Bronx, New York 10468.

TAKE NOTICE that Tenant has failed to comply with its obligations under Sections III

and IV of the 1999 Lease, Articles 1, 3, 4, 13, 21 and other applicable provisions of the 1998

Lease, which require Tenant, among other things, to timely pay Base Rent, Added Rent and

additional rent (collectively, "**Rent**") to Landlord as and when the same became due under the

Lease, in that Tenant failed to pay the Rent due under the Lease during the period from October

1, 2007 through December 4, 2007 in the amount of $64,251.29 (as set forth on the statement

annexed hereto, incorporated herein by reference and made a part hereof, the "**Arrears**").

TAKE FURTHER NOTICE that, in accordance with Section 20.02 of the 1998 Lease

and other applicable provisions of the Lease, Tenant is required to deliver payment of the full

amount of the Arrears to Landlord on or before December 17, 2007 (the "**Cure Date**"), which

date is not less than ten (10) days from the date this notice is given.

TAKE FURTHER NOTICE that in the event Tenant fails to deliver payment of the full

amount of the Arrears to Landlord on or before the Cure Date, Landlord will exercise its rights

Y 23829702

under Section 20.02 of the 1998 Lease and other applicable provisions of the Lease and pursuant to law, and serve a three day notice of cancellation of the Lease (the "Termination Notice") upon Tenant, in which event, upon the expiration of the period of time set forth in the Termination Notice (the "Termination Date"), the term of the Lease will terminate and expire as if the Termination Date was the day fixed in the Lease for the end and expiration thereof, Tenant will remain liable for damages pursuant to applicable provisions of the Lease (including but not limited to past due and future Rent, damages, and Landlord's attorneys' fees, costs and expenses), and Landlord may commence an appropriate action or proceeding to remove Tenant from the Premises and/or commence such other actions and proceedings as Landlord deems appropriate.

TAKE FURTHER NOTICE that this notice is without prejudice to and shall not constitute a waiver, release or relinquishment of any of Landlord's claims, defenses, rights or remedies under the Lease, applicable law or otherwise, all of which are expressly reserved.

All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Lease.

SIDLEY HOLDING CORP. Landlord

By: _____

Name: Richard Levine
Authorized Signatory Per Annexed Authorization

NY 2382-7023

cc:    **THREE S'S AND AN R, LLC**
c/o Mr. Morton Ruderman
Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

**THREE S'S AND AN R, LLC**
c/o Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

**THREE S'S AND AN R, LLC**
c/o Morton Ruderman
31 Wildwood Drive
Lynnfield, Massachusetts 01940

**MORTON RUDERMAN**
31 Wildwood Drive
Lynnfield, Massachusetts 01940

**MMR Investments, LLC**
40 Salem Street, Suite One
Lynnfield, MA 01940

3

NY 238297023

# Sidley Holding Corp.

## Three S's & an R
## Arrears Statement

| DATE | DESCRIPTION | | CHARGE |
|------|-------------|--|--------|
| October 1, 2007 | Base Rent | | $12,432.94 |
| | Management Fee | | $551.41 |
| | Added Rent (Additional Rent For Initial Sublet) | | $2,500.00 |
| | Real Estate Tax Assessment | | $2,861.94 |
| | Late Payment | | $755.28 |
| | Past Due (late payment) | | $723.03 |
| | Past Due (legal fees) | | $5,633.33 |
| | | October Total: | $25,457.93 |
| | | | |
| November 1, 2007 | Base Rent | | $12,432.94 |
| | Management Fee | | $551.41 |
| | Added Rent (Additional Rent For Initial Sublet) | | $2,500.00 |
| | Real Estate Tax Assessment | | $2,861.94 |
| | Late Payment | | $763.74 |
| | | November Total: | $19,110.03 |
| | | | |
| December 1, 2007 | Base Rent | | $12,432.94 |
| | Management Fee | | $551.41 |
| | Added Rent (Additional Rent For Initial Sublet) | | $2,500.00 |
| | Real Estate Tax Assessment | | $2,861.94 |
| | Late Payment | | $1,337.04 |
| | | December Total: | $19,683.33 |
| | | | |
| | | Total: | $64,251.29 |

4

NY 238297023

## AUTHORIZATION

SIDLEY HOLDING CORP. ("Sidley"), a Delaware limited liability company, hereby appoints and authorizes Mr. Richard Levine to individually act as its authorized signatory and agent and to execute on behalf of, and in the name of, Sidley: (a) any and all demands and notices permitted under leases, licenses, service contracts, occupancy agreements or applicable law including but not limited to notices to cure, notices of termination, non-payment and holdover notices, and notices terminating monthly tenancies, tenancies-at-will or tenancies-at-sufferance; and (b) pleadings and affidavits relating to tenants, licensees, leases, licenses, occupancy agreements, stipulations, service contracts, collection of arrears and/or other monies due to Sidley. This authorization is valid for a period of one year from the date of execution unless sooner terminated in writing.

SIDLEY HOLDING CORP.

By: _Sidney Clyman_

Name: Dr. Sidney Clyman

Title: President

STATE OF NEW YORK          )
                           ) s.s.:
COUNTY OF WESTCHESTER      )

On the 27 day of November, 2007, before me, the undersigned, a Notary Public in and for said State, personally appeared Dr. Sidney Clyman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to this instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on this instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_Virginia S Breese_

Notary Public

VIRGINIA S. BREESE
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN WESTCHESTER COUNTY
NO. 01BR6139143
COMMISSION EXPIRES

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     :ss.
COUNTY OF NEW YORK   )


Salvatore Giambrone, being duly sworn, deposes and says:

     1.    I am employed by Greenberg Traurig, LLP, attorneys for Sidley Holding Corp.

     2.    I am not a party to this action, am over 18 years of age and reside in Queens, New York.

     3.    On the 4th day of December, 2007, I served the annexed Notice to Cure by depositing true copies in securely sealed envelopes, into the exclusive care and custody of Federal Express for overnight delivery, addressed as follows::

THREE S'S AND AN R, LLC
110-112 East Fordham Road
Portions of the ground floor, first floor and mezzanine level
Bronx, New York, 10468

THREE S'S AND AN R, LLC
c/o Mr. Morton Ruderman
Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

THREE S'S AND AN R, LLC
c/o Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

THREE S'S AND AN R, LLC
c/o Morton Ruderman
31 Wildwood Drive
Lynnfield, Massachusetts 01940

NY238603590

MORTON RUDERMAN
31 Wildwood Drive
Lynnfield, Massachusetts 01940

MMR Investments, LLC
40 Salem Street, Suite One
Lynnfield, Massachusetts 01940

Sworn to before me this
6th day of December, 2007

_____
NOTARY PUBLIC

HEATH B. KUSHNICK
Notary Public, State of New York
No. 02KU6016400
Qualified in New York County
Commission Expires 11/16/10

_____
Salvatore Giambrone
License No. 1133136

NY238603590

# EXHIBIT K

.

<u>**NOTICE OF TERMINATION**</u>

December 20, 2007

To:     **THREE S'S AND AN R, LLC**
        110-112 East Fordham Road
        Portions of the ground floor, first floor and mezzanine levels
        Bronx, New York 10468

        Re:     Agreement of Lease made as of May 1, 1999 (the "Lease"), between
                Sidley Holding Corp. ("Landlord"), as landlord, and Three S's and an R,
                LLC ("Tenant"), as tenant, incorporating that certain Agreement of Lease
                made as of August 10, 1998 (as amended, the "1998 Lease"), between
                Landlord and a former tenant, for portions of the ground floor (sometimes
                referred to as basement or cellar), first floor and mezzanine level
                (collectively the "Premises") in the building known as and located at 110-
                112 East Fordham Road, Bronx, New York 10468.

TAKE NOTICE that Tenant defaulted in observing and performing its obligations under

Sections III and IV of the Lease, Articles 1, 3, 4, 13, 21 and other applicable provisions of the

1998 Lease, which require Tenant, among other things, to timely pay Base Rent, Added Rent and

additional rent (collectively, "Rent") as and when the same becomes due under the Lease, and

Tenant failed to cure its default as described in the notice to cure dated December 4, 2007 (a

copy of which is annexed hereto as <u>Exhibit A</u>, incorporated herein by reference and made a part

hereof, the "Notice to Cure") in that Tenant failed to pay Rent in the amount of $64,251.29 by

December 17, 2007 (the "Cure Date"), which was at least ten (10) days after service of the

Notice to Cure upon Tenant.

    TAKE FURTHER NOTICE that pursuant to Section 20.02 of the 1998 Lease (made

applicable by Section 2.02 and other applicable provisions of the Lease), Landlord hereby elects

to terminate the Lease on December 28, 2007 (the "Termination Date"), which date is not less

than three (3) days from the date this notice is given, and the Lease, the term thereof and any and

1

all right, title and interest of Tenant thereunder shall end and expire on the Termination Date as fully and completely as if the Termination Date was the day fixed in the Lease for the end and expiration of the term thereof.

TAKE FURTHER NOTICE that Tenant is required to quit and vacate the Premises in accordance with the terms of the Lease on or before the Termination Date and if Tenant fails to so quit and vacate on or before the Termination Date, Landlord will, among other things, commence an appropriate action and/or proceeding to remove Tenant from the Premises and to recover all past due Rent, the reasonable value of Tenants' use and occupancy of the Premises, attorneys' fees and any other damages incurred by Landlord in accordance with applicable provisions of the Lease and applicable law.

TAKE FURTHER NOTICE that this notice is without prejudice to, and shall not constitute a waiver, release or relinquishment of any of Landlord's claims, defenses, rights or remedies, all of which are expressly reserved.

All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Lease.

SIDLEY HOLDING CORP., Landlord

By: _____

Name: Richard Levine
Authorized Signatory Per Annexed Authorization

*NY 238,616,975*

2

cc:    THREE S'S AND AN R, LLC
       c/o Mr. Morton Ruderman
       Cres Development Company
       50 Salem Street
       Lynnfield, Massachusetts 01940

       THREE S'S AND AN R, LLC
       c/o Cres Development Company
       50 Salem Street
       Lynnfield, Massachusetts 01940

       THREE S'S AND AN R, LLC
       c/o Morton Ruderman
       31 Wildwood Drive
       Lynnfield, Massachusetts 01940

       MORTON RUDERMAN
       31 Wildwood Drive
       Lynnfield, Massachusetts 01940

       MMR Investments, LLC
       40 Salem Street, Suite One
       Lynnfield, MA 01940

3

## AUTHORIZATION

SIDLEY HOLDING CORP. ("Sidley"), a Delaware limited liability company, hereby appoints and authorizes Mr. Richard Levine to individually act as its authorized signatory and agent and to execute on behalf of, and in the name of, Sidley: (a) any and all demands and notices permitted under leases, licenses, service contracts, occupancy agreements or applicable law including but not limited to notices to cure, notices of termination, non-payment and holdover notices, and notices terminating monthly tenancies, tenancies-at-will or tenancies-at-sufferance; and (b) pleadings and affidavits relating to tenants, licensees, leases, licenses, occupancy agreements, stipulations, service contracts, collection of arrears and/or other monies due to Sidley. This authorization is valid for a period of one year from the date of execution unless sooner terminated in writing.

SIDLEY HOLDING CORP.

By: _Sidney Clyman_
Name: Dr. Sidney Clyman
Title: President

STATE OF NEW YORK          )
                            )s.s.:
COUNTY OF WESTCHESTER      )

On the 27 day of November, 2007, before me, the undersigned, a Notary Public in and for said State, personally appeared Dr. Sidney Clyman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to this instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on this instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_Virginia S Breese_
Notary Public

VIRGINIA S. BREESE
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN WESTCHESTER COUNTY
NO. 01BR6139143
COMMISSION EXPIRES

-EXHIBIT A-

## NOTICE TO CURE

December 4, 2007

To:    **THREE S'S AND AN R, LLC**
110-112 East Fordham Road
Portions of the ground floor, first floor and mezzanine level
Bronx, New York, 10468

Re:    Agreement of Lease made as of May 1, 1999 (the "**Lease**"), between
Sidley Holding Corp. ("**Landlord**"), as landlord, and Three S's and an R,
LLC ("**Tenant**"), as tenant, incorporating that certain Agreement of Lease
made as of August 10, 1998 (as amended, the "**1998 Lease**"), between
Landlord and a former tenant, for portions of the ground floor (sometimes
referred to as basement or cellar), first floor, and mezzanine level
(collectively the "**Premises**") in the building known as and located at 110-
112 East Fordham Road, Bronx, New York 10468.

**TAKE NOTICE** that Tenant has failed to comply with its obligations under Sections III
and IV of the 1999 Lease, Articles 1, 3, 4, 13, 21 and other applicable provisions of the 1998
Lease, which require Tenant, among other things, to timely pay Base Rent, Added Rent and
additional rent (collectively, "**Rent**") to Landlord as and when the same became due under the
Lease, in that Tenant failed to pay the Rent due under the Lease during the period from October
1, 2007 through December 4, 2007 in the amount of $64,251.29 (as set forth on the statement
annexed hereto, incorporated herein by reference and made a part hereof, the "**Arrears**").

**TAKE FURTHER NOTICE** that, in accordance with Section 20.02 of the 1998 Lease
and other applicable provisions of the Lease, Tenant is required to deliver payment of the full
amount of the Arrears to Landlord on or before December 17, 2007 (the "**Cure Date**"), which
date is not less than ten (10) days from the date this notice is given.

**TAKE FURTHER NOTICE** that in the event Tenant fails to deliver payment of the full
amount of the Arrears to Landlord on or before the Cure Date, Landlord will exercise its rights

Y 23829: 023

under Section 20.02 of the 1998 Lease and other applicable provisions of the Lease and pursuant to law and serve a three day notice of cancellation of the Lease (the "**Termination Notice**") upon Tenant, in which event, upon the expiration of the period of time set forth in the Termination Notice (the "**Termination Date**"), the term of the Lease will terminate and expire as if the Termination Date was the day fixed in the Lease for the end and expiration thereof, Tenant will remain liable for damages pursuant to applicable provisions of the Lease (including but not limited to past due and future Rent, damages, and Landlord's attorneys' fees, costs and expenses), and Landlord may commence an appropriate action or proceeding to remove Tenant from the Premises and/or commence such other actions and proceedings as Landlord deems appropriate.

**TAKE FURTHER NOTICE** that this notice is without prejudice to and shall not constitute a waiver, release or relinquishment of any of Landlord's claims, defenses, rights or remedies under the Lease, applicable law or otherwise, all of which are expressly reserved.

All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Lease.

SIDLEY HOLDING CORP. Landlord

By: _____

Name: Richard Levine
Authorized Signatory Per Annexed Authorization

2

cc:    **THREE S'S AND AN R, LLC**
c/o Mr. Morton Ruderman
Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

**THREE S'S AND AN R, LLC**
c/o Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

**THREE S'S AND AN R, LLC**
c/o Morton Ruderman
31 Wildwood Drive
Lynnfield, Massachusetts 01940

**MORTON RUDERMAN**
31 Wildwood Drive
Lynnfield, Massachusetts 01940

**MMR Investments, LLC**
40 Salem Street, Suite One
Lynnfield, MA 01940

3

# Sidley Holding Corp.

Three S's & an R
Arrears Statement

| DATE | DESCRIPTION | CHARGE |
|---|---|---|
| October 1, 2007 | Base Rent | $12,432.94 |
| | Management Fee | $551.41 |
| | Added Rent (Additional Rent For Initial Sublet) | $2,500.00 |
| | Real Estate Tax Assessment | $2,861.94 |
| | Late Payment | $755.28 |
| | Past Due (late payment) | $723.03 |
| | Past Due (legal fees) | $5,633.33 |
| | October Total: | $25,457.93 |
| November 1, 2007 | Base Rent | $12,432.94 |
| | Management Fee | $551.41 |
| | Added Rent (Additional Rent For Initial Sublet) | $2,500.00 |
| | Real Estate Tax Assessment | $2,861.94 |
| | Late Payment | $763.74 |
| | November Total: | $19,110.03 |
| December 1, 2007 | Base Rent | $12,432.94 |
| | Management Fee | $551.41 |
| | Added Rent (Additional Rent For Initial Sublet) | $2,500.00 |
| | Real Estate Tax Assessment | $2,861.94 |
| | Late Payment | $1,337.04 |
| | December Total: | $19,683.33 |
| | **Total:** | $64,251.29 |

4

NY 23825 7023

## AUTHORIZATION

SIDLEY HOLDING CORP. ("Sidley"), a Delaware limited liability company, hereby appoints and authorizes Mr. Richard Levine to individually act as its authorized signatory and agent and to execute on behalf of, and in the name of, Sidley: (a) any and all demands and notices permitted under leases, licenses, service contracts, occupancy agreements or applicable law including but not limited to notices to cure, notices of termination, non-payment and holdover notices, and notices terminating monthly tenancies, tenancies-at-will or tenancies-at-sufferance; and (b) pleadings and affidavits relating to tenants, licensees, leases, licenses, occupancy agreements, stipulations, service contracts, collection of arrears and/or other monies due to Sidley. This authorization is valid for a period of one year from the date of execution unless sooner terminated in writing.

SIDLEY HOLDING CORP.

By: _Sidney Clyman_
Name: Dr. Sidney Clyman
Title: President

STATE OF NEW YORK      )
                             )s.s.:
COUNTY OF WESTCHESTER    )

On the 27 day of November, 2007, before me, the undersigned, a Notary Public in and for said State, personally appeared Dr. Sidney Clyman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to this instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on this instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_Virginia S Breese_
Notary Public

VIRGINIA S. BREESE
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN WESTCHESTER COUNTY
NO. 01BR6139143
MY COMMISSION EXPIRES 04-04-____

_Virginia S Breese_

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
:ss.
COUNTY OF NEW YORK  )

Salvatore Giambrone, being duly sworn, deposes and says:

1.     I am employed by Greenberg Traurig, LLP, attorneys for Sidley Holding Corp.

2.     I am not a party to this action, am over 18 years of age and reside in Queens, New York.

3.     On the 4th day of December, 2007, I served the annexed Notice to Cure by depositing true copies in securely sealed envelopes, into the exclusive care and custody of Federal Express for overnight delivery, addressed as follows::

THREE S'S AND AN R, LLC
110-112 East Fordham Road
Portions of the ground floor, first floor and mezzanine level
Bronx, New York, 10468

THREE S'S AND AN R, LLC
c/o Mr. Morton Ruderman
Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

THREE S'S AND AN R, LLC
c/o Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

THREE S'S AND AN R, LLC
c/o Morton Ruderman
31 Wildwood Drive
Lynnfield, Massachusetts 01940

NY238603590

MORTON RUDERMAN
31 Wildwood Drive
Lynnfield, Massachusetts 01940

MMR Investments, LLC
40 Salem Street, Suite One
Lynnfield, Massachusetts 01940

Sworn to before me this
6th day of December, 2007

_____
NOTARY PUBLIC

HEATH B. KUSHNICK
Notary Public, State of New York
No. 02KU6016400
Qualified in New York County
Commission Expires 11/16/10

_____
Salvatore Giambrone
License No. 1133136

NY238603590

# EXHIBIT L

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX: NON-HOUSING PART 52
---------------------------------------------------------------- X

SIDLEY HOLDING CORP.,

                              Petitioner,           **NOTICE OF PETITION**

     – against –                            Commercial Holdover

THREE S' S AND AN R, LLC                  0900282
110-112 East Fordham Road
Portions of the ground floor, first floor and       Index No. L&T      /08
mezzanine levels
Bronx, New York 10112,

                        Respondents,

     – and –

GODA RESTAURANTS CORP. a/k/a GODA
RESTAURANT CORP. d/b/a PIZZA HUT,         **FEE PAID**
STATEWIDE MANAGEMENT AT FORDHAM
ROAD, INC. d/b/a PIZZA HUT, LAUGHING PARTY    FEB 1 3 2008
CO., LLC, "ABC CO."* and "XYZ CORP."*,
                        **CIVIL COURT**
                  Respondent(s).   **BRONX COUNTY**

*  The first name and/or last name of said respondent(s)
being fictitious and unknown to petitioner, the entity(ies)
and/or individuals(s) intended being in possession of the
premises herein described without petitioner's knowledge
or consent.
---------------------------------------------------------------- X

     To the respondents above-named and described, in possession of the premises hereinafter
described or claiming possession thereof:

     **TAKE NOTICE** that a hearing at which you must appear will be held before the Civil
Court of the City of New York, County of Bronx, at Part 52 thereof, located in Courtroom 129,
of the courthouse located at 851 Grand Concourse, Bronx, New York, on February 19, 2008, at
2:00 p.m., on the annexed Petition of Sidley Holding Corp., verified on February 12, 2008,
which prays for: (i) a final judgment of possession awarding petitioner possession of commercial
premises comprised of portions of the ground floor, first floor and mezzanine levels of the
building known as and located at 110-112 East Fordham Road, Bronx, New York (as more fully
described in the accompanying Petition, the "Premises"); (ii) a money judgment in an amount to
be determined by the Court for rent in arrears totaling $64,251.29 together with use and
occupancy due to petitioner for each month or part thereof from December 29, 2007 through and

*NY 238,6: 3,346*

including such date as petitioner recovers actual possession of the premises; and (iii) such other and further relief as the Court deems necessary and proper, including interest, and the attorneys' fees, costs and expenses incurred by petitioner in prosecuting this proceeding.

**TAKE FURTHER NOTICE** that you are required to answer the Petition, and your answer may set forth any defense or counterclaim you may have against petitioner, unless such defense or counterclaim is precluded by law or by prior agreement of the parties.

**TAKE FURTHER NOTICE** that if you fail to interpose and establish any defense or counterclaim you may have against petitioner, you may be precluded from asserting such defense or the claim on which it is based in any other proceeding or action.

**TAKE FURTHER NOTICE** that your answer may be made at the time of the hearing specified above, unless this Notice of Petition and Petition is served upon you at least eight (8) days prior to the time the Petition is noticed to be heard, in which event you must answer at least three (3) days before such date, either orally before the Clerk of the Court at his or her office, or in writing by serving a copy thereof upon the undersigned attorneys for petitioner and by filing the original of such written answer, with proof of service thereof, in the Office of the Clerk of the Court at least three (3) days before the date the Petition is noticed to be heard. In addition, you must appear before the Court at the time and place hereinabove set forth for the hearing.

**TAKE FURTHER NOTICE** that your failure to appear and answer may result in a final judgment against you and in favor of petitioner, by default, for the relief demanded in the Petition.

**TAKE FURTHER NOTICE** that, pursuant to Section 745 of the New York State Real Property Actions and Proceedings Law, you may be required by the Court to make a deposit of use and occupancy, or a payment of use and occupancy to petitioner, upon your second request for an adjournment or if the proceeding is not settled or a final determination has not been made by the Court within thirty (30) days of the first court appearance. Failure to comply with an initial deposit or payment order may result in the entry of a final judgment against you without a trial. Failure to make subsequent required deposits or payments may result in an immediate trial on the issues raised in your answer.

Dated: New York, New York
       February 12, 2008

                                   JACK BAER                 FEB 1 ? 2008
                                   CHIEF CLERK OF THE CIVIL COURT
                                   OF THE CITY OF NEW YORK

**GREENBERG TRAURIG, LLP**
*Attorneys for Petitioner*
200 Park Avenue
New York, New York 10166
(212) 801-9200

By: _____
       Heath B. Kushnick, Esq.

NY 238,573,346

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX: NON-HOUSING PART 52
-------------------------------------------------------------------- X
SIDLEY HOLDING CORP.,

                                   Petitioner,         **VERIFIED PETITION**

       – against –

                                             Commercial Holdover

THREE S' S AND AN R, LLC
110-112 East Fordham Road                      Index No. L&T        /08
Portions of the ground floor, first floor and
mezzanine levels
Bronx, New York 10112,

                               Respondents,

       – and –

GODA RESTAURANTS CORP. a/k/a GODA
RESTAURANT CORP. d/b/a PIZZA HUT,
STATEWIDE MANAGEMENT AT FORDHAM
ROAD, INC. d/b/a PIZZA HUT, LAUGHING PARTY
CO., LLC, "ABC CO."* and "XYZ CORP."*,

                             Respondent(s).

*  The first name and/or last name of said respondent(s)
being fictitious and unknown to petitioner, the entity(ies)
and/or individuals(s) intended being in possession of the
premises herein described without petitioner's knowledge
or consent.
-------------------------------------------------------------------- X

      Petitioner Sidley Holding Corp. ("**Petitioner**"), by its attorneys, Greenberg Traurig, LLP,

as and for its Petition herein, alleges that:

      1.     Petitioner is a domestic business corporation.

      2.     Petitioner is the owner and landlord of the building located at 110-112 East

Fordham Road, Bronx, New York 10112 (the "**Building**"), and is authorized to maintain this

proceeding.

3.      The subject premises (the "**Premises**") are described as follows: portions of the Building's ground floor (sometimes referred to as basement or cellar), first floor and mezzanine levels (as shown approximated on the diagrams annexed hereto as <u>Exhibit A</u>, incorporated herein by reference and made a part hereof), and currently operating as a Pizza Hut store.

4.      The Premises are situated within the territorial jurisdiction of the Civil Court of the City of New York, County of Bronx.

5.      The Premises are not part of a multiple dwelling.

6.      The Premises are not subject to rent control or rent stabilization, by virtue of the fact that the Premises were leased and used for strictly commercial purposes.

7.      Upon information and belief, respondent Three S's And An R, LLC ("**Three S's**") is a domestic limited liability company in possession of and doing business from the Premises.

8.      Upon information and belief, respondent Goda Restaurants Corp. a/k/a Goda Restaurants Corp. d/b/a Pizza Hut is a domestic business corporation possibly in possession of all or some portion of the Premises without Petitioner's knowledge or consent.

9.      Upon information and belief, respondent Statewide Management at Fordham Road, Inc. d/b/a Pizza Hut ("**Statewide Management**") is a domestic corporation possibly in possession of all or some portion of the Premises as a subtenant of Three S's.

10.     Upon information and belief, respondent Statewide Management was dissolved by proclamation of the Secretary of State published on September 25, 2002 pursuant to the Tax Law.

11.     Upon information and belief, respondent Laughing Party Co., LLC ("**Laughing Party**") is a domestic limited liability company possibly in possession of all or some portion of the Premises as a subtenant of Three S's.

12.    Upon information and belief, respondent(s) "ABC Co." and "XYZ Corp." are unknown entity(ies) and/or individual(s) possibly in possession of all or some portion of the Premises without Petitioner's knowledge or consent.

13.    By Agreement of Lease made as of May 1, 1999 (the "**Lease**") (which Lease incorporates that certain Agreement of Lease made as of August 10, 1998 [as amended, the "**1998 Lease**"], between Landlord and a former tenant) between Petitioner, as landlord, and Three S's, as tenant, Three S's leased the Premises from Petitioner.

14.    Upon information and belief, pursuant to a sublease made on or about May 1, 1999, by and among Three S's, as sublandlord, and Statewide Management and Laughing Party, as sublessees, Three S's subleased all or some portion of the Premises to Statewide Management and Laughing Party.

15.    Three S's violated and continues to violate substantial obligations of its tenancy and Lease in that, in violation of Sections III and IV of the Lease, and Articles 1, 3, 4, 13, 21 and other provisions of the 1998 Lease, Three S's failed to pay base rent and added rent (collectively "**Rent**") when due.

16.    As a result of Three S's default, Petitioner served a notice (the "**Notice to Cure**") upon Three S's, requiring Three S's to cure its defaults on or before December 17, 2007 (the "**Cure Date**"), which was not less than ten days from the date of service of the Notice to Cure. A true copy of the Notice to Cure and proof of its delivery are annexed hereto as <u>Exhibit B</u>, incorporated herein by reference and made a part hereof.

17.    Three S's failed to cure the defaults alleged in the Notice to Cure on or before the Cure Date.

3

18. Pursuant to Section 20.02 of the 1998 Lease (made applicable by Section 2.02 and other applicable provisions of the Lease), Petitioner served upon Three S's a notice (the "**Notice of Termination**") advising Three S's of Petitioner's intention to terminate the Lease as of December 28, 2007 (the "**Termination Date**") which was not less than three days from the date of service of the Notice to Termination. A true copy of the Notice of Termination and proof of its delivery are annexed hereto as <u>Exhibit C</u>, incorporated herein by reference and made a part hereof.

19. The term for which the Premises were rented terminated on the Termination Date and respondents continue to occupy the Premises without the permission of Petitioner.

20. By reason of Three S's failure to vacate the Premises upon the termination of its tenancy, Petitioner has been required to commence summary proceedings and will incur legal expenses and attorneys' fees in an amount to be determined by the Court but in no event less than $5,000.00, which Three S's is required to pay pursuant to the terms of the Lease.

21. Three S's defaulted in the payment of Rent prior to the termination of its tenancy and, therefore, Petitioner is entitled to a judgment in the amount of $64,251.29, plus such additional amounts as may have accrued prior to the termination of the Lease term.

22. Petitioner is also entitled to a judgment in an amount to be determined by the Court for respondents' use and occupancy of the Premises for each and every day respondents remain in possession thereof from the day following the Termination Date up to and including the day on which respondents surrender possession of the Premises to Petitioner.

23. Petitioner lacks written information or notice of any address where respondents may do business other than the Premises and: (a) Three S's and an R, LLC, c/o Mr. Morton Ruderman, Cres Development Company, 50 Salem Street, Lynnfield, Massachusetts 01940; (b)

Three S's and an R, LLC, c/o Cres Development Company, 50 Salem Street, Lynnfield, Massachusetts 01940; (c) Three S's and an R, LLC, c/o Morton Ruderman, 31 Wildwood Drive, Lynnfield, Massachusetts 01940; (d) Morton Ruderman, 31 Wildwood Drive, Lynnfield, Massachusetts 01940; (e) MMR Investments, LLC, 40 Salem Street, Suite One, Lynnfield, MA 01940; (f) Goda Restaurant Corp., c/o Goda Abdelmenan, 115 Fairview Avenue, Jersey City, New Jersey; (g) Goda Restaurants Corp., c/o Marvin David, Esq., 225 Broadway, Suite 1900, New York, New York 10007; (h) Statewide Management at Fordham Road, Inc., 44-27 Purves Street, Long Island City, New York 11101; and (i) Laughing Party Co., LLC, 14 Weyman Avenue, New Rochelle, New York 10805, attn: Melvin Getlan.

WHEREFORE, Petitioner requests a final judgment:

(a)     awarding Petitioner a judgment of possession for the Premises and directing the forthwith issuance of a warrant of eviction to remove all respondents and other occupants of the Premises from possession thereof;

(b)     awarding Petitioner a money judgment against respondents in the amount of $64,251.29 for Rent due under the Lease during the period through December 28, 2007;

(c)     awarding Petitioner a further money judgment against respondents for all use and occupancy due for the Premises during the period from December 29, 2007 through and including such date as Petitioner obtains actual possession of the Premises, in an amount to be determined by the Court;

(d)     awarding Petitioner the attorneys' fees, costs and disbursements incurred by Petitioner in commencing and prosecuting this proceeding, in an amount to be determined by the Court; and

(e)    granting Petitioner such other and further relief as the Court
deems just and proper.


Dated   New York, New York
        February 12, 2008


                                GREENBERG TRAURIG, LLP
                                *Attorneys for Petitioner*
                                200 Park Avenue
                                New York, New York 10166
                                (212) 801-9200

                                By:    _____
                                            Heath B. Kushnick, Esq.


NY 238,673 346                        6

## **VERIFICATION**

Heath B. Kushnick, an attorney admitted to practice before the New York State Courts, affirms as follows: I am of counsel to Greenberg Traurig, LLP, attorneys for petitioner Sidley Holding Corp.; I have read the foregoing Petition and know the contents thereof; the same are true to my knowledge except those matters stated to be upon information and belief and as to those matters I believe them to be true; the grounds for my belief as to all of the foregoing are the books and records of petitioner, its employees and agents, including but not limited to Greenberg Traurig, LLP; and this verification is made by me rather than petitioner because Greenberg Traurig, LLP possesses copies of relevant documents and I am authorized to make this verification pursuant to RPAPL 741.

Dated: New York, New York
       February 12, 2008

_____
Heath B. Kushnick

**EXHIBIT A TO THE NOTICE OF PETITION**







FIRST FLOOR PLAN -
SCALE: 1/8" = 1'





MEZZANINE PLAN

SCALE: 1/8" = 1'



EXHIBIT B TO THE NOTICE OF PETITION

## NOTICE TO CURE

December 4, 2007

To:  THREE S'S AND AN R, LLC
     110-112 East Fordham Road
     Portions of the ground floor, first floor and mezzanine level
     Bronx, New York, 10468

Re:  Agreement of Lease made as of May 1, 1999 (the "**Lease**"), between
     Sidley Holding Corp. ("**Landlord**"), as landlord, and Three S's and an R,
     LLC ("**Tenant**"), as tenant, incorporating that certain Agreement of Lease
     made as of August 10, 1998 (as amended, the "**1998 Lease**"), between
     Landlord and a former tenant, for portions of the ground floor (sometimes
     referred to as basement or cellar), first floor, and mezzanine level
     (collectively the "**Premises**") in the building known as and located at 110-
     112 East Fordham Road, Bronx, New York 10468.

TAKE NOTICE that Tenant has failed to comply with its obligations under Sections III

and IV of the 1999 Lease, Articles 1, 3, 4, 13, 21 and other applicable provisions of the 1998

Lease, which require Tenant, among other things, to timely pay Base Rent, Added Rent and

additional rent (collectively, "**Rent**") to Landlord as and when the same became due under the

Lease, in that Tenant failed to pay the Rent due under the Lease during the period from October

1, 2007 through December 4, 2007 in the amount of $64,251.29 (as set forth on the statement

annexed hereto, incorporated herein by reference and made a part hereof, the "**Arrears**").

TAKE FURTHER NOTICE that, in accordance with Section 20.02 of the 1998 Lease

and other applicable provisions of the Lease, Tenant is required to deliver payment of the full

amount of the Arrears to Landlord on or before December 17, 2007 (the "**Cure Date**"), which

date is not less than ten (10) days from the date this notice is given.

TAKE FURTHER NOTICE that in the event Tenant fails to deliver payment of the full

amount of the Arrears to Landlord on or before the Cure Date, Landlord will exercise its rights

Y 23829702 3

under Section 20.02 of the 1998 Lease and other applicable provisions of the Lease and pursuant to law, and serve a three day notice of cancellation of the Lease (the "**Termination Notice**") upon Tenant, in which event, upon the expiration of the period of time set forth in the Termination Notice (the "**Termination Date**"), the term of the Lease will terminate and expire as if the Termination Date was the day fixed in the Lease for the end and expiration thereof; Tenant will remain liable for damages pursuant to applicable provisions of the Lease (including but not limited to past due and future Rent, damages, and Landlord's attorneys' fees, costs and expenses), and Landlord may commence an appropriate action or proceeding to remove Tenant from the Premises and/or commence such other actions and proceedings as Landlord deems appropriate.

**TAKE FURTHER NOTICE** that this notice is without prejudice to and shall not constitute a waiver, release or relinquishment of any of Landlord's claims, defenses, rights or remedies under the Lease, applicable law or otherwise, all of which are expressly reserved.

All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Lease.

SIDLEY HOLDING CORP. Landlord

By: _____

Name: Richard Levine

Authorized Signatory Per Annexed Authorization

2

cc:   **THREE S'S AND AN R, LLC**
c/o Mr. Morton Ruderman
Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

**THREE S'S AND AN R, LLC**
c/o Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

**THREE S'S AND AN R, LLC**
c/o Morton Ruderman
31 Wildwood Drive
Lynnfield, Massachusetts 01940

**MORTON RUDERMAN**
31 Wildwood Drive
Lynnfield, Massachusetts 01940

**MMR Investments, LLC**
40 Salem Street, Suite One
Lynnfield, MA 01940

3

# Sidley Holding Corp.

## Three S's & an R
## Arrears Statement

| DATE | DESCRIPTION | CHARGE |
|---|---|---|
| October 1, 2007 | Base Rent | $12,432.94 |
| | Management Fee | $551.41 |
| | Added Rent (Additional Rent For Initial Sublet) | $2,500.00 |
| | Real Estate Tax Assessment | $2,861.94 |
| | Late Payment | $755.28 |
| | Past Due (late payment) | $723.03 |
| | Past Due (legal fees) | $5,633.33 |
| | October Total: | $25,457.93 |
| | | |
| November 1, 2007 | Base Rent | $12,432.94 |
| | Management Fee | $551.41 |
| | Added Rent (Additional Rent For Initial Sublet) | $2,500.00 |
| | Real Estate Tax Assessment | $2,861.94 |
| | Late Payment | $763.74 |
| | November Total: | $19,110.03 |
| | | |
| December 1, 2007 | Base Rent | $12,432.94 |
| | Management Fee | $551.41 |
| | Added Rent (Additional Rent For Initial Sublet) | $2,500.00 |
| | Real Estate Tax Assessment | $2,861.94 |
| | Late Payment | $1,337.04 |
| | December Total: | $19,683.33 |
| | | |
| | **Total:** | **$64,251.29** |

4

## AUTHORIZATION

SIDLEY HOLDING CORP. ("Sidley"), a Delaware limited liability company, hereby appoints and authorizes Mr. Richard Levine to individually act as its authorized signatory and agent and to execute on behalf of, and in the name of, Sidley: (a) any and all demands and notices permitted under leases, licenses, service contracts, occupancy agreements or applicable law including but not limited to notices to cure, notices of termination, non-payment and holdover notices, and notices terminating monthly tenancies, tenancies-at-will or tenancies-at-sufferance; and (b) pleadings and affidavits relating to tenants, licensees, lessees, licenses, occupancy agreements, stipulations, service contracts, collection of arrears and/or other monies due to Sidley. This authorization is valid for a period of one year from the date of execution unless sooner terminated in writing.

SIDLEY HOLDING CORP.

By: _Sidney Clyman_
Name: Dr. Sidney Clyman
Title: President

STATE OF NEW YORK )
                                            ) s.s.:
COUNTY OF WESTCHESTER )

On the 27 day of November, 2007, before me, the undersigned, a Notary Public in and for said State, personally appeared Dr. Sidney Clyman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to this instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on this instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_Virginia S Breese_
Notary Public

VIRGINIA S. BREESE
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN WESTCHESTER COUNTY
NO. 01BR6139143
COMMISSION EXPIRES 04/11/20__

## <u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK     )
                                :ss.
COUNTY OF NEW YORK   )

Salvatore Giambrone, being duly sworn, deposes and says:

     1.      I am employed by Greenberg Traurig, LLP, attorneys for Sidley Holding Corp.

     2.      I am not a party to this action, am over 18 years of age and reside in Queens, New York.

     3.      On the 4th day of December, 2007, I served the annexed Notice to Cure by depositing true copies in securely sealed envelopes, into the exclusive care and custody of Federal Express for overnight delivery, addressed as follows::

THREE S's AND AN R, LLC
110-112 East Fordham Road
Portions of the ground floor, first floor and mezzanine level
Bronx, New York, 10468

THREE S's AND AN R, LLC
c/o Mr. Morton Ruderman
Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

THREE S's AND AN R, LLC
c/o Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

THREE S's AND AN R, LLC
c/o Morton Ruderman
31 Wildwood Drive
Lynnfield, Massachusetts 01940

MORTON RUDERMAN
31 Wildwood Drive
Lynnfield, Massachusetts 01940

MMR Investments, LLC
40 Salem Street, Suite One
Lynnfield, Massachusetts 01940

Sworn to before me this
6th day of December, 2007

_____
NOTARY PUBLIC

HEATH B. KUSHNICK
Notary Public, State of New York
No. 02KU6016400
Qualified in New York County
Commission Expires 11/16/10

Salvatore Giambrone
License No. 1133136

NY238603590

**EXHIBIT C TO THE NOTICE OF PETITION**

## NOTICE OF TERMINATION

December 20, 2007

To:    THREE S'S AND AN R, LLC
       110-112 East Fordham Road
       Portions of the ground floor, first floor and mezzanine levels
       Bronx, New York 10468

Re:    Agreement of Lease made as of May 1, 1999 (the "Lease"), between
       Sidley Holding Corp. ("Landlord"), as landlord, and Three S's and an R,
       LLC ("Tenant"), as tenant, incorporating that certain Agreement of Lease
       made as of August 10, 1998 (as amended, the "1998 Lease"), between
       Landlord and a former tenant, for portions of the ground floor (sometimes
       referred to as basement or cellar), first floor and mezzanine level
       (collectively the "Premises") in the building known as and located at 110-
       112 East Fordham Road, Bronx, New York 10468.

TAKE NOTICE that Tenant defaulted in observing and performing its obligations under

Sections III and IV of the Lease, Articles 1, 3, 4, 13, 21 and other applicable provisions of the

1998 Lease, which require Tenant, among other things, to timely pay Base Rent, Added Rent and

additional rent (collectively, "Rent") as and when the same becomes due under the Lease, and

Tenant failed to cure its default as described in the notice to cure dated December 4, 2007 (a

copy of which is annexed hereto as Exhibit A, incorporated herein by reference and made a part

hereof, the "Notice to Cure") in that Tenant failed to pay Rent in the amount of $64,251.29 by

December 17, 2007 (the "Cure Date"), which was at least ten (10) days after service of the

Notice to Cure upon Tenant.

TAKE FURTHER NOTICE that pursuant to Section 20.02 of the 1998 Lease (made

applicable by Section 2.02 and other applicable provisions of the Lease), Landlord hereby elects

to terminate the Lease on December 28, 2007 (the "Termination Date"), which date is not less

than three (3) days from the date this notice is given, and the Lease, the term thereof and any and

1

all right, title and interest of Tenant thereunder shall end and expire on the Termination Date as fully and completely as if the Termination Date was the day fixed in the Lease for the end and expiration of the term thereof.

TAKE FURTHER NOTICE that Tenant is required to quit and vacate the Premises in accordance with the terms of the Lease on or before the Termination Date and if Tenant fails to so quit and vacate on or before the Termination Date, Landlord will, among other things, commence an appropriate action and/or proceeding to remove Tenant from the Premises and to recover all past due Rent, the reasonable value of Tenants' use and occupancy of the Premises, attorneys' fees and any other damages incurred by Landlord in accordance with applicable provisions of the Lease and applicable law.

TAKE FURTHER NOTICE that this notice is without prejudice to, and shall not constitute a waiver, release or relinquishment of any of Landlord's claims, defenses, rights or remedies, all of which are expressly reserved.

All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Lease.

SIDLEY HOLDING CORP., Landlord

By: _____

Name: Richard Levine
Authorized Signatory Per Annexed Authorization

2

cc:    **THREE S'S AND AN R, LLC**
       c/o Mr. Morton Ruderman
       Cres Development Company
       50 Salem Street
       Lynnfield, Massachusetts 01940

       **THREE S'S AND AN R, LLC**
       c/o Cres Development Company
       50 Salem Street
       Lynnfield, Massachusetts 01940

       **THREE S'S AND AN R, LLC**
       c/o Morton Ruderman
       31 Wildwood Drive
       Lynnfield, Massachusetts 01940

       **MORTON RUDERMAN**
       31 Wildwood Drive
       Lynnfield, Massachusetts 01940

       **MMR Investments, LLC**
       40 Salem Street, Suite One
       Lynnfield, MA 01940

3

## AUTHORIZATION

SIDLEY HOLDING CORP. ("Sidley"), a Delaware limited liability company, hereby appoints and authorizes Mr. Richard Levine to individually act as its authorized signatory and agent and to execute on behalf of, and in the name of, Sidley: (a) any and all demands and notices permitted under leases, licenses, service contracts, occupancy agreements or applicable law including but not limited to notices to cure, notices of termination, non-payment and holdover notices, and notices terminating monthly tenancies, tenancies-at-will or tenancies-at-sufferance; and (b) pleadings and affidavits relating to tenants, licensees, leases, licenses, occupancy agreements, stipulations, service contracts, collection of arrears and/or other monies due to Sidley. This authorization is valid for a period of one year from the date of execution unless sooner terminated in writing.

SIDLEY HOLDING CORP.

By: _Sidney Clyman_
Name: Dr. Sidney Clyman
Title: President

STATE OF NEW YORK       )
                        )s.s.:
COUNTY OF WESTCHESTER   )

On the 27 day of November, 2007, before me, the undersigned, a Notary Public in and for said State, personally appeared Dr. Sidney Clyman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to this instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on this instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_Virginia S. Breese_
Notary Public

VIRGINIA S. BREESE
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN WESTCHESTER COUNTY
NO. 01BR6139142
COMMISSION EXPIRES

_Virginia Breese_

-EXHIBIT A-

## NOTICE TO CURE

December 4, 2007

To: **THREE S'S AND AN R, LLC**
110-112 East Fordham Road
Portions of the ground floor, first floor and mezzanine level
Bronx, New York, 10468

Re:    Agreement of Lease made as of May 1, 1999 (the "**Lease**"), between
Sidley Holding Corp. ("**Landlord**"), as landlord, and Three S's and an R,
LLC ("**Tenant**"), as tenant, incorporating that certain Agreement of Lease
made as of August 10, 1998 (as amended, the "**1998 Lease**"), between
Landlord and a former tenant, for portions of the ground floor (sometimes
referred to as basement or cellar), first floor, and mezzanine level
(collectively the "**Premises**") in the building known as and located at 110-
112 East Fordham Road, Bronx, New York 10468.

**TAKE NOTICE** that Tenant has failed to comply with its obligations under Sections III

and IV of the 1999 Lease, Articles 1, 3, 4, 13, 21 and other applicable provisions of the 1998

Lease, which require Tenant, among other things, to timely pay Base Rent, Added Rent and

additional rent (collectively, "**Rent**") to Landlord as and when the same became due under the

Lease, in that Tenant failed to pay the Rent due under the Lease during the period from October

1, 2007 through December 4, 2007 in the amount of $64,251.29 (as set forth on the statement

annexed hereto, incorporated herein by reference and made a part hereof, the "**Arrears**").

**TAKE FURTHER NOTICE** that, in accordance with Section 20.02 of the 1998 Lease

and other applicable provisions of the Lease, Tenant is required to deliver payment of the full

amount of the Arrears to Landlord on or before December 17, 2007 (the "**Cure Date**"), which

date is not less than ten (10) days from the date this notice is given.

**TAKE FURTHER NOTICE** that in the event Tenant fails to deliver payment of the full

amount of the Arrears to Landlord on or before the Cure Date, Landlord will exercise its rights

Y 23820023

under Section 20.02 of the 1998 Lease and other applicable provisions of the Lease and pursuant to law, and serve a three day notice of cancellation of the Lease (the "**Termination Notice**") upon Tenant, in which event, upon the expiration of the period of time set forth in the Termination Notice (the "**Termination Date**"), the term of the Lease will terminate and expire as if the Termination Date was the day fixed in the Lease for the end and expiration thereof, Tenant will remain liable for damages pursuant to applicable provisions of the Lease (including but not limited to past due and future Rent, damages, and Landlord's attorneys' fees, costs and expenses), and Landlord may commence an appropriate action or proceeding to remove Tenant from the Premises and/or commence such other actions and proceedings as Landlord deems appropriate.

**TAKE FURTHER NOTICE** that this notice is without prejudice to and shall not constitute a waiver, release or relinquishment of any of Landlord's claims, defenses, rights or remedies under the Lease, applicable law or otherwise, all of which are expressly reserved.

All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Lease.

SIDLEY HOLDING CORP. Landlord

By: _____

Name: Richard Levine
Authorized Signatory Per Annexed Authorization

2

cc:  **THREE S'S AND AN R, LLC**
c/o Mr. Morton Ruderman
Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

**THREE S'S AND AN R, LLC**
c/o Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

**THREE S'S AND AN R, LLC**
c/o Morton Ruderman
31 Wildwood Drive
Lynnfield, Massachusetts 01940

**MORTON RUDERMAN**
31 Wildwood Drive
Lynnfield, Massachusetts 01940

**MMR Investments, LLC**
40 Salem Street, Suite One
Lynnfield, MA 01940

3

# Sidley Holding Corp.

### Three S's & an R
### Arrears Statement

| DATE | DESCRIPTION | | CHARGE |
|------|-------------|---|--------|
| October 1, 2007 | Base Rent | | $12,432.94 |
| | Management Fee | | $551.41 |
| | Added Rent (Additional Rent For Initial Sublet) | | $2,500.00 |
| | Real Estate Tax Assessment | | $2,861.94 |
| | Late Payment | | $755.28 |
| | Past Due (late payment) | | $723.03 |
| | Past Due (legal fees) | | $5,633.33 |
| | | October Total: | $25,457.93 |
| | | | |
| November 1, 2007 | Base Rent | | $12,432.94 |
| | Management Fee | | $551.41 |
| | Added Rent (Additional Rent For Initial Sublet) | | $2,500.00 |
| | Real Estate Tax Assessment | | $2,861.94 |
| | Late Payment | | $763.74 |
| | | November Total: | $19,110.03 |
| | | | |
| December 1, 2007 | Base Rent | | $12,432.94 |
| | Management Fee | | $551.41 |
| | Added Rent (Additional Rent For Initial Sublet) | | $2,500.00 |
| | Real Estate Tax Assessment | | $2,861.94 |
| | Late Payment | | $1,337.04 |
| | | December Total: | $19,683.33 |
| | | | |
| | | Total: | $64,251.29 |

4

## AUTHORIZATION

SIDLEY HOLDING CORP. ("Sidley"), a Delaware limited liability company, hereby appoints and authorizes Mr. Richard Levine to individually act as its authorized signatory and agent and to execute on behalf of, and in the name of, Sidley: (a) any and all demands and notices permitted under leases, licenses, service contracts, occupancy agreements or applicable law including but not limited to notices to cure, notices of termination, non-payment and holdover notices, and notices terminating monthly tenancies, tenancies-at-will or tenancies-at-sufferance; and (b) pleadings and affidavits relating to tenants, licensees, leases, licenses, occupancy agreements, stipulations, service contracts, collection of arrears and/or other monies due to Sidley. This authorization is valid for a period of one year from the date of execution unless sooner terminated in writing.

SIDLEY HOLDING CORP.

By: _Sidney Clyman_
Name: Dr. Sidney Clyman
Title: President

STATE OF NEW YORK      )
                       ) s.s.:
COUNTY OF WESTCHESTER  )

On the 27 day of November, 2007, before me, the undersigned, a Notary Public in and for said State, personally appeared Dr. Sidney Clyman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to this instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on this instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_Virginia S Breese_
Notary Public

VIRGINIA S. BREESE
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN WESTCHESTER COUNTY
NO. 01BR6139142
MY COMMISSION EXPIRES

_Virginia S Breese_

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )
                       :ss.

COUNTY OF NEW YORK  )

Salvatore Giambrone, being duly sworn, deposes and says:

1.     I am employed by Greenberg Traurig, LLP, attorneys for Sidley Holding Corp.

2.     I am not a party to this action, am over 18 years of age and reside in Queens, New York.

3.     On the 4th day of December, 2007, I served the annexed Notice to Cure by depositing true copies in securely sealed envelopes, into the exclusive care and custody of Federal Express for overnight delivery, addressed as follows::

THREE S'S AND AN R, LLC
110-112 East Fordham Road
Portions of the ground floor, first floor and mezzanine level
Bronx, New York, 10468

THREE S'S AND AN R, LLC
c/o Mr. Morton Ruderman
Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

THREE S'S AND AN R, LLC
c/o Cres Development Company
50 Salem Street
Lynnfield, Massachusetts 01940

THREE S'S AND AN R, LLC
c/o Morton Ruderman
31 Wildwood Drive
Lynnfield, Massachusetts 01940

MORTON RUDERMAN
31 Wildwood Drive
Lynnfield, Massachusetts 01940

MMR Investments, LLC
40 Salem Street, Suite One
Lynnfield, Massachusetts 01940

Sworn to before me this
6th day of December, 2007

_____
NOTARY PUBLIC

HEATH B. KUSHNICK
Notary Public, State of New York
No. 02KU6016400
Qualified in New York County
Commission Expires 11/16/10

Salvatore Giambrone
License No. 1133136

NY238603590

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX: NON-HOUSING PART 52

Index No.

SIDLEY HOLDING CORP.,

Petitioner,

-against-

THREE S'S AND AN R, LLC
110-112 East Fordham Road
Portions of the ground floor, first floor and mezzanine levels
Bronx, New York 10112,

Respondent,

-and-

GODA RESTAURANTS CORP. a/k/a GODA RESTAURANT CORP.
d/b/a PIZZA HUT, STATEWIDE MANAGEMENT AT FORDAM
ROAD, INC. d/b/a PIZZA HUT, LAUGHING PARTY CO. LLC,
"ABC CO." and "XYZ CORP.,"

Respondent(s).

VERIFIED PETITION

HOLDOVER - COMMERCIAL

TRIAL DATE: FEBRUARY 19, 2008

Attorney for Petitioner
Heath B. Kushnick, Esq.

Law Offices
Greenberg Traurig, LLP

Met Life Building
200 Park Avenue
New York, NY 10166
212.801.9200
Fax 212.801.6400
www.gtlaw.com

NY 238,635,791v1

# EXHIBIT M

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                             :ss.
COUNTY OF NEW YORK   )

Deborah Husband-Jones, being duly sworn, deposes and says:

      1      I am employed by Greenberg Traurig, LLP, attorneys for Sidley Holding Corp.

      2      I am not a party to this action, am over 18 years of age and reside in Bronx, New

York.

      3      On the 3rd day of March, 2008, I served the annexed Notice of Motion,

Affirmation, Affidavit and Exhibits by depositing true copies, in securely sealed envelopes, into

the exclusive care and custody of Federal Express for overnight delivery, addressed as follows:

> BRYER & DAVID
> *Attorneys for Respondent Goda Restaurants Corp.*
> Attention: Marvin M. David
> 225 Broadway
> New York, New York 10007
> (212) 369-2530
>
> THREE S'S AND AN R, LLC
> 110-112 East Fordham Road
> Portions of the ground floor, first floor
>    and mezzanine level
> Bronx, New York, 10468
>
> THREE S'S AND AN R, LLC
> c/o Mr. Morton Ruderman
> Cres Development Company
> 50 Salem Street
> Lynnfield, Massachusetts 01940
>
> THREE S'S AND AN R, LLC
> c/o Cres Development Company
> 50 Salem Street
> Lynnfield, Massachusetts 01940

THREE S'S AND AN R, LLC
c/o Morton Ruderman
31 Wildwood Drive
Lynnfield, Massachusetts 01940

THREE S'S AND AN R, LLC
c/o MMR Investments, LLC
4) Salem Street, Suite One
Lynnfield, MA 01940;

STATEWIDE MANAGEMENT AT FORDHAM ROAD, INC.
110-112 East Fordham Road
Portions of the ground floor, first floor
   and mezzanine level
Bronx, New York, 10468

STATEWIDE MANAGEMENT AT FORDHAM ROAD, INC.
44-27 Purves Street
Long Island City, New York 11101

LAUGHING PARTY CO., LLC
110-112 East Fordham Road
Portions of the ground floor, first floor
   and mezzanine level
Bronx, New York, 10468

LAUGHING PARTY CO., LLC
14 Weyman Avenue
New Rochelle, New York 10805
Attn: Melvin Getlan

Deborah Husband-Jones

Sworn to before me this
4th day of March, 2008

NOTARY PUBLIC

SALVATORE GIAMBRONE
Notary Public, State of New York
No. 01GI6098207
Qualified in Queens County
Commission Expires September 8, 2007 2011

238712995

**SUPPLEMENTAL AFFIDAVIT OF SERVICE**

STATE OF NEW YORK     )
                          :ss.
COUNTY OF NEW YORK   )

Deborah Husband-Jones, being duly sworn, deposes and says:

    1.       I am employed by Greenberg Traurig, LLP, attorneys for Sidley Holding Corp.

    2.       I am not a party to this action, am over 18 years of age and reside in Bronx, New York.

    3.       On the 4th day of March, 2008, I served the annexed Notice of Motion, Affirmation, Affidavit, Exhibits and the accompanying Memorandum of Law by depositing true copies, in securely sealed envelopes, into the exclusive care and custody of Federal Express for overnight delivery, addressed as follows:

> Scott A. Frank, Esq.
> Arnstein & Lehr LLP
> 515 North Flagler Drive
> Sixth Floor
> West Palm Beach, Florida 33401-4323

                                          Deborah Husband-Jones

Sworn to before me this
4th day of March, 2008

NOTARY PUBLIC

SALVATORE GIAMBRONE
Notary Public, State of New York
No. 01GI6098207
Qualified in Queens County
Commission Expires September 8, ~~2007~~ 2011

238712995

# EXHIBIT N

CIVIL COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX: NON-HOUSING PART 52
------------------------------------------------------------------ X
SIDLEY HOLDING CORP.,

                                        Petitioner,

                                                         L&T Index No.: 900282/08

         – against –
                                                         **AFFIDAVIT IN**
                                                         **SUPPORT OF MOTION FOR**
THREE S'S AND AN R, LLC                                  **SUMMARY JUDGMENT**
110-112 East Fordham Road
Portions of the ground floor, first floor and
mezzanine levels
Bronx, New York 10112,

                                        Respondents,

         – and –

GODA RESTAURANTS CORP. a/k/a GODA
RESTAURANT CORP. d/b/a PIZZA HUT,
STATEWIDE MANAGEMENT AT FORDHAM
ROAD, INC. d/b/a PIZZA HUT, LAUGHING PARTY
CO., LLC, "ABC CO."* and "XYZ CORP."*,

                                        Respondent(s).

* The first name and/or last name of said respondent(s)
being fictitious and unknown to petitioner, the
entity(ies) and/or individuals(s) intended being in
possession of the premises herein described without
petitioner's knowledge or consent.

------------------------------------------------------------------ X
STATE OF NEW YORK     }
                                    ss.:
COUNTY OF DUTCHESS    }

         Richard Levine, being duly sworn, deposes and says:

         1.        I am employed by Levine Bros. Management, managing agent of 110-112 East

Fordham Road, Bronx, New York (the **"Building"**) for petitioner Sidley Holding Corp.

(**"Sidley"**).  I am fully familiar with the books and records of Sidley pertaining to respondent

Three S's and an R, LLC ("**Three S's**") and respectfully submit this affidavit based on my personal knowledge of the facts in support of Sidley's motion for an order granting summary judgment in its favor.

2.      Sidley is a New York corporation (Exhibit A).

3.      Sidley is the owner and landlord of the Building (Exhibit B).

4.      Pursuant to an Agreement of Lease made as of May 1, 1999 (the "**Lease**") (which Lease incorporates that certain Agreement of Lease made as of August 10, 1998 between Sidley and a former tenant)(Exhibit C), Sidley is the landlord and Three S's was the tenant of commercial space on portions of the ground floor, first floor and mezzanine levels of the Building (as more particularly described in the Lease, the "**Premises**").

5.      The Premises are not part of a multiple dwelling.

6.      The Premises are not subject to the New York City Rent and Rehabilitation Law or the Rent Stabilization Law of 1969, as amended by Chapter 576 of the Laws of 1974, because they were rented and are used solely for business purposes.

7.      Upon information and belief, respondents Statewide Management at Fordham Road, Inc. d/b/a Pizza Hut ("**Statewide Management**") and Laughing Party Co., LLC ("**Laughing Party**") are possibly in possession of all or some portion of the Premises as permitted subtenants of Three S's. *See* Landlord's Consent to Sublease (Exhibit D). Upon information and belief, Statewide Management was dissolved by proclamation of the Secretary of State published on September 25, 2002 (Exhibit E).

8.      Upon information and belief, respondent Goda Restaurants Corp. a/k/a Goda Restaurants Corp. d/b/a Pizza Hut ("**Goda**," and together with Statewide Management and Laughing Party, the "**Subtenants**") is possibly in possession of all or some portion of the

2

Premises without Sidley's consent. *See* Assignment and Assumption of Lease dated December 20, 2002 between Three S's and Goda (Exhibit F). Sidley did not consent to the assignment and assumption agreement between Three S's and Goda. Nonetheless, Goda apparently took occupancy of the Premises and operates a Pizza Hut restaurant therein.

9.    In 2007, Three S's defaulted under the Lease by failing to timely pay fixed and additional rent (collectively, "**Rent**"). As a result, Sidley served upon Three S's a notice to cure dated December 4, 2007 (the "**Notice to Cure**," Exhibit G) demanding payment of $64,251.29 on or before December 17, 2007 (the "**Cure Date**"). The Notice to Cure advised Three S's that Sidley would serve a notice of cancellation thereby terminating the Lease in the event Three S's failed to timely cure.

10.    Three S's failed to cure its default on or before the Cure Date. Accordingly, Sidley served upon Three S's a notice of termination dated December 20, 2007 (the "**Notice of Termination**," Exhibit H) advising Three S's of Sidley's intention to terminate the Lease as of December 28, 2007 (the "**Termination Date**").

11.    As a result of Sidley's service of the Notice of Termination, the term of the Lease expired on the Termination Date. Three S's and the Subtenants, however, failed to vacate the Premises on or after that date. Accordingly, Sidley commenced this holdover proceeding by service of a notice of petition and petition dated February 12, 2008 (the "**Petition**," Exhibit I).

12.    Sidley has not accepted any payments from Three S's or the Subtenants for the period subsequent to the Termination Date.

13.    Through and including March 4, 2003, Three S's owes Sidley the amount of $127,867.83 for fixed and additional rent due under the Lease and/or use and occupancy of the Premises (Exhibit J).

3

14.    Accordingly, for the reasons set forth above, as well as those in the accompanying affirmation and memorandum of law, Sidley respectfully requests that its motion be granted in its entirety.

_____
RICHARD LEVINE

Sworn to before me this
1st day of March, 2008.

_____
Notary Public

VICTORIA R NEUN
Notary Public - State of New York
NO. 01NE6163276
Qualified in Dutchess County
My Commission Expires 4|30|11

4

Exhibit J to March 1, 2008 Affidavit of Richard Levine

# Sidley Holding Corp.
32 Eton Drive
Slingerlands, NY 12159

# Rent Bill

| Date | Invoice # |
|------|-----------|
| 3/1/2008 | 156 |

| Bill To |
|---------|
| Three S's & an R |

| Item | Description | Amount |
|------|-------------|--------|
| Rent | | 12,432.94 |
| Management Fee | | 551.41 |
| Additional Rent | | 2,500.00 |
| Real Estate Tax | | 2,861.94 |
| Late Payment | Past Due | 3,189.95 |
| Water Bill | | 924.42 |
| PAST DUE | | 105,407.17 |
| | **Total** | **$127,867.83** |

Notice of Motion, Affirmation and additional exhibits omitted

# EXHIBIT O

# Sidley Holding Corp.
5 Denim Dr
Wappingers Falls, NY 12590

## RENT BILL

| Date | Invoice # |
|------|-----------|
| 7/1/2008 | 168 |

**Bill To**

Three S's & an R

| Item | Description | Amount |
|------|-------------|--------|
| Rent | | 13,432.94 |
| Management Fee | | 551.41 |
| Additional Rent | | 2,500.00 |
| Real Estate Tax | | 3,746.04 |
| Late Payment | | 5,953.84 |
| PAST DUE | | 198,461.17 |
| | **Total** | **$224,645.40** |

**EXHIBIT P**

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX     PART
DECISION AND JUDGMENT          **52**

INDEX # 900282/2008
JUDGMENT SEQ # 001

SIDLEY HOLDING CORP,

Petitioner(s)

**AGAINST**

THREE S'S AND AN R LLC,
GODA RESTAURANTS CORP,
D/B/A PIZZA HUT,
STATEWIDE MANAGEMENT AT FORDHAM ROAD INC,
LAUGHING PARTY CO LLC,
ABC CO,
XYZ CORP,
A/K/A GODA RESTAURANT CORP.,
D/B/A PIZZA HUT,

Respondent(s)

---

**Decision and Judgment is** rendered based upon
a decision made after trial as follows:
Judgment of possession is granted in favor of:
SIDLEY HOLDING CORP,
and against
THREE S'S AND AN R LLC,
GODA RESTAURANTS CORP,
D/B/A PIZZA HUT,
STATEWIDE MANAGEMENT AT FORDHAM ROAD INC,
LAUGHING PARTY CO LLC,
ABC CO,
XYZ CORP,
A/K/A GODA RESTAURANT CORP.,
D/B/A PIZZA HUT,
A counterclaim is granted in favor of the respondent in the amount of     $0.00
(which if not being entered separately is offset and reflected in the
total amount due, listed below.)

A money judgment is hereby granted, along with cost and disbursements
in the amount of     $0.00 in favor of:
SIDLEY HOLDING CORP,
and against
THREE S'S AND AN R LLC,
GODA RESTAURANTS CORP,
D/B/A PIZZA HUT,
STATEWIDE MANAGEMENT AT FORDHAM ROAD INC,
LAUGHING PARTY CO LLC,
ABC CO,
XYZ CORP,
A/K/A GODA RESTAURANT CORP.,
D/B/A PIZZA HUT,

for a total amount of     $0.00

CIV-LT-50(2006)

Page 1 of 2

PI 0182

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX          PART
DECISION AND JUDGMENT

INDEX # 900282/2008
JUDGMENT SEQ # 001

(Monthly use and occupancy is set at    $0.00 per month, as per order,
stipulation or decision in record.)

Warrant to issue forthwith                Execution    STAYED FIVE (5) DAYS

Date    5/14/08                           _____
                                          Judge, Civil/Housing Court    HON. DONALD A. MILES

Section 5020(c) of the Civil Practice Law and Rules requires that a satisfaction be filed with the
clerk when the judgment is satisfied.  Failure to do so subjects the judgment creditor to penalties.
================================================================

**ENTRY OF JUDGMENT**

Judgment entered in accordance with the above on    5/14/08    _____
                                                               Chief Clerk, Civil Court

Warrant issued to Marshal _____ On _____

CIV-LT-50(2006)

                                                               Page 2 of 2

PI 0183