UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
SIDLEY HOLDING CORP.,                :

                                     :

            Plaintiff,               :          **REPORT AND**

                                     :          **RECOMMENDATION**

       -v-                           :

                                     :    08 Civ. 2513 (WHP)(MHD)

MORTON RUDERMAN,                     :

            Defendant.               :
-----------------------------------x

**TO THE HONORABLE WILLIAM H. PAULEY, III, U.S.D.J.:**


        Sidley Holding Corporation ("Sidley") is the owner of a
commercial building in the Bronx, portions of which it leased to
Three S's and an R, LLC ("SSSR") for approximately nine years on
May 1, 1999. On that same date, defendant Morton Ruderman executed
a guaranty of SSSR's obligations under the lease. Plaintiff later
consented to a sub-lease of the premises to two companies, one of
which was owned by Ruderman. In 2002 plaintiff denied SSSR's
request to assign the lease, but the intended assignee nevertheless
occupied the leased space in the building. SSSR stopped making
monthly rent payments as of October 1, 2007 and Sidley commenced
proceedings to terminate its lease. Sidley also brought a holdover
action in Bronx Civil Court to remove the occupants of the leased
space.

1

Having evicted the occupants of the building, Sidley commenced this proceeding against Ruderman as the guarantor. It moved for summary judgment, seeking rent and related expenses under breach-of-guaranty and account-stated claims, and also for reimbursement of attorney's fees. The District Court granted plaintiff's summary judgment motion at a hearing on September 26, 2008. (See H. Tr. Sept. 26, 2008, 12.  See also Order dated September 26, 2008, dkt. entry #20). The District Court specifically ruled that defendant's guaranty obligated him to pay plaintiff's attorney's fees, and referred the case to me for an inquest to determine the amount of those fees. (H. Tr. at 12). The Court also granted plaintiff summary judgment on its claim for rent and related expenses as to an account stated through October 2007, but directed that if plaintiff wished to seek relief for subsequent months on an account-stated or breach-of-contract theory it was to do so in this inquest proceeding. (Id. at 12-14).

Based on the submissions of both parties, we now recommend that plaintiff be awarded $180,709.90 in rent and related charges and $88,868.47 in attorneys' fees and costs.

Prior Proceedings


On May 1, 1999 Sidley leased portions of a building it owned at 110-112 East Fordham Road in the Bronx to SSSR through August 9, 2008. (Affidavit of Richard Levine in Supp. of Pl.'s Mot. for Summ. J., sworn to July 31, 2008, ¶ 4 & Ex. E). Sidley's lease with SSSR largely incorporated the terms of an attached lease with Sidley's former tenant. (Id.). Defendant Ruderman signed a guaranty of SSSR's obligations under the lease on the same date. (Id. at ¶ 5 & Ex. F). That guaranty obligated Ruderman to ensure


> [T]he full and prompt performance by [SSSR] of all the obligations of [SSSR] under the Lease, as the same may be extended, including, without limitation, the payment by [SSSR] of all Base Rent and additional rent reserved under, and as defined in, the Lease, and any arrears thereof, and any other sum or sums required to be paid by [SSSR] under any of the terms of the Lease.

(Id. at Ex. F, ¶ A).


According to the terms of SSSR's lease, its base rent for the third year of its lease -- the period running from August 10, 2001 through August 9, 2002 -- was $120,510.00, to be paid in equal monthly installments of $10,042.50. (Id. at Ex. E, Introductory

Portion ("Intro. Port.") ¶ 3.01, Main Lease ¶ 1.01).[1] The base rent increased three percent each year. (Id. at Ex. E, Intro. Port. ¶ 3.01, Main Lease ¶ 1.01). Plaintiff calculates the monthly base rent for the period from October 1, 2007 through June 1, 2008 to be $12,432.94 per month[2], and for the period from July 1, 2008 through August 10, 2008 as $13,432.94 per month. (Affidavit of Richard Levine in Supp. of Pl.'s Req. for Damages, executed Jan. 23, 2009, Ex. 1). The lease also obligated SSSR to make "added" or "additional rent" payments of $2,500.00 for each month that the leased premises were "subleased to or to be used by others." (Levine July 31, 2008 Aff. at Ex. E, Intro. Port. ¶ 4.01). SSSR was required to pay the base rent in advance by the first calendar day of each month. (Id. at Ex. E, Main Lease ¶ 3.01(A)). It was also required to make any added or additional rent payments due to Sidley within five days of being billed for them. (Id.).[3] If SSSR

---

[1] Like plaintiff, we delineate the sections of the lease between Sidley and SSSR as the "Introductory Portion" -- referring to the first eight pages of the lease -- and the "Main Lease", which is appended to the introductory portion.

[2] We note that our calculation of the monthly base rent due under SSSR's lease does not conform to plaintiff's. However, the calculation is complicated by the interplay between the leases of the former tenant and SSSR with Sidley. As defendant does not object to the stated base rent rate, we presume that plaintiff's calculation is correct and rely on it.

[3] Apparently Sidley billed SSSR on the first day of each month for the rent and related expenses due for the upcoming month. (See Def.'s Mem. of Law in Opp'n to Summ. J., 7-8).

failed to pay its base or additional rent within five days of its due date, it was assessed a late charge of three cents for each dollar which was past-due. The late charge could be "imposed only once insofar as any specific installment or payment is concerned." (Levine July 31, 2008 Aff. at Ex. E, Main Lease ¶ 3.01(C)). The lease stated that the purpose of the late charge was to compensate Sidley for additional administrative expenses incurred in processing late payments, and should not be construed as interest owed. (Id.).

SSSR was also obligated to pay for a portion of the building's real estate tax. (Id. at Ex. E, Intro. Port. ¶ 3.02, Main Lease ¶ 3.03 & Art. 4). Sidley had the option of estimating SSSR's share of the annual real estate tax and charging SSSR one-twelfth of that amount each month, subject to adjustment once Sidley was notified of the actual real estate tax obligation. (Id. at Ex. E, Main Lease ¶ 4.03). Sidley collected estimated real estate tax payments from SSSR of $2,861.94 per month from October 10, 2007 through July 9, 2008, and $3,746.04 per month from July 10, 2008 through August 9, 2008. (Levine Jan. 23, 2009 Aff. at Ex. 1). On Sidley's final bill to SSSR dated July 29, 2008, Sidley charged SSSR a real estate tax correction of $5,304.60. (Id.). SSSR was also obligated to reimburse Sidley for certain costs of operating the building, which

for the period from October 10, 2007 through August 9, 2008 required SSSR to pay a management fee of $551.41 per month. (Levine July 31, 2008 Aff. at Ex. E, Main Lease Art. 13; Levine Jan. 23, 2009 Aff. at Ex. 1). The lease also provided that SSSR was responsible for all utility service to the portion of the building that it leased, including water service. (Levine July 31, 2008 Aff. at Ex. E, Main Lease Art. 5). However, to the extent that Sidley entered into service contracts to provide utilities, including water, to the building, SSSR was responsible for its proportionate share of those charges, which was fixed at 24.51%. (Id. at Ex. E, Intro. Port. ¶ 3.01, Main Lease Art. 13). SSSR was also required to reimburse Sidley for "damages and other losses" that it incurred in the operation of the building, so that the base rent was "absolutely net" to Sidley. (Id. at Ex. E, Main Lease ¶ 3.03, Art. 13).

Sidley also contracted for the reimbursement of certain attorneys fees that it might incur in connection with the lease and guaranty. SSSR's lease required it to reimburse Sidley for "all fees, charges and disbursements" of attorneys hired in the event that SSSR defaulted on its obligations under the lease, including its obligations to pay base and additional rent. SSSR was required to pay these attorneys' fees regardless of whether Sidley

6

ultimately commenced an action or summary proceeding against it. (Id. at Ex. E, Main Lease ¶ 22.03). SSSR's reimbursement of attorney's fees, charges and disbursements was to constitute "additional rent." (Id.). Similarly, Ruderman's guaranty of the lease states that "[i]n the event that [Sidley] should institute any suit against the undersigned for violation of or to enforce any of the covenants or conditions of this Guaranty or to enforce any right of [Sidley] hereunder, the undersigned shall reimburse [Sidley] for its attorneys' fees, disbursements and court costs." (Id. at Ex. F, ¶ J).

Other relevant portions of SSSR's lease address SSSR's ability to sublet or assign its interest in the property. The lease states that SSSR's interest shall not be "assigned, mortgaged, pledged, encumbered or otherwise transferred," apart from a process for SSSR to obtain Sidley's consent to a sublet of the premises. (Id. at Ex. E, Main Lease ¶¶ 11.01, 11.05). The lease also provided that SSSR was to provide a security deposit of $26,000.00 cash and $100,000.00 in cash or by a sight, demand, unconditional one year letter of credit from a commercial bank. (Id. at Ex. E, Main Lease ¶ 29.01). The letter of credit need not be extended beyond the third year of the lease. (Id.). The amount of the required cash deposit, however, was to increase proportionately with each year's

7

increase in base rent, such that it equaled two monthly payments of the current base rent. (Id.).

On May 1, 1999, when entering the leasehold arrangement, SSSR also obtained Sidley's approval to sublet a portion of the leased premises to Statewide Management at Fordham Road, Inc. ("Statewide Management") and another portion to the Laughing Party Co., LLC ("Laughing Party"). (Id. at ¶ 7 & Ex. H; Declaration of Rony Shapiro in Opp'n to Mot. for Summ. J., sworn to Sept. 4, 2008, ¶¶ 3-5). Defendant Ruderman wholly owned Statewide Management. (Levine July 31, 2008 Aff. at ¶ 7). Ruderman signed the sublet agreement, which provided that SSSR remained liable for the payment of rent under the lease, as the guarantor of the original lease. (Id. at Ex. H).

On December 31, 2001 SSSR agreed to sublease the portions of the property that had been subleased to both Statewide Management and Laughing Party to Goda Restaurants Corp. ("Goda"). (Shapiro Sept. 4, 2008 Decl. at ¶ 6). In 2002, Sidley denied SSSR's request for it to consent to an assignment of its lease with SSSR to Goda. (Levine July 31, 2008 Aff. at ¶ 8). Goda nevertheless proceeded to occupy the premises in 2002, and SSSR contends that Sidley was aware of the occupation. (Shapiro Sept. 4, 2008 Decl. at ¶¶ 7, 9).

Sidley, however, denies that it was aware of Goda's claim to a right of occupancy until 2008. (Levine July 31, 2008 Aff. at ¶ 9; Affidavit of Heath B. Kushnick, Esq. in Supp. of Mot. for Summ. J., sworn July 31, 2008, ¶ 4). Under the terms of Goda's sublease with SSSR, Goda paid specified base and additional rent to SSSR. (Shapiro Sept. 4, 2008 Decl. at ¶ 8). Sidley submitted rent statements to SSSR each month throughout the term of the lease, to the attention of defendant Ruderman, at a facsimile number designated by Ruderman. (Levine July 31, 2008 Aff. at ¶ 6).

In 2006, SSSR "became concerned that Goda potentially was a problematic subtenant and took steps to locate a new tenant to take over the space." (Shapiro Sept. 4, 2008 Decl. at ¶ 10). SSSR presented three potential sublessors to Sidley, but Sidley refused to consent to a sublease to any of them. (Id.). In October 2007 Goda stopped paying rent to SSSR, and SSSR correspondingly stopped paying rent to Sidley. (Id. at 11; Levine July 31, 2008 Aff. at ¶ 10).

On December 4, 2007 Sidley served a notice to cure on SSSR, demanding that by December 17, 2007 SSSR pay $64,251.29, reflecting rent and other expenses owed from October 1, 2007 through the date of the notice, or risk termination of its lease. (Levine July 31,

2008 Aff. at ¶ 10 & Ex. J). SSSR did not dispute the amount owed, nor did it make a payment to Sidley. (Id. at ¶¶ 10-11). Consequently, Sidley served SSSR with notice of its intention to terminate the lease as of December 28, 2007. (Id. at ¶ 11 & Ex. K).

SSSR did not vacate the premises by December 28, 2007, causing Sidley to begin a holdover proceeding in Bronx Civil Court. The proceeding was initially begun in December 2007, apparently only against SSSR. (See Affidavit of Lauren J. Wachtler, Esq. in Opp. to Pl.'s Req. for Damages, executed Feb. 20, 2009, ¶ 8, Point III ¶ 18).[4] Upon serving its petition, Sidley received an answer and cross-claim from Goda, alleging that Sidley had failed to name a necessary party. (Affidavit of Heath B. Kushnick, Esq. in Supp. of Pl.'s Req. for Damages, executed Jan. 22, 2009, ¶ 7. See also Affidavit of Robert Finkelstein, Esq. in Supp. of Pl.'s Req. for Damages, executed Mar. 20, 2009, ¶ 6). Having thus been alerted to Goda's occupation of the premises, "[o]ut of an abundance of caution" Sidley "discontinued the initial proceeding and prepared and served a new notice of petition and petition to include Goda as an additional respondent." (Kushnick Jan. 22, 2009 Aff. at ¶ 7).

---

[4] We note that paragraph 18 of Point III of Ms. Wachtler's Affirmation incorrectly lists the date that this proceeding was commenced as December 2008.

Sidley served a notice of petition dated February 12, 2008 on named respondents that included Goda Restaurants, Corp. a/k/a Goda Restaurant Corp. d/b/a Pizza Hut. (Kushnick July 31, 2008 Aff. at ¶ 3 & Exs. L & M). Goda answered and defended the holdover proceeding. (Id. at ¶ 4).

Sidley moved for summary judgment in the holdover proceeding on March 3, 2008, at which time it sought rent and related expenses of $127,867.83. (Id.). Goda filed a cross-motion seeking summary judgment dismissing the proceeding. (Kushnick Reply Affidavit in Supp. of Pl.'s Req. for Damages, executed Mar. 20, 2009, ¶ 52). Plaintiff's motion for summary judgment was denied because of a discrepancy between the zip code for the property listed in the predicate notices and the zip code contained in the caption of the summary judgment motion. (Id. at ¶ 56 & Ex. R). Goda's motion for summary judgment was also denied because the motion did not convince the court that dismissal was warranted. (Id., Ex. R).

Instead of appealing the dismissal of its summary judgment motion, Sidley proceeded to trial. (Id. at ¶ 56). The trial was conducted on May 14, 2008, and on that date the court awarded a judgment in favor of Sidley. (Kushnick July 31, 2008 Aff. at ¶ 5 & Ex. P). A warrant of eviction was subsequently issued, and the New

11

York City Marshal evicted all occupants from the premises on June 24, 2008. (Id. at ¶ 5).

Plaintiff filed this action in March 2008 to recover rent and related expenses and attorneys' fees from the defendant pursuant to his guaranty of SSSR's obligations under its lease with Sidley. (Id. at ¶ 6). Plaintiff asserted three causes of action -- defendant's breach of his guaranty, his failure to dispute a stated account, and his failure to reimburse plaintiff's costs, expenses and disbursements, including attorney's fees, under the terms of the guaranty. (Pl.'s Compl., dkt. entry # 1). Plaintiff subsequently moved for summary judgment on its claims. (Pl.'s Mot. for Summ. J., dkt. entry # 9). At a hearing held on September 26, 2008, the District Court granted plaintiff's motion on all of its claims. (H. Tr. 12-14). The Court determined that defendant's guarantee was "valid and enforceable" and that it "clearly provides for attorney's fees to the plaintiff." (Id. at 12). The court also granted summary judgment on plaintiff's account stated claim "as that account is stated for October 2007." (Id.). The court assigned this matter to me to determine the amount of attorney's fees due, and also to adjudicate plaintiff's claim for rent and related expenses due after October 2007, under either plaintiff's account-stated or breach-of-contract claims. (Id. at 12, 14).

12

Evidentiary Record


At a pre-inquest conference with counsel on November 16, 2008 we authorized plaintiff to proceed by way of affidavits, and offered defendant the opportunity to serve and file responding papers. Both sides submitted affidavits in support of their respective positions, and we rely on those submissions as well as the factual allegations in the complaint and other documents filed previously in the case, in lieu of an evidentiary hearing, to determine the amount of damages. See, e.g., Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53-54 (2d Cir. 1993); Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).


Plaintiff submitted an affidavit from the managing agent for the property at issue, Mr. Richard Levine, in support of its claim for rent and related expenses. This affidavit attaches monthly rent bills dated from October 1, 2007 through July 29, 2008, covering rent and related expenses due through the expiration of the lease on August 9, 2008. (Levine Jan. 23, 2009 Aff. at ¶ 4 & Ex. 2). In sum, the affidavit relates plaintiff's request for damages of $129,229.29 in base rent, $5,674.19 in management fees, $25,725.81 in added or additional rent, $30,591.06 in monthly real estate tax

13

payments and an additional $5,304.60 corrected real estate tax payment, $30,740.64 in late payment fees, and $2,924.42 in expenses, including two Environmental Control Board fines and a water bill. The affidavit also included a request for $5,633.33 in legal fees, although plaintiff's request for attorney's fees was generally addressed in another affidavit discussed below. (Id. at Ex. 1). In sum, plaintiff requested a total of $235,823.35 in damages for rent and related expenses. (Id.).

Plaintiff also submitted an affidavit from one of its attorneys, Heath B. Kushnick, Esq., in support of its request for attorneys' fees. The affidavit attaches invoices for legal services performed by the law firm Greenberg Traurig, LLP for Sidley from November 8, 2007 through October 14, 2008. (Kushnick Jan. 22, 2009 Aff., Ex. E). These include fees for services performed in connection with the Bronx Civil Court matter (see, e.g., id. at PL 0556), as well as services performed in connection with the current action. (See, e.g., id. at PL 0573). The affidavit also attaches Greenberg Traurig's time and disbursement records from November 2008 through January 2009 for expenses incurred but not yet billed to Sidley at the time the affidavit was submitted. (Id. at ¶ 8 & Ex. G). The total amount of attorneys' fees and costs incurred was $186,422.52. (Id. at ¶ 11).

14

Defendant submitted an affidavit from Mr. Rony Shapiro, a manager of SSSR, disputing the amount of rent and related expenses sought by plaintiff. (Affidavit of Rony Shapiro in Opp'n to Pl.'s Req. for Damages, executed Feb. 17, 2009). He also submitted two affidavits in opposition to plaintiff's request for attorney's fees and disbursements. An affidavit from Craig Spencer Charie, Esq., targeted plaintiff's request for fees charged in connection with the Bronx Civil Court proceeding. (Affidavit of Craig Spencer Charie, Esq. in Opp'n to Pl.'s Req. for Damages, executed Feb. 19, 2009).[5] An affidavit from Lauren J. Wachtler, Esq., an attorney from the firm representing defendant, challenged plaintiff's claims for attorney's fees and disbursements more broadly. (Affidavit of Lauren J. Wachtler, Esq. in Opp'n to Pl.'s Req. For Damages, executed Feb. 20, 2009). The specifics of the objections raised in these affidavits will be discussed below.

---

[5] Plaintiff argues that Mr. Charie's affidavit should be disregarded due to an alleged conflict of interest and purported misstatements in his affidavit. (Pl.'s Reply Mem. of Law in Supp. of Pl.'s Submission on Damages & Att'ys Fees, 3-5). However, we rely on Mr. Charie's affidavit primarily to set forth defendant's objections to plaintiff's request for damages and fees in connection with the Bronx Civil Court holdover proceeding. We note that plaintiff produced the affidavit of Robert Finkelstein, Esq. with its response papers to counter the opinions of Mr. Charie, and we rely on both affidavits to the extent that they are persuasive and relevant to our analysis.

In reply, plaintiff submitted additional affidavits that altered the amounts requested in certain respects and a memorandum of law in support of its request, primarily addressed to its request for attorneys' fees and charges. Mr. Richard Levine's reply affidavit reported that Sidley had received two additional Environmental Control Board violation notices on March 18, 2009 for $1,500 each and consequently increased Sidley's request for rent and related expenses by $3,000. (Reply Affidavit of Richard Levine in Supp. of Pl.'s Req. for Damages, executed Mar. 20, 2009, ¶ 11 & Ex. 9). This brings Sidley's claim for rent and related expenses to $238,823.35. (Id. at ¶ 15).

A reply affidavit by Heath B. Kushnick, Esq. also altered Sidley's claim for attorneys' fees and costs in certain respects. First, it increased the requested amount of fees and costs by $15,000 to account for expenses incurred in the preparation of Sidley's reply papers, which reportedly reflects an approximately $10,000 discount from the actual expenses incurred. (Kushnick Reply Aff. at ¶ 79 & Ex. T). The affidavit also reduced the amount of fees and costs previously requested.  Without admitting any error, in an attempt to "avoid even an appearance that the fees are unreasonable" Sidley reduced its request for reimbursement of attorney's fees in connection with commencing the second Bronx

16

Civil Court action by $5,000.00. (Id. at ¶ 48). Similarly, Sidley reduced its request for fees and costs in connection with its summary-judgment motion filed in the Bronx court action by $15,000.00. (Id. at ¶ 54). Finally, Sidley consented to reduce its overall fee request by ten percent. (Id. at ¶ 80). Therefore, Sidley's final request for attorneys' fees and costs stands at $163,280.27. (Id.).

Analysis

A. Plaintiff's entitlement to damages after October 2007

The District Court granted plaintiff summary judgment on its breach-of-guaranty claim, in addition to its claim for an account stated and attorneys' fees. (H. Tr. 14. See also Order dated Sept. 26, 2008, dkt. # 20). Plaintiff's entitlement to damages on its guaranty claim is governed by "ordinary principles of contract construction." Continental Airlines, Inc. v. Lelakis, 943 F. Supp. 300, 304 (S.D.N.Y. 1996). These principles require us to enforce the clear terms of defendant's guaranty. Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 580 (2d Cir. 2006) ("Under New York law, ... [c]ourt[s] must enforce contract provisions clearly expressing parties' intent.");

17

<u>Postlewaite v. McGraw-Hill, Inc.</u>, 411 F.3d 63, 69 (2d Cir. 2005) ("The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent . . . The best evidence of what parties to a written agreement intend is what they say in their writing.") (internal quotation marks and citation omitted)); <u>Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Trust Co. of Chicago</u>, 93 F.3d 1064, 1073 (2d Cir. 1996) (under New York law guarantees are "strictly construed according to their terms" and limited to "the plain and explicit language of the contract") (internal quotations and citations omitted)).

Under the clear terms of Ruderman's guaranty, he is obligated to pay all base and additional rent and "other sum or sums" that SSSR owed Sidley under the terms of its lease. (Levine July 31, 2008 Aff. at Ex. F, ¶ A). His obligation only terminates upon the occurrence of five stated conditions, one of which is the full payment of "all Base Rent and additional rent" up to the date that SSSR and any other occupants surrendered the premises pursuant to notice provided to Sidley. (<u>Id.</u> at Ex. F, ¶ L).[6] Ruderman's

---

[6] We note the typographical error in paragraph A of the guaranty which indicates that Ruderman's liability is limited by the terms of a non-existent paragraph M in the guaranty. However, the District Court determined that this error did not void the guaranty in the course of granting plaintiff's motion for summary judgment, and noted that the reference should have been to

obligation under the guaranty has therefore not been extinguished, as neither party disputes that base and additional rent owed to Sidley under the lease have yet to be paid. Therefore, we address the parties' submissions to determine the amount due to Sidley under the terms of the lease.

### B. Calculation of damages

Defendant has raised several objections to plaintiff's request for rent and related expenses. We address these objections in turn.

First, Ruderman objects to plaintiff's request for $129,229.29 in base rent and $5,674.19 in management fees owed for the period from October 1, 2007 through August 9, 2008 on the ground that the occupant of the leased premises was evicted on June 15, 2008[7] and that under the terms of Ruderman's so-called "good guy" guaranty he was relieved of liability once the tenant vacated the leased premises. (Shapiro Feb. 17, 2009 Aff. at ¶ 9). However, as we noted above, the terms of Ruderman's guaranty state that his liability

---

paragraph L of the guaranty instead of paragraph M. (H. Tr. at 10).

[7] We acknowledge, but need not address, the parties' disagreement about the date that the occupants were evicted from the leased premises. (See Levine Reply Aff. at ¶ 3).

terminates upon the occurrence of all of five stated conditions, one of which is the "full payment of all Base Rent and additional rent" up to the date that SSSR surrendered and vacated the premises after having given Sidley notice of its intent to do so. (Levine July 31, 2008 Aff. at Ex. F, ¶ L). We are required to enforce the clear terms of this contract. Beth Isr. Med. Ctr., 448 F.3d at 580; Postlewaite, 411 F.3d at 69. Putting aside the question of whether the other conditions to terminate Ruderman's liability were met, as he does not claim that he or SSSR paid the base and additional rent that were due as of June 15, 2008, his liability did not terminate on that date under the express terms of his guaranty. Therefore, we conclude that Ruderman's liability extends until the expiration of the lease term on August 9, 2008. As defendant has raised no other objection to plaintiff's request for base rent[8] and management fees we conclude that plaintiff is entitled to $129,229.29 in base rent and $5,674.19 in management fees.

Defendant's next objection is to plaintiff's request for

---

[8] We note that Mr. Shapiro's affidavit also suggests that Ruderman should not be liable for base rent payments during the pendency of the Bronx Civil Court action, due to what it characterizes as "Sidley's costly errors" in that proceeding. (Shapiro Feb. 17, 2009 Aff. at ¶ 8). However, the subsequent request in the affidavit to alter the amount of base rent does not reflect this contention, and so we do not consider it. (Id. at ¶ 9).

$25,725.81 in added or additional rent. Ruderman argues that since Sidley claims that it did not consent to Goda's "sublease" of the property, Sidley was improperly charging SSSR for this added or additional rent. (Shapiro Feb. 17, 2009 Aff. at ¶ 11). Plaintiff contends that the added or additional rent was properly charged in light of SSSR's approved sublease to Statewide Management and the Laughing Party, which Sidley apparently believed was in effect until it commenced a holdover proceeding, sometime in December 2007. (Levine Reply Aff. at ¶¶ 4, 9, Wachtler Aff. at ¶¶ 8, 18).

Under the terms of its lease with SSSR, Sidley was entitled to collect added or additional rent of $2,500.00 per month while the leased property was "subleased to or used by others." (Levine July 31, 2008 Aff. at Ex. E, Intro. Port. ¶ 4.01). The parties agree that from the inception of SSSR's lease in May 1999 through early 2002, the leased premises were subject to a sublease with Sidley's consent. (See Shapiro Sept. 4, 2008 Decl. at ¶¶ 3-5, 7; Levine July 31, 2008 Aff. at ¶ 7). Although the parties dispute Sidley's knowledge of the subsequent sublease from SSSR to Goda, an affidavit submitted on defendant's behalf admits that from 2002 until the end of SSSR's lease term the property was in fact subject to a sublease, under which Goda paid SSSR "specified base and additional rent". (Shapiro Sept. 4, 2008 Decl. at ¶ 8). We need not

21

determine whether Sidley was aware of or consented to Goda's sublease, since Sidley's consent to a sublease was not a stated condition for the imposition of added or additional rent. As defendant does not dispute that the premises was subject to a sublease through the end of SSSR's lease term, we reject defendant's objection to the charge of added or additional rent through the end of the lease period.[9] Accordingly, plaintiff is entitled to the requested $25,725.81[10] in added or additional rent.

Defendant next raises three objections to plaintiff's request for $30,740.64 in late payment fees. First, he argues that this fee is "far in excess of what Sidley would be entitled to pursuant to the lease provision on which it relies" to substantiate its request. (Shapiro Feb. 17, 2009 Aff. at ¶ 13). He also argues that

---

[9] Indeed, defendant's argument on this point would have the perverse result that defendant would be rewarded if SSSR violated its lease obligations by subleasing without notice to, or approval by, the plaintiff.

[10] We note that Mr. Shapiro's affidavit lists the amount of additional rent requested as $23,225.81, (Shapiro Feb. 17, 2009 Aff. at ¶ 11) whereas plaintiff's request was actually for $25,725.81. (See Levine Jan. 23. 2009 Aff. at Ex. 1). The discrepancy in these figures may stem from defendant's view that his liability was extinguished as of June 15, 2008 -- the date he alleges Goda was evicted from the premises. However, we considered and rejected that contention above in connection with the base rent and management fees owed to Sidley, and therefore see no basis for awarding plaintiff less than its requested amount of additional rent.

Sidley is not entitled to any late payment charge, as the late payment fee was intended to compensate it for "additional expenses incurred in processing . . . late payments." Since no late payments were ever made to Sidley by SSSR or Ruderman, it incurred no processing expense. (Id.). Finally, he argues that the $723.03 late payment charge on SSSR's October 1, 2007 bill is not properly identified or substantiated and potentially duplicative of another late payment charge included on that bill. (Id. at ¶ 14). Plaintiff characterizes the contention that Ruderman should not be charged late fees since no late payments were actually made as "circular and baseless" and notes that "Sidley has spent enormous amounts of time and expense, above and beyond the attorneys' fees sought herein" as a result of SSSR's default. (Levine Reply Aff. at ¶ 6). Plaintiff also argues that the District Court already awarded it the late fee billed on SSSR's October 1 rent statement when it granted plaintiff summary judgment at the September 26, 2008 hearing. (Id. at ¶ 7).

We first address the threshold question of whether Sidley is entitled to late payment fees despite the fact that SSSR and Ruderman have yet to pay Sidley any past-due rent and related expenses. The lease between Sidley and SSSR states that if SSSR failed to pay any installment of base or additional rent within

five days after it became due, it would owe an additional late fee
of $0.03 for each dollar unpaid. (Levine July 31, 2008 Aff., Ex. E
at Main Lease ¶ 3.01(C)). The lease also stated that the charge was
"intended to compensate [Sidley] for additional expenses . . . in
processing such late payments", apparently to underscore SSSR's
agreement that the fee reflects "costs and administrative expenses"
and that "the late charge assessed pursuant to this Lease is not
interest, and the late charge assessed does not constitute a
lender/borrower relationship" between Sidley and SSSR. (Id.).

    The late-fee provision in the contract operates as a
liquidated-damages clause, which is enforceable so long as "'(1)
actual damages may be difficult to determine and (2) the sum
stipulated is not plainly disproportionate to the possible loss.'"
U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 70
(2d Cir. 2004) (quoting United Merchans. & Mfrs. v. Equitable Life
Assurance Soc'y (In re United Merchants & Mfrs., Inc.), 674 F.2d
134, 142 (2d Cir. 1982)). Defendant's argument suggests that in the
event that plaintiff suffered no actual damages, the liquidated-
damages provision should not be enforced. However, even if we
agreed with defendant that plaintiff necessarily suffered no actual
damages since no late payments have been processed, defendant's
argument is contrary to New York law, under which "the actual

24

damages suffered by the party for whose benefit the [liquidated-damages] clause is inserted in the contract have little relevance to the validity of a liquidated damages clause." Walter E. Heller & Co., Inc. v. Am. Flyers Airline Corp., 459 F.2d 896, 898 (2d Cir. 1972). Instead, the propriety of the liquidated-damages clause is to be evaluated as of the time at which the contract was made. Bradford v. New York Times Co., 501 F.2d 51, 57 (2d Cir. 1974). A liquidated-damages clause in a commercial lease imposing a one-time payment of three percent of past-due rent and related expenses is not unreasonable. See K.I.D.E. Assocs., Ltd. v. Garage Estates Co., 280 A.D.2d 251, 254, 720 N.Y.S.2d 114, 117 (1st Dep't 2001) (late charge of five percent per month not unconscionable in "commercial lease negotiated by sophisticated business people"). Therefore, the liquidated-damages clause should be enforced, irrespective of Sidley's actual costs. Moreover, it is not clear that Sidley suffered no damage from SSSR's failure to pay its rent and related expenses on time, even if such damage was in the nature of "administrative expenses" -- such as keeping track of the accumulated past due sums -- instead of costs involved in "processing" late payments when tendered. Thus, we reject defendant's argument that Sidley is barred from recovering a late fee payment by virtue of the fact that neither he nor SSSR have paid Sidley any of the past-due rent or related expenses.

We do, however, agree with the defendant that Sidley's calculation of the late fee due is incongruent with the lease's late-fee formula. As we have noted, SSSR's lease with Sidley provides for the imposition of a late fee of $0.03 per each $1.00 of base rent and additional or added rent that remains unpaid more than five days after becoming due. (Levine July 31, 2008 Aff., Ex. E at Main Lease ¶ 3.01(C)). The fee can only be levied "once insofar as any specific installment or payment is concerned." (Id.). However, plaintiff's calculations show that the late fee requested by Sidley increased on each month's bill, while the amount of base rent and added or additional rent stayed generally constant. (See Levine Jan. 23, 2009 Aff. at Ex. 1). This suggests that the late fee was being applied cumulatively, as opposed to only once on each past-due rent installment. Applying the three-percent rate stated in the lease to the base and added or additional rent owed from October 2007 through June 2008 -- $12,432.94 in base rent and $2,500.00 in added or additional rent -- yields a monthly late payment fee of $447.99. For July 2008, when the base rent increased to $13,432.94, three percent of the base and additional or added rent would be $477.99, and the pro-rated portion of that figure for August 2009 would be $138.77. We therefore conclude that plaintiff is entitled to $4,648.67 in late fee charges for past-due base and added or additional rent from

October 2007 through the expiration of the lease in August 2008.

Finally, we address the issue of the $723.03 late-payment fee that appears on SSSR's bill dated October 1, 2007. On that rent bill, the charge is listed as "PAST DUE," suggesting that the late fee was imposed for a late payment made prior to October 1, 2007. (Levine Jan. 23, 2009 Aff. at Ex. 2, p. 1). Although our analysis with regard to the imposition of late fees on the subsequent rent bills casts doubt on the veracity of this figure, we agree with plaintiff that this request should be granted under the terms of the District Court's summary judgment ruling.

In granting plaintiff's summary-judgment motion, the District Court determined that under "the account stated doctrine . . . there was an account stated that was not objected to . . . as that account is stated for October 2007." (H. Tr. at 12). Under New York law, an account stated is "an agreement between the parties to an account based upon prior transactions between them with respect to the correctness of the separate items composing the account and the balance due, if any, in favor of one party or the other." Chisholm-Ryder Co., Inc. v. Sommer & Sommer, 70 A.D.2d 429, 432, 421 N.Y.S.2d 455, 457 (4th Dep't 1979). Agreement to the account stated may be implied "if a party receiving a statement of account

27

keeps it without objecting to it within a reasonable time." Id. In opposing plaintiff's summary-judgment motion, defendant pointed out that in cases cited by plaintiff there was at least a five-month gap between a party receiving a statement of an amount due and being subject to suit under the account-stated doctrine. (Def.'s Mem. at 8 (citing, inter alia, Navimex S.A. de C.V. v. S/S Northern Ice, 617 F. Supp. 103, 106 (S.D.N.Y. 1984) (failure to object for five months converted bill into account stated))). The District Court apparently adopted this five-month period as a reasonable time for objections to be raised, and therefore calculated that plaintiff's account was stated as of five months prior to the March 2008 commencement of this action, or October 2007. (H. Tr. at 12-13). Therefore, plaintiff is entitled to the $723.03 that appears on the bill dated October 1, 2007 by virtue of the District Court's ruling.

Defendant's last objection to plaintiff's request for rent and related expenses targets a categories of charges listed in the "other" column of plaintiff's arrears chart. (See Levine Jan. 23, 2009 Aff. at Ex. 1). The first such charge is for $5,633.33 for "legal fees", which is listed as being "PAST DUE" on SSSR's October 1, 2007 bill. (Id. at Exs. 1 & 2). An affidavit submitted on defendant's behalf suggests that plaintiff's request for this

charge should not be granted because the legal fees are "not identified in any way." (Shapiro Feb. 17, 2009 Aff. at ¶ 14). However, as noted above, this charge was included on SSSR's October 1, 2007 bill and is therefore properly awarded under the terms of the District Court's grant of summary judgment to the plaintiff on its account-stated claim.

The next charge listed in the "other" column of plaintiff's arrears chart is a $924.42 payment for a "water bill" that was included on SSSR's February 1, 2008 bill and listed as "Past Due" on its March 1, 2008 bill. (Levine Jul 31, 2008 Aff. at Ex. 1 & Ex. 2 at Pl 0005, Pl 0006). In support of its request for damages, plaintiff submitted a copy of a $4,742.53 water bill that was due on January 28, 2008 and stated that the $924.42 reflects SSSR's portion of the bill. (Levine Jan. 23, 2009 Aff. at ¶ 5 & Ex. 5).[11] An affidavit submitted on defendant's behalf acknowledges the water bill charge, but does not dispute it. (See Shapiro Feb. 17, 2009 Aff. at ¶¶ 15-17).

---

[11] Mr. Levine's affidavit correctly notes that SSSR's portion of the water bill under the terms of the lease which set SSSR's proportionate share at 24.51% was actually $1,162.39, but stated that SSSR was only billed for $924.42. (Id. at ¶ 5 n.2). Since plaintiff's request only incorporates the lesser figure that was actually billed, we interpret the concession as a voluntary reduction in the damages requested.

We noted above that SSSR's lease with Sidley obligated it to reimburse Sidley for its proportionate share of the costs of operation of the building, including service contracts for water. (Levine July 31, 2008 Aff., Ex. E at Main Lease ¶ 13.01(A)).[12] Therefore, we recommend that Sidley be awarded its $924.42 water bill charge.

Sidley also lists two Environmental Control Board violations of $1,000.00 each in the "other" column of its arrears chart, and seeks reimbursement for two additional $1,500.00 violations received after the submission of its original request for damages. (Levine Jan. 23, 2009 Aff. at Ex. 1 & Levine Reply Aff. at ¶ 11).

The first charge was included on SSSR's May 1, 2008 bill and stems from a fine imposed by the New York City Fire Department under violation number 109-644-33M for which Sidley received a notice of collection and impending judgment dated May 2, 2008.

---

[12] Of course, SSSR's lease also required that it provide and pay for water services and stated that Sidley was not responsible for furnishing utilities to the building. (Levine July 31, 2008 Aff., Ex. E at Main Lease ¶ 5.01). Neither party explains the circumstances that resulted in Sidley providing water service to the leased premises, nor do they clarify why SSSR was charged a proportionate share of the water bill only once from October 2007 through the end of the lease period. However, given that defendant did not dispute the imposition of the water bill charge, we presume that it was proper.

(Levine Jan. 23, 2009 Aff. at Exs. 1 & 3).[13] An affidavit submitted on defendant's behalf objects to this charge, arguing that there is no proof that Sidley paid the violation. It also states that the violation was issued to "Goda Restaurant Corp." instead of "SSSR pursuant to the Sidley/SSSR Lease, and thus this cannot be a liability under the Ruderman Guaranty." (Shapiro Feb. 17, 2009 Aff. at ¶ 15). Plaintiff responds by confirming that it paid the violation, although it contends that it was not required to do so prior to seeking reimbursement from SSSR or Ruderman under the terms of the lease. (Levine Reply Aff. at ¶ 8). It also notes that SSSR's lease states that any sublet is "expressly subject to all of the obligations of [SSSR] under this Lease," one of which is the obligation to pay for any violations incurred. (Id., citing Levine July 31, 2008 Aff., Ex. E at Main Lease ¶ 11.05(C)(iii), Art. 13). It therefore reasons that SSSR "is also liable for any violations incurred by its subtenant, Goda." (Id.).

Under the terms of its lease, SSSR's obligation to pay Sidley for the costs of operating the building, including "all costs and expenses incurred by [Sidley] in connection with the operation,

_____

[13] Neither party addressed the fact that although Sidley identifies the leased premises as part of its building located at 110-112 East Fordham Road, the address listed on the Environmental Control Board collection notice was 100 East Fordham Road.

maintenance, and repair of any and all parts" of the building, was not extinguished by SSSR's sublease of the premises. (See Levine July 31, 2008 Aff., Ex. E at ¶ 13.01). Moreover, SSSR's lease obligated it to notify Sidley of any written notice that it received regarding the violation of legal requirements that applied to the leased premises. The lease further stated that "at [SSSR]'s sole cost and expense" SSSR and its "contractors, employees and agents, subtenants and licensees" were required to "faithfully observe and comply with all such legal requirements." (Levine July 31, 2008 Aff., Ex. E at Main Lease ¶ 9.04. See also Levine Reply Aff. ¶ 10).

Although plaintiff's lack of specificity regarding the nature of the underlying citation by the Fire Department makes it difficult to determine whether the violation constitutes a cost of operation as defined in the lease, it is clear that payment of an Environmental Control Board violation falls under SSSR's obligation to observe and comply with legal requirements pertaining to the leased premises. Therefore, we recommend that Sidley's request for this charge be granted.

The second Environmental Control Board charge listed in the "other" column of plaintiff's arrears chart appeared on plaintiff's

June 1, 2008 bill and apparently relates to a violation numbered 109-370-90x for the failure to provide a required affidavit or plans for an air conditioning unit on the building's roof. (Levine Reply Aff. ¶ 9 & Levine Jan. 23, 2009 Aff. Exs. 1, 2 at P10184 & 4). An affidavit submitted here on defendant's behalf objects to the charge on the ground that the violation "identified Sidley Holding Corporation as the Respondent and does not appear to relate to the [leased] premises." (Shapiro Feb. 17, 2009 Aff. at ¶ 16). It also contends that the notice was mailed on a date when neither SSSR nor Goda were occupying the premises and that the subject of the violation -- the failure to provide a required floor plan for an air conditioning unit on the roof -- was not SSSR's responsibility (Id.). Plaintiff responds by noting that the respondent listed in the default order was "Pizza Hut"[14] and that defendant has acknowledged that its subtenant Goda operated a Pizza Hut on the leased premises. (Levine Reply Aff. at ¶ 9). Plaintiff

---

[14] The parties' dispute about the identity of the respondent likely stems from the fact that Exhibit 4 to Mr. Levine's January 23, 2009 affidavit also includes a default decision and order for a separate Environmental Control Board violation on July 24, 2008 numbered 110-066-61L, for which Sidley Holding Corporation was the respondent, but which is not part of plaintiff's request for damages. Likewise the Shapiro affidavit's reference to the violation not relating to the building at issue may be a product of the fact that the default decision and order for the unrelated violation lists the address of the premises as 100 East 188th Street. Although this violation is not part of plaintiff's request, we take judicial notice of the fact that East 188th Street in the Bronx can also refer to East Fordham Road.

also notes that the date of the violation -- June 14, 2007 -- preceded its eviction of SSSR and Goda from the leased premises, making the date on which the notice was mailed or the hearing on the violation held irrelevant. (Id.). Finally, plaintiff argues that SSSR was liable for the failure to submit the required floor plan for the roof air-conditioner under its obligation to make all repairs to the leased property and to keep the fixtures located in or on the building, including the air-conditioning system, in "first-class order and repair" and compliance with legal requirements, and also under the requirement that SSSR and its subtenants "faithfully observe and comply" with all legal requirements at SSSR's "sole cost and expense." (Id. at ¶¶ 9-10).

Plaintiff has not provided sufficient information about the violation pertaining to the floor plan for the building's roof air conditioner to determine whether this violation relates to SSSR's obligation to repair the building's fixtures. However, it is plainly covered by SSSR's duty to inform Sidley of written notices of violations of legal requirements and to "faithfully observe and comply with all such Legal Requirements." (Levine July 31, 2008 Aff., Ex. E at ¶ 9.04). Therefore, we suggest that SSSR be required to reimburse Sidley for this cost. As for the amount, we note that the default order submitted by plaintiff states that the maximum

34

penalty for the violation is $1,000.00. However, plaintiff submitted another Environmental Control Board notice, dated February 27, 2009, for the same violation number –– 109-370-90x –– listing the imposed fine as $1,500.00. (Levine Reply Aff. at ¶ 11 & Ex. 9). We therefore determine that the fine for this violation was $1,500.00, and recommend that plaintiff's request for that amount be granted.

Plaintiff submitted another Environmental Control Board notice, with a mailing date of February 27, 2009, with its reply papers, seeking reimbursement for a $1,500.00 Fire Department violation numbered 109-442-61R listing "Pizza Hut" at 100 East Fordham Road in the Bronx as the respondent. (Levine Reply Aff. Ex. 9). Plaintiff claims that it received the notice of the violation on March 18, 2009. (Id. at ¶ 11).[15] Based on our preceding analysis regarding SSSR's obligation to comply with legal requirements, we

---

[15] We note that ordinarily damages sought for the first time in a reply submission would not be awarded. However, in this case plaintiff alleges that it first received notice of this violation after submitting its initial request for damages. Moreover, we have already considered and rejected defendant's objections to reimbursing plaintiff for similar Environmental Control Board violation notices, and we presume those objections would mirror defendant's argument against reimbursing plaintiff for this violation. To the extent that defendant wishes to raise an objection to the reimbursement of this violation in particular, he is free to do so in an objection to this Report and Recommendation.

35

recommend that this request be granted.[16] In sum, we conclude that plaintiff's request for reimbursement for the satisfaction of Environmental Control Board notices be granted, to the extent of $4,000.[17]

Plaintiff's final request in the "other" column of its arrears chart is a $5,304.60 real estate tax correction for 2008, charged to SSSR on its July 29, 2008 bill. (Levine Jan. 23, 2009 Aff. at Ex. 1 & Ex. 2 at p. 11). This correction is related to the monthly real-estate tax charges of $2,861.94 included on SSSR's rent bills from October 2007 through June 2008, and of $3,746.04 and $1,087.56 on their July 1 and July 29, 2008 bills, respectively. (Id. at Exs. 1 & 2). Plaintiff submitted three statements from the New York City Department of Finance in support of these charges. The first two are quarterly account statements showing that the annual property tax payable from July 1, 2006 through June 30, 2007 was $146,851.00 and for July 1, 2007 through June 30, 2008 was $159,198.00. (Levine Jan. 23, 2009 Aff. at ¶ 5 & Exs. 6 & 7). The third is a statement

---

[16] Although the proffered Environmental Control Board notice does not include the date of the violation, we infer by virtue of the fact that the respondent was named as Pizza Hut that it occurred during the period of Goda's occupancy of the premises.

[17] This figure is $1,000.00 less than requested by plaintiff since it appears that plaintiff sought to be reimbursed twice for its payment of the same violation, numbered 109-370-90x. (See Levine Jan. 23, 2009 Aff., Ex. 4 & Levine Reply Aff., Ex. 9).

correcting a prior real estate tax bill that was sent before the tax rate for the year was finalized, showing that the annual property tax payable from July 1, 2008 through June 30, 2009 was to be $189,522.00. (Id. at ¶ 5 & Ex. 8). Defendant does not object to the monthly real estate tax charges, but he does contend that the real estate tax correction is not properly substantiated and that it is therefore impossible to determine whether it was accurate. (Shapiro Feb. 17, 2009 Aff. at ¶ 17).

Under the terms of SSSR's lease with Sidley, it was obligated to pay 21.56% of the taxes imposed on the building, including real estate taxes. (Levine July 31, 2008 Aff., Ex. E at Intro. Port. ¶ 3.02, Main Lease ¶ 3.03 & Art. 4). Sidley had the option of estimating SSSR's annual share of the taxes owed and billing it monthly for its estimated share. If the actual taxes differed from the estimated amount, SSSR and Sidley were to supplement or refund enough of the original payment to make up the difference within ten days of Sidley furnishing SSSR with an invoice indicating the over- or under-payment. (Id., Ex. E at Main Lease ¶ 4.03). Because Sidley owed $159,198.00 in real estate tax for the period from July 1, 2007 through June 30, 2008, SSSR was properly billed $2,861.94 per month from October 2007 through June 2008 for its approximately twenty-percent share of the overall real estate tax obligation, and

we recommend that Sidley's request for $25,757.46, reflecting these charges, be granted. In June 2008 Sidley apparently received a property tax bill reflecting a 10.0590% tax rate, which was sent prior to the adoption of the final rate for the year. (Levine Jan. 23, 2009 Aff., Ex. 8). Applying that rate to the billable assessed value of the property after exemptions and abatements -- $1,850,625.00 -- would have yielded an annual property tax payment of $40,134.88, for which monthly payments of SSSR's share would have been $3,344.57. Alternatively, under the effective annual property tax rate ultimately charged -- 10.2410% -- SSSR's monthly payments would have amounted to $3,405.09. However, Sidley billed SSSR for $3,746.04 in monthly real estate tax payments beginning in July 2008, and sought an additional $5,304.60 as a correction for the amount of 2008 taxes. Although defendant does not specifically dispute the monthly real estate charge for July and August 2008, we are mindful of our duty to limit defendant's liability to the terms of his guaranty. Because the statements proffered by plaintiff establish its entitlement to only $3,405.09 in property taxes per month from SSSR beginning in July 2008, we recommend that its recovery be limited to that amount for the month of July 2008 and the pro-rated amount of $988.58 for the partial month of August 2008. We agree with defendant that plaintiff's request for $5,304.60 in corrected real estate taxes for 2008 is insufficiently

substantiated and recommend that it not be granted. Therefore, the total amount of real estate tax payments we recommend awarding to plaintiff is $30,151.13.

Finally, defendant argues that plaintiff's request for damages should be reduced by $33,275.00 to reflect the fact that SSSR and Ruderman paid a $26,000.00 security deposit and a $7,275.00 utility deposit to Sidley, and these payments have not yet been returned. (Shapiro Feb. 17, 2009 Aff. at ¶ 18 & Ex. B). Plaintiff acknowledges that Ruderman "did in fact deliver a $26,000 security deposit which Sidley continues to hold and which will be used in partial satisfaction of any judgment obtained." (Levine Reply Aff. at ¶ 14). However, Sidley disputes that it received a utility deposit from defendant, and hypothesizes that since SSSR "contracted directly with utility providers, it is likely that the alleged utility deposit was given to Consolidated Edison or another utility company." (Id.).

As neither party disputes the propriety of applying the security deposit to satisfy the judgment against defendant, we recommend that any judgment against defendant be reduced by

$26,000.00.[18] In terms of the utility deposit, plaintiff correctly notes that the documentation proffered by Mr. Shapiro to substantiate the payment of that deposit does not indicate that the money was paid to Sidley. (See Shapiro Feb. 17, 2009 Aff. at Ex. B). Moreover, we note that the lease between SSSR and Sidley expressly required SSSR to ensure that utilities were provided for the leased premises. (Levine July 31, 2008 Aff., Ex. E at Main Lease ¶ 5.01). Therefore, we recommend that defendant's judgment not be reduced by the amount of the utility deposit.

In sum, we recommend that the amount of damages for rent and related expenses due to Sidley under the terms of its lease with SSSR and therefore owed by defendant under his guaranty be fixed at $206,709.90, and that the judgment in Sidley's favor be reduced by

---

[18] The lease between SSSR and Sidley states that the "portion of the Security Deposit in the form of cash shall be kept in an interest-bearing account with interest accruing to" SSSR. (Levine July 31, 2008 Aff., Ex. E at Main Lease ¶ 29.01). Neither party has addressed the issue of whether Sidley is in possession of interest that has accrued on SSSR's security deposit. However, to the extent that Sidley does hold accrued interest in addition to SSSR's security deposit principal, we recommend that its award be correspondingly reduced by the amount of interest held.

The lease also states that the cash portion of the security deposit is to be supplemented each year to correspond to the annual increase in base rent due under the lease. (Id.). However, neither party has indicated that this provision has been honored, and therefore we assume that the initial $26,000.00 security deposit constitutes the entire security deposit principal.

SSSR's $26,000.00 security deposit held by Sidley, subject to further reduction in the event that Sidley holds any interest that has accrued on SSSR's security deposit.

### C. Attorneys' fees and costs

Sidley seeks reimbursement of its attorneys' fees and costs pursuant to provisions in both its lease with SSSR and the guaranty signed by defendant Ruderman. Sidley's lease with SSSR states that "if [SSSR] shall at any time be in default hereunder . . . [SSSR] shall reimburse [Sidley], as additional rent, for all fees, changes and disbursements of . . . attorneys . . . thereby incurred" by Sidley. (Levine July 31, 2008 Aff., Ex. E at Main Lease ¶ 22.03). Ruderman's guaranty, in turn, obligates him to guaranty SSSR's payment of all additional rent due under the lease. (Id., Ex. F at ¶ A). The guaranty also provides that if Sidley institutes a suit against Ruderman to enforce its rights under the guaranty, Ruderman "shall reimburse [Sidley] for its attorneys' fees, disbursements and court costs incurred by [Sidley] thereby." (Id., Ex. F at ¶ J).

In granting plaintiff's motion for summary judgment, the District Court found that defendant's guaranty obligated him to pay plaintiff's attorneys' fees and referred the matter to me to

41

determine the amount of the fees to be awarded. (H. Tr. at 12).
Plaintiff has submitted affidavits in support of its request for
attorneys' fees and costs, including one that attaches the
contemporaneous time records of its attorneys (Kushnick Jan. 22,
2009 Aff., Ex. E), as required in this circuit to substantiate
claims for attorneys' fees. E.g., Scott v. City of New York, 2009
WL 2610747, *1 & n.11 (S.D.N.Y. Aug. 25, 2009); Morin v. Modern
Cont'l Constr. Corp., 2009 WL 2551802, *4 (E.D.N.Y. Aug. 17, 2009).
Plaintiff asks for approximately $60,000.00 in fees for the Bronx
Civil Court action,[19] representing approximately 244 hours of work
at hourly rates ranging from $640.00 to $195.00. It further seeks
approximately $120,000.00 in fees for work in this court,
reflecting approximately 246 hours of work at the same rates.
Finally, it asks for $7,806.72 in disbursements made on its behalf.

Defendant has raised several objections to plaintiff's request
for attorneys' fees and costs, which can be grouped into three
categories. First, he suggests that some of the time claimed should
not be compensable and that some of the descriptions of the tasks

---

[19] We provide this figure only as a rough approximation of
the amount of fees sought. Plaintiff did not identify fees
charged for work in the Bronx Civil Court proceeding separately
from those charged for work in the federal-court proceeding. This
figure takes into account plaintiff's voluntary fee reductions.
(See Kushnick Reply Aff. at ¶ 80).

performed during those hours are insufficiently specific and improperly redacted. Second, defendant objects to the rates charged by plaintiff's counsel. Third, he raises objections to reimbursing plaintiff's counsel for certain disbursements. We first discuss the standards to be applied to requests for attorneys' fees and costs, and then address each category of defendant's objections in turn.

1. Standards

Under New York law a provision in a contract or guaranty for the reimbursement of attorneys' fees is enforceable. See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20-21 (2d Cir. 1996); Ford Motor Credit Co. v. Miller, 990 F. Supp. 107, 112 (N.D.N.Y. 1998). However, for a party to recover attorneys' fees as an element of damages, the contract must evidence an "unmistakably clear" intent for those fees to constitute damages in the event of breach. Bridgestone/Firestone, Inc., 98 F.3d at 20-21. Moreover, even when contracts provide for the recovery of "all attorneys' fees", courts in this Circuit evaluate the reasonableness of fee reimbursement requests. See Lafarge N. Am., Inc. v. Knight Settlement Sand & Gravel, LLC, 644 F. Supp. 2d 296, 297, 299 (W.D.N.Y. 2009) (when awarding attorneys' fees under guaranty that provided for reimbursement of "all

attorneys' fees", court determined requested fees were "reasonable in light of the work that was necessarily expended in prosecuting" the matter); PSG Poker, LLC v. DeRosa-Grund, 2008 WL 2755835, * 4 (S.D.N.Y. July 14, 2008) (although contract stated that prevailing party may recover "all" of its attorneys' fees, "the Court must still determine whether the amount requested is reasonable") (citing Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F. Supp. 2d 274, 277-78 (E.D.N.Y. 2008)); Ford Motor Credit Co., 990 F. Supp. at 112 (where guaranty provided for "all losses, costs, attorney's fees or expenses" court evaluated reasonableness of attorneys' fees requested).

The District Court has already determined that Sidley is due payment of its attorneys' fees from defendant Ruderman. Moreover, the parties have proceeded on the common assumption that the plaintiff is entitled only to fees that are reasonable. (See, e.g., Wachtler Aff., Point II ¶¶ 15, 17; Kushner Reply Aff. at ¶ 41 (defending time billed as "not excessive" and "reasonable")). The reasonableness of plaintiff's request for fees and costs can be measured by the standards that are used to evaluate fee awards under statutory provisions directing the court to award a "reasonable" attorney's fee. See, e.g., 42 U.S.C. § 1988(b) (prevailing party in civil rights matter entitled to "a reasonable

44

attorney's fee"); 11 U.S.C. § 330 (bankruptcy attorneys awarded "reasonable compensation for actual, necessary services rendered").

Measurement of the reasonableness of a fee award is normally done by way of a lodestar[20] analysis, which requires a calculation based on the amount of time reasonably required to do the job and a reasonable hourly fee. See Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). Claimed hours that the court determines are "'excessive, redundant, or otherwise unnecessary'" should be excluded from the calculation. Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). In performing this assessment, we look to the amount of work, the skills of the attorneys, and the results achieved. See, e.g., Arclightz and Films Pvt. Ltd. v. Video Palace Inc., 303 F. Supp. 2d 356, 364 (S.D.N.Y. 2003)(citing N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.2d 250, 254 (2d Cir. 1992)). In this regard, the court must keep in mind that the attorney's fees should bear some relationship to the level of success achieved, and therefore time spent on claims that failed is not normally compensable. See Hensley, 461 U.S. at 438-40. However, the fact

---

[20] We note that the term "lodestar" has now been abandoned by the Second Circuit in favor of the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008).

that a party was unsuccessful on interim proceedings in the course of the litigation does not bar recovery for time spent on claims on which the party ultimately prevailed. Gierlinger, 160 F.3d at 880.

## 2. Number of hours billed

We first address defendant's objections to reimbursing plaintiff for the number of hours billed by its attorneys.

### a. Bronx Civil Court proceeding

Plaintiff seeks reimbursement of its attorneys' fees for time spent in connection with the Bronx Civil Court proceeding, including preparing and serving a notice to cure and notice to terminate, commencing a holdover proceeding, filing a summary-judgment motion, participating in a trial and evicting the respondents from the leased premises. (See Kushnick Jan. 22, 2009 Aff., Ex. E). Specifically, we calculate that plaintiff is seeking reimbursement for 244.1 hours spent on the Civil Court proceeding,[21]

---

[21] We have categorized the time billed by plaintiff's counsel as relating either to the Bronx Civil Court or to the federal-court proceeding based on the descriptions provided by counsel. If a time entry reflected time spent on both the Bronx Civil Court and the federal-court proceeding, we categorized it based on whether the majority of the time was likely to have been spent on the Civil Court case.

at hourly rates ranging from $640.00 for a "shareholder" and national chair of Greenberg Traurig's Real Estate Operations Department to $195.00 for a legal assistant with significant real estate experience. (Kushnick Jan. 22, 2009 Aff. at ¶ 9 & Ex. E). Plaintiff further seeks reimbursement of $870.00 billed as a previous balance on its December 5, 2007 bill. (Kushnick Jan. 22, 2009 Aff. at Ex. E, PL 0548). In total, plaintiff seeks roughly $60,000.00 in fees for this proceeding.

First, we note that we cannot recommend reimbursing Sidley for the $870.00 previous balance because it did not submit any contemporaneous time records to document the work performed. See Scott, 2009 WL 2610747, at *1 & n.11; Morin, 2009 WL 2551802, at *4. The balance purportedly reflects fees due in connection with writing letters to defendant as a result of SSSR's failure to pay its proportionate share of the real-estate taxes. (Kushnick Reply Aff. at ¶ 37). However, we recommend that this charge not be reimbursed unless plaintiff produces corresponding contemporaneous time records.

Defendant raises several other objections to plaintiff's request. First, he contends that his guaranty did not obligate him to reimburse plaintiff for its attorneys' fees in connection with

47

the Bronx Civil Court proceeding. (Wachtler Aff. Point I ¶¶ 12-13). He argues that his guaranty obligates him to reimburse plaintiff only for attorneys' fees incurred in the course of a suit against him to enforce the terms of his guaranty, not for fees incurred during its prior proceedings against SSSR. (Id.). Plaintiff responds by noting that, under the terms of SSSR's lease, plaintiff's attorneys' fees and expenses incurred in enforcing SSSR's lease obligations constitute additional rent, and defendant's guaranty obliges him to reimburse Sidley for additional rent owed by SSSR. (Pl.'s Reply Mem. of Law in Supp. of Pl.'s Submission on Damages & Att'ys Fees, 8-10).

We agree with plaintiff that defendant's guaranty obligates him to pay plaintiff's attorneys' fees and costs incurred in the Bronx Civil Court proceeding. Section 22.03 of SSSR's lease states that if it defaults on its obligations under the lease and Sidley hires legal counsel, SSSR "shall reimburse [Sidley], as additional rent, for all fees, charges and disbursements of such attorneys." (Levine July 31, 2008 Aff., Ex. E at Main Lease ¶ 22.03). In its turn, defendant's guaranty covers SSSR's payment of "all Base Rent and additional rent reserved under, and as defined in, the Lease . . . and any other sum or sums required to be paid by [SSSR] under any of the terms of the Lease." (Id., Ex. F at ¶ A). In short, the

48

clear terms of defendant's guaranty obligate him to reimburse plaintiff's attorneys' fees and costs incurred in the Bronx Civil Court proceeding as additional rent, and we must enforce that clear language. See Beth Isr. Med. Ctr., 448 F.3d at 580; Postlewaite, 411 F.3d at 69. See also Ford Motor Credit Co., 990 F. Supp. at 112 (holding guarantor liable for attorneys' fees and expenses in related actions); Desiderio v. Devani, 24 A.D.3d 495, 497, 806 N.Y.S.2d 240, 242 (2d Dep't 2005) (holding guarantor liable for attorneys' fees under "broad language" of guaranty that made guarantor liable to the same extent as obligor where obligor agreed to reimburse attorneys' fees incurred in enforcing its obligations under promissory note).

Second, defendant objects to reimbursing plaintiff for $4,227.00 for time that its attorneys billed on its January 17, 2008 invoice relating to the preparation and service of the notices to cure and of termination, and the initial commencement of the Bronx Civil Court proceeding. (Charie Aff. at ¶ 7B). Defendant argues that the 3.9 hours spent preparing the notice of termination is excessive, as is the 2 hours of conferences held for discussion of the notice of petition and petition filed to commence the Bronx Civil Court action. (Id.). Plaintiff replies by stating that only 2.1 hours were spent preparing the notice of termination and by

defending the time spent in conferences as reasonable in light of the need for counsel to consider a settlement proposal and discuss the strategy of the case. (Kushnick Reply Aff. at ¶ 41). We agree with the plaintiff that the time its attorneys spent preparing and serving the notices and preparing to bring a holdover action against the occupants of the leased space was reasonable and do not recommend a reduction in the number of hours billed in connection with these tasks.

Third, defendant objects to reimbursing plaintiff for $3,855.50 for fees billed on its February 15, 2008 invoice in connection with the re-filing of the Bronx Civil Court proceeding, including revising the notice of petition and petition to include Goda as a respondent. (Wachtler Aff. at Point III ¶¶ 18-20). Defendant argues that the time billed was duplicative in two respects –- first, because a lawyer and a paralegal billed time for completion of the same tasks and, second, because "the entire proceeding was recommenced based on counsel's failure to properly name the parties in the summary proceeding in the first instance." (Id. at ¶ 18). An affidavit submitted on defendant's behalf characterizes the recommencement of the proceeding as the result of an "error or omission" by counsel, for which the client should not be billed. (Charie Aff. at ¶ 7C). Defendant similarly objects to

reimbursing plaintiff for 9.9 hours of its attorneys' time billed on its March 24, 2008 invoice in connection with recommencing the Bronx Civil Court action. (<u>Id.</u> at ¶ 7D).

Plaintiff explains that a second proceeding was required because Sidley initially was unaware that Goda claimed the right to occupy the leased premises. (<u>See</u> Kushnick Reply Aff. at ¶¶ 33-36 & Def.'s Mem. at 11 n.5). When Goda answered Sidley's petition and alleged that Sidley had failed to name a necessary party, instead of "engaging in motion practice that could have potentially delayed the litigation, Sidley decided about a more expeditious strategy" of starting a new proceeding "naming all possible respondents." (Kushnick Reply Aff. at ¶ 45). An affidavit submitted on plaintiff's behalf by an experienced commercial landlord-tenant lawyer opines that Sidley's strategy of "commencing a new case, rather than expending time and effort to litigate whether or not [Goda] was a necessary party, was sound." (Finkelstein Aff. at ¶ 6).

We recommend that plaintiff's attorneys' claimed hours not be reduced to account for time spent recommencing the Bronx Civil Court holdover proceeding. First, contrary to defendant's assertion, the time records submitted by plaintiff's counsel do not

reflect that an attorney and paralegal billed time for completing the same tasks. Rather, paralegal Salvatore A. Giambrone reviewed the lease and revised the notice of petition and petition, and then the attorney, Heath  Kushnick, Esq., reviewed and finalized the notice and petition. (Kushnick Jan. 22, 2009 Aff., Ex. E at PL0561). These entries reflect proper supervision by the attorney of the paralegal's activities, as opposed to improper duplication. Second, we consider the time spent by plaintiff's attorneys recommencing the proceeding to be reasonable because, as they suggest, it would have been less efficient to challenge Goda's answer to Sidley's original petition insofar as it asserted a failure to name a necessary party. Since Sidley had denied SSSR's request to assign its lease to Goda and did not consent to any sublease to Goda, it was reasonable for Sidley to omit Goda from the list of respondents in its original petition. Therefore, the time spent recommencing the Bronx Civil Court proceeding upon learning of Goda's claim to a right of occupancy was reasonable. Especially in light of the fact that Sidley has voluntarily reduced its request for fees for the time spent recommencing the Bronx Civil Court proceeding by $5,000.00 (Kushnick Reply Aff. at ¶ 48,) we do not consider an additional reduction in the number of hours billed to be necessary.

Defendant next targets reimbursement of plaintiff's counsel for preparation of a summary-judgment motion in the Bronx Civil Court proceeding. Defendant argues that plaintiff's attorneys are not entitled to reimbursement because their motion was unsuccessful. (Wachtler Aff. at Point IV ¶ 21). He also argues that the amount of time spent preparing the motion -- in excess of eighty hours -- was excessive. (Charie Aff. at ¶ 7D-E). Plaintiff responds that the proper focus is on whether it prevailed in the litigation as a whole as opposed to each particular stage of the process. (Def.'s Mem. at 10-12). Plaintiff also defends the amount of time it devoted to the briefing of its summary-judgment motion, which involved the preparation of its original motion and reply in response to Goda's opposition, as well as its opposition to Goda's cross-motion for summary judgment. In doing so, it argues that the time spent was reasonable based on the legal issues involved, which required "significant research and drafting." (Kushnick Reply Aff. at ¶ 53).

We agree with plaintiff that the denial of its summary-judgment motion does not preclude its recovery of attorneys' fees and costs for the briefing of the motion because it ultimately prevailed in the proceeding by obtaining a judgment in its favor after trial. See Gierlinger, 160 F.3d at 880; New York State Nat'l

53

<u>Org. for Women v. Terry</u>, 94 F. Supp. 2d 465, 468 (S.D.N.Y. 2000) ("[A] plaintiff who is ultimately successful may be able to recover reasonable attorney's fees for interim stages of the litigation at which plaintiff did not prevail."); <u>accord</u> <u>542 East 14th Street LLC</u> <u>v. Lee</u>, 66 A.D.3d 18, 24-25, 883 N.Y.S.2d 188, 192 (1st Dep't 2009) (tenant's attorneys' fee award properly included fees for unsuccessful summary-judgment motion). We also view the time that plaintiff's counsel spent on the cross-motions for summary judgment as reasonable, especially in light of the voluntary $15,000.00 reduction in fees sought for this time period.

Defendant next objects to the time billed in connection with the trial of the Bronx Civil Court proceeding following the denial of Sidley's summary-judgment motion. (Charie Aff. at ¶ 7F). Plaintiff defends the amount of time spent preparing for trial as necessary to respond to Goda's defenses and cross-claims, introduce documents into evidence and prepare to examine and cross-examine each side's witnesses. (Kushnick Reply Aff. at ¶ 57).[22] We agree with defendant that the approximately 44 hours billed by

---

[22] We note that plaintiff also emphasizes the propriety of its decision to proceed to trial instead of appealing the denial of its summary-judgment motion, a ruling that was based on a typographical error in the caption of its motion papers. (Kushnick Reply Aff. at ¶ 56; Finkelstein Aff. at ¶ 7). However, as this decision was not addressed specifically by defendant, we need not evaluate the merits of this strategic calculation.

plaintiff's counsel to prepare for a one-day trial for which counsel billed approximately 3.8 hours is excessive. Therefore, we recommend that plaintiff's hours spent in preparation for the trial be reduced by twenty hours. We further recommend that the reduction be allocated as follows: 9 hours from Heath B. Kushnick, 4 hours from Matthias W. Li, 5 hours from Salvatore A. Giambrone and 1 hour each from David J. Ansell and Steven N. Kirkpatrick.

Finally, defendant objects to reimbursing plaintiff's counsel for activities undertaken after the conclusion of the Bronx Court proceeding, including obtaining a warrant of eviction and performing UCC searches on property left on the leased premises. (Watchler Aff. at Point V ¶ 17). Specifically, defendant argues that he should not be responsible for fees incurred after Goda vacated the premises, when Sidley's counsel was dealing directly with counsel for Goda. (Id.). Defendant also contends that fees charged in the amount of $1,560.00 for obtaining and processing the warrant of eviction were excessive. (Id. at ¶ 18). Defendant also argues that he should not be responsible for attorneys' fees of $3,272.00 charged in connection with an investigation of the Environmental Control Board violations discussed above. (Id. at ¶ 19). Finally, defendant argues that fees of $4,839.00 charged for time spent by multiple paralegals and attorneys in connection with

the UCC searches on property left on the leased premises were duplicative. (Id. at ¶¶ 20-21). Plaintiff responds by contending that the time spent on the preparation and execution of the warrant of eviction was "usual and customary in the practice area." (Kushnick Reply Aff. at ¶ 72). Plaintiff justifies the time spent performing UCC searches as necessary based on the fact that Goda and SSSR had left vending and video-game machines behind at the leased premises. (Id. at ¶ 73). Finally, plaintiff characterizes defendant's objections to the fees charged for activities following the Bronx Civil Court proceeding as too general to warrant a reduction in plaintiff's fee request. (Id. at ¶ 74).

The activities of plaintiff's counsel after the conclusion of the Bronx Civil Court proceeding were within the scope of the defendant's guaranty. SSSR's lease with Sidley obligated it to surrender the premises to Sidley "free of all tenancies, licenses and occupancies and . . . broom clean, in good order, condition and repair except for ordinary wear and tear and damage by fire or other insured casualty." (Levine July 31, 2008 Aff., Ex. E at Main Lease ¶ 18.01). Further, SSSR was obligated to remove all of its property and repair any damage or make any replacements to the building necessitated by such removal. (Id., Ex. E at Main Lease ¶ 18.02). If SSSR failed to do so, Sidley could remove the property

and repair the leased premises at SSSR's cost and expense. (Id.). The failure of SSSR and its subtenant to surrender the leased premises in the manner directed by the lease constituted a default, which necessitated the involvement of plaintiff's counsel. Therefore, counsel's fees, which are designated in SSSR's lease as additional rent, are covered by defendant's guaranty. (See id., Ex. E at Main Lease ¶ 22.03, Ex. F at ¶ A).

However, we agree with defendant that the time spent by plaintiff's counsel and paralegals in connection with these activities was excessive. For example, paralegal Salvatore A. Giambrone billed 3.6 hours for sending the eviction warrant request to the New York City Marshal and discussing its status with the Marshal and with plaintiff's counsel. (Kushnick Jan. 22, 2009 Aff. at Ex. E, PL 0585, PL 0591-92). Without any justification of the need for such extensive involvement in the eviction proceeding beyond the conclusory assertion that such involvement is customary, we cannot determine that this time was reasonably spent. Similarly, time spent in connection with a review of Environmental Control Board violations, including over an hour and a half of Mr. Giambrone's time billed for obtaining and discussing a violation with counsel, appears excessive and is not explained by plaintiff. Therefore, we recommend that plaintiff's requested fees for

activities performed subsequent to the Bronx Civil Court proceeding in connection with the eviction of Goda and removal of property from the leased premises be reduced by approximately twenty-five percent. See Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) (applying across-the-board percentage reduction to account for objection to excessiveness of fees as opposed to addressing each individual objection). This would amount to a reduction in the hours billed by Heath B. Kushnick and Salvatore A. Giambrone of 2.5 hours each and a decrease in the hours billed by David J. Ansell, Michael P. Manning and Cynthia Palmer of 0.6, 0.8 and 0.3 hours, respectively.

### b. Federal Court proceeding

Plaintiff seeks reimbursement for its attorneys' fees charged in connection with this federal-court proceeding to enforce defendant's guaranty, including fees for time spent commencing the action, moving for summary judgment, and preparing the current request for damages and attorneys' fees. (Kushnick Jan. 22, 2009 Aff., Ex. E). Specifically, we calculate that plaintiff is seeking reimbursement of approximately $120,000.00, reflecting 246.4 hours spent on this federal action. (See id.).

Defendant, in turn, contends that the fees sought here are excessive. Defendant also argues that plaintiff is not entitled to a reimbursement of attorneys' fees charged in connection with this inquest or, alternatively, that plaintiff's fee request for the inquest should be reduced significantly. (Wachtler Aff. at Point VI ¶¶ 22, 33).

In connection with the commencement of plaintiff's federal court proceeding, defendant contends that the 20.80 hours he calculates as having been billed for plaintiff's preparation of a Rule 26(f) report and submission of initial disclosures is excessive in light of the small volume of documents that plaintiff produced. (Id. at ¶ 23). Plaintiff disputes defendant's calculation of the hours spent on these tasks, pegging them at a maximum of 13.2 hours and defending them as necessary in light of the large volume of documents that needed to be reviewed in advance of document production. (Kushnick Reply Aff. at ¶¶ 62-63). We do not consider the time spent on these initial tasks, as clarified by plaintiff, to be excessive, and therefore do not recommend that the hours billed by plaintiff's counsel in connection with these activities be decreased.

Regarding the preparation of plaintiff's summary-judgment

motion in this proceeding, defendant again contends that the time billed by plaintiff's counsel is excessive. Specifically, defendant targets 2.4 hours spent drafting a pre-motion letter, 33.1 hours preparing plaintiff's motion and 30.5 hours spent on plaintiff's reply papers. (Wachtler Aff. at Point VI ¶¶ 24-26). Plaintiff responds that defendant mis-calculated the time spent drafting the pre-motion letter, and defends the time spent as necessary to provide a "thorough and persuasive" introduction of the matter to the court. (Kushnick Reply Aff. at ¶¶ 64-65). Plaintiff similarly disputes defendant's calculation of the time billed for the preparation of its summary-judgment motion, noting that some time entries classified in Ms. Wachtler's affidavit as time spent in preparation of the motion actually reflect time spent on multiple tasks. (Id. at ¶ 67). Plaintiff also contends that even if we adopted defendant's inflated calculation of the time its counsel spent preparing its motion, the figure would be reasonable since the motion included two affidavits, a statement of undisputed facts with sixteen exhibits and a memorandum of law addressing plaintiff's three causes of action and defendant's four affirmative defenses. (Id. at ¶ 68).

We agree with plaintiff that the time spent drafting the pre-motion letter was reasonable. We also agree with plaintiff that the

number of hours billed in connection with the preparation of its summary-judgment motion was significantly lower than the figure cited by defendant, perhaps by as much as half. By our rough calculation plaintiff's counsel billed approximately eighteen hours preparing its summary-judgment papers, which consisted of affidavits and a twelve-page memorandum of law. Although the motion did not address any complicated legal issues, we consider the number of hours spent preparing the motion to be reasonable. See Big R Food Warehouses v. Local 338 RWDSU, 896 F. Supp. 292, 299 (E.D.N.Y. 1995) (reducing to 26.5 hours a request for reimbursement for hours spent researching and writing fourteen-page summary-judgment motion that was "well written and researched" but where "the issue involved was not complex or novel"). However, we agree with defendant that the approximately 36 hours spent preparing plaintiff's reply papers in favor of summary judgment, consisting of a ten-page memorandum of law, was excessive. Therefore, we recommend that the hours billed by Heath B. Kushnick and Michael P. Manning each be reduced by approximately twenty percent, yielding a reduction of 3.1 hours for Mr. Kushnick and 2.6 hours for Mr. Manning.

As for plaintiff's entitlement to attorneys' fees for the preparation of its inquest papers, we agree that the defendant's

guaranty obligates him to reimburse plaintiff for its fees incurred in this inquest. This proceeding, which is directed to assessing the amount of plaintiff's compensation award, is an essential part of the current litigation, the cost of which must be borne by defendant. Moreover, that conclusion is not affected by the fact that a portion of the inquest is focused on setting a fee award for plaintiff for this lawsuit. When awarding prevailing parties attorneys' fees under statutory-fee provisions, courts in this circuit have regularly included fees incurred in preparing the fee applications. See, e.g., Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 525 (S.D.N.Y. 2002); Colbert v. Furumoto Realty, Inc., 144 F. Supp. 2d 251, 262 (S.D.N.Y. 2001); Natural Res. Def. Council, Inc. v. Fox, 129 F. Supp. 2d 666, 675 (S.D.N.Y. 2001) ("'[T]he fee application is a necessary part of the award of attorney's fees.'" (quoting Donovan v. CSEA Local Union 1000, Am. Fed'n of State, County and Mun. Employees, AFL-CIO, 784 F.2d 98, 106 (2d Cir. 1986)). Although plaintiff's entitlement here to such a fee award is a matter of contract, Sidley is clearly entitled to it. The Second Circuit has stated that to recover attorneys' fees for a fee application pursuant to a contractual provision, that provision must explicitly provide for the reimbursement of fees incurred in making a fee application. F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1266-67 (2d Cir. 1987). Here, Ruderman's

guaranty stated that "[i]n the event that [Sidley] should institute any suit against [Ruderman] for violation of or to enforce any of the covenants or conditions of this Guaranty or to enforce any right of [Sidley] hereunder, [Ruderman] shall reimburse [Sidley] for its attorneys' fees, disbursements and court costs." (Levine July 31, 2008 Aff., Ex. F at ¶ J). Similar language obligating one party to reimburse the other for "enforcement" of a contract has been interpreted as sufficiently clear to include the reimbursement of fees incurred in the preparation of a fee request. See LaSalle Bank, N.A. v. Capco Am. Securitization Corp., 2006 WL 1227539, *2 (S.D.N.Y. May 5, 2006). Thus, defendant's guaranty obligates him to reimburse Sidley for its attorneys' fees incurred in preparing plaintiff's request for damages and attorneys' fees in this inquest.

Regarding the amount of attorneys' fees plaintiff requested for time spent on this inquest, defendant argues that the 49.30 hours billed for the preparation of plaintiff's application is unreasonable as the "papers in support of the application were minimal and would, at best, have required less than 5.0 hours of counsel's time." (Wachtler Aff. at Point IV ¶ 34). Plaintiff's reply papers do not specifically justify the number of hours spent preparing plaintiff's initial submission in this inquest, but they

63

do seek reimbursement for an additional 51.90 hours for the preparation of plaintiff's reply papers. (Kushnick Reply Aff. at ¶ 79 & Ex. T), bringing the total time spent on plaintiff's submissions in this inquest to 101.20 hours.

We agree with defendant that plaintiff's request for reimbursement of attorneys' fees in connection with this inquest is excessive. Although plaintiff has already reduced its request for fees for the submission of its reply papers by approximately $10,00.00 (Kushnick Reply Aff. at ¶ 79), plaintiff's request should be reduced further. We do not consider plaintiff's inquest papers to have been especially difficult to prepare, as plaintiff had already submitted several of the proffered documents in the Bronx Civil Court proceeding or in support of its summary-judgment motion in this federal-court action. Moreover, although it filed two sets of papers, it submitted a memorandum of law only on its reply. Therefore, we recommend that plaintiff's request for attorneys' fees for time spent on this inquest be decreased by approximately twenty-five percent, resulting in the following reductions in the number of hours billed for this inquest: 13.8 hours for Heath B. Kushnick, 5.6 hours for Matthias W. Li, 3.8 hours for Michael P. Manning, 1.2 hours for H.R. Penn, 0.7 hours for Salvatore A. Giambrone, and 0.2 hours for David J. Ansell.

c. Descriptions of work performed

Defendant also objects to reimbursing plaintiff for certain hours billed by plaintiff's attorneys based on the descriptions provided for the work performed, either because the descriptions are "vague" or because they "contain redactions." (Wachtler Aff. at Point IV ¶ 27). Plaintiff responds that entries in its attorneys' time records were redacted to shield privileged information and that such redactions do not prevent the recovery of attorneys' fees. (Pl.'s Reply Mem. at 12-13).

We decline to recommend a reduction in the number of hours billed by plaintiff's counsel in response to defendant's objections to the descriptions of the tasks performed. Courts in this circuit have awarded attorneys' fees despite the redaction of privileged information in attorneys' contemporaneous time records. See, e.g., RBFC One, LLC v. Zeeks, Inc., 2005 WL 2105541, *1 (S.D.N.Y. Sept. 1, 2005); U.S. Bancorp Oliver-Allen Tech. Leasing v. Hall, Dickler, Kent, Goldstein & Wood, LLP, 2005 WL 1875459, * 3 (S.D.N.Y. Aug. 8, 2005); Connecticut Hosp. Ass'n v. O'Neill, 891 F. Supp. 687, 689-90, 692 (D. Conn. 1994). We do not consider the minimal redactions in plaintiff's attorneys' task descriptions to merit a decrease in fees. We are mindful of the fact that a party seeking attorneys'

fees bears the burden of properly documenting the hours worked, an obligation that is not satisfied by a vague entry such as "conference with" or "call to" a particular person. Connecticut Hosp. Ass'n, 891 F. Supp. at 690-91 (citing, inter alia, Henley, 461 U.S. at 437; Grogg v. Gen. Motors Corp., 612 F. Supp. 1375, 1380 (S.D.N.Y. 1985)). There may be a handful of entries by plaintiff's attorneys that run afoul of this standard, but the majority at least "state the general subject matter" of the time spent, which satisfies plaintiff's burden. Henley, 461 U.S. at 433. To the extent that any of the entries fail to meet this standard, they are accounted for by plaintiff's overall ten-percent reduction in fees sought, and so we do not recommend any further reduction in hours on this basis.

## 3. Hourly rates

We next turn to defendant's objections to the hourly rates charged by plaintiff's attorneys. An affidavit submitted by plaintiff lists the hourly rates charged by the attorneys and paralegal who did most of the work on this matter. It reflects that Mr. Ansell, a "shareholder" and national chair of Greenberg Traurig's Real Estate Operations Department charged $640.00 per hour. Two attorneys who are "of counsel" in the department, Mr.

66

Kushnick and Mr. Manning, each charged $495.00 per hour. Mr. Li, an associate, charged $375.00 an hour, and Mr. Giambrone, a paralegal, charged $195.00 per hour. (Kushnick Jan. 22, 2009 Aff. at ¶ 9).

Defendant challenges these rates as excessive. (Wachtler Aff. at ¶¶ 37-38). An affidavit submitted by defendant lists the hourly rates of attorneys at the firm of Rosenberg & Estis, primarily a real estate law firm, as $400.00 for a partner, $295.00 for counsel, $160.00 for an associate and $115.00 for a legal assistant. (Charie Aff. at ¶ 9; accord Wachtler Aff. at ¶ 37). In response, plaintiff disputes the accuracy of the cited fees for Rosenberg & Estis's attorneys. It attaches a 2008 fee schedule from the firm submitted in an unrelated matter, which indicates that its associates[23] billed an average of $231.79 per hour and its partners billed an average of $436.00 per hour. (Kushnick Reply Aff. ¶ 14 & Ex. H). Plaintiff also defends the rates charged by its attorneys on the ground that Greenberg Traurig is a highly-regarded, large law firm and that the rates charged by other attorneys at the firm are even higher than those charged by the attorneys on this matter. (Id. at ¶¶ 82, 85). Furthermore, an affidavit submitted on

---

[23] Plaintiff's calculation only covers attorneys who were both listed on the firm's billing schedule in 2008 and still employed by the firm in early 2009, so that plaintiff could identify the attorneys' seniority based on their profiles on the firm's website.

plaintiff's behalf characterizes the hourly rates charged by plaintiff's attorneys as "reasonable." However, the affiant -- a founding partner of a law firm with twenty years of real estate experience -- admits that plaintiff's attorneys fees are higher than his own rate of $450.00 per hour. (Finkelstein Aff. at ¶¶ 1, 8). The affiant attributes this disparity to the fact that "Greenberg Traurig is a much larger firm than mine and such firms typically charge higher rates." (Id. at ¶ 8).

Courts determine the reasonableness of the rate sought by attorneys by reference to the "market rates for the services rendered." Missouri v. Jenkins, 491 U.S. 274, 283 (1989); accord Gierlinger, 160 F.3d at 882. The relevant rates are those charged by "'lawyers of reasonably comparable skill, experience, and reputation.'" Farbotko v. Clinton County of New York, 433 F.3d 204, 208 (2d Cir. 2005) (quoting Blum v. Stenson, 465 U.S. 886, 896 & n. 11 (1984)).[24] A court should generally base an award on the fees

---

[24] The Second Circuit has described the standard for a reasonable hourly rate as the "rate at which a client who wished to pay no more than necessary would be willing to compensate his attorney." Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 191. Moreover, in the context of determining when a court can apply a higher out-of-district hourly rate in the statutory-fee context, the Second Circuit has suggested that a reasonable rate is one necessary to attract "'competent counsel,'" not necessarily "brand name" counsel. Simmons v. New York City Transit Auth., 575 F.3d 170, 176 (2d Cir. 2009) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,

charged by attorneys in the forum in which the matter was litigated. See Simmons, 575 F.3d at 175-76; cf. Germain v. County of Suffolk, __ F. Supp. 2d __, 2009 WL 4546671, * 2-3 (E.D.N.Y. Dec. 5, 2009). A party seeking reimbursement of its attorneys' fees bears the burden of proving the prevailing market rate by "'satisfactory evidence -- in addition to the attorney's own affidavits.'" Farbotko, 433 F.3d at 209 (quoting Blum, 465 U.S. at 896 n.11). In the absence of such a submission, a court may determine the appropriate market rate by taking judicial notice of fee awards in other cases and draw on its own familiarity of market rates in the district. Id. at 210-12; Melnick v. Press, 2009 WL 2824586, *9 (E.D.N.Y. Aug. 28, 2009) (citing cases).

Plaintiff has not introduced evidence of the prevailing market

---

493 F.3d 110, 121 (2d Cir. 2007)). In other words, the party reimbursing the fees "should not be required to pay for a limousine when a sedan could have done the job." Id. at 177. Plaintiff implicitly addressed this consideration in affidavits submitted on its behalf, suggesting that it is not uncommon for other large firms like Greenberg Traurig to litigate commercial lease disputes. (Kushnick Reply Aff. at ¶ 86; Finkelstein Aff. at ¶ 8).

We need not determine whether this standard applies directly in a case such as this, in which attorneys' fees are awarded pursuant to a contractual provision. In any event, this consideration is consistent with the reasonableness analysis of pre-existing caselaw on awarding attorneys' fees -- including pursuant to contracts -- which the parties assumed would govern in this case and which we apply below.

rate for services rendered in the Bronx Civil Court or the Southern District of New York. Therefore, we take judicial notice of prior fee award proceedings to determine the appropriate respective market rates. In terms of the market rate for representation in the Bronx Civil Court, the Housing Part of that court credited hearing testimony in a 2008 decision stating that the "prevailing hourly rate charged by housing court practitioners with approximately seven to ten years of experience" was $200.00 to $225.00 per hour. 1097 Holding LLC v. Ballesteros, 239 N.Y.L.J. 31 (col. 3) (May 7, 2008). Similarly, "[i]n New York County, attorneys of skill, experience and good fortune regularly command and receive fees that exceed $300 an hour for work in the Civil Court, Housing Part. Senior partners at large, reputable law firms can receive even more." Nestor v. Britt, 16 Misc. 3d 368, 375-76, 834 N.Y.S.2d 458, 463 (N.Y. City Civ. Ct. 2007) (approving hourly rate of $365.00 for junior partner with 12 years experience in landlord-tenant litigation and $520.00 for senior partner with 30 years experience in landlord-tenant litigation). See also 235 E. 83 Realty, L.L.C. v. Fleming, 18 Misc. 3d 1142(A), 859 N.Y.S.2d 899, *1 (N.Y. City Civ. Ct. 2008) (approving hourly rate of $275.00 per hour for attorney with 14 years experience primarily practicing real estate and landlord-tenant litigation); Ross v. Congregation B'Nai Abraham Mordechai, 12 Misc. 3d 559, 570, 814 N.Y.S.2d 837, 846 (N.Y. City

Civ. Ct. 2006) (approving hourly rate of $445.00 for partner in holdover proceeding as "reasonable compared to other rates at mid-sized Manhattan law firms").

In terms of the market rate for representation in the Southern District of New York, recent fee awards within the district reflect hourly rates in the range of $450.00 to $600.00 for experienced partners, $350.00 for senior associates, $250.00 for junior associates, and $125.00 to $170.00 for paralegals. See Edmonds v. Seavey, 2009 WL 1598794, *2 (S.D.N.Y. June 5, 2009), aff'd, 2009 WL 2150971 (S.D.N.Y. July 20, 2009) (real estate litigation involving breach-of-contract claim) (relying on fees awarded in Rozell, 576 F. Supp. 2d at 546); RBFC One, LLC, 2005 WL 2105541, at *2 (breach-of-contract action).

In light of this evidence, as well as information provided about the education and experience of the attorneys and paralegal who primarily worked on the matter (Kushnick Jan. 22, 2009 Aff. at ¶ 6), we recommend that fees for Daniel J. Ansell, the chair of Greenberg Traurig's Real Estate Operations Department, with over twenty years experience in real estate litigation, be set at the rate of $525.00 per hour for his work on the Bronx Civil Court action, and $600.00 per hour for his work on the federal-court

proceeding. Heath B. Kushnick and Michael P. Manning, both "of counsel" with significant experience in real estate and complex litigation, should receive $300.00 per hour for their work on the Bronx Civil Court proceeding, and $400.00 per hour in the federal-court proceeding. For Matthias Li, an associate with approximately four years experience in real estate matters, the fees should reflect $150.00 per hour for his work in the Bronx Civil Court and $250.00 per hour for his work on the federal-court proceeding. The work of Salvatore A. Giambrone, a paralegal with extensive experience in real estate litigation, should trigger fees of $100.00 per hour for his work on the Bronx Civil Court proceeding and $125.00 for his work on the federal-court proceeding.

Plaintiff did not provide comparable biographical information for other attorneys and paralegals who worked on the matter. Despite that lack of information, we recommend that their work be compensated at the following rates: Michael A. Ambrose, $150.00 per hour for his work on the Bronx Civil Court proceeding; Samuel C. Watkins, $150.00 per hour for his work on the Bronx Civil Court proceeding and $250.00 per hour for his work on the federal-court proceeding;[25] Steven N. Kirkpatrick,[26] $300.00 per hour for his work

---

[25] Mr. Ambrose and Mr. Watkins both billed minimal time in connection with research for the Bronx Civil Court and federal-court matters. Plaintiff's fee application does not disclose

on the Bronx Civil Court proceeding and $400.00 for his work on the
federal-court matter; Etyan Moked,[27] $125.00 per hour for his work
on the federal-court matter; Cynthia Palmer and Bension DeFunis,
$75.00 per hour for their work in connection with the Bronx Civil
Court proceeding; Keith E. Reich,[28] $500.00 per hour for his work
on the Bronx Civil Court proceeding; Sarah E. Morris and Tom A. Hay
at $100.00 per hour for their work on the federal-court proceeding[29]
and H.R. Penn,[30] $350.00 per hour for his time spent on the federal-

---

their positions, nor do they appear on Greenberg Traurig's
current list of attorneys. Therefore, we recommend reimbursing
them as junior associates.

[26] Mr. Kirkpatrick appears to be an "of counsel" with
significant real estate litigation experience, according to his
biography on the Greenberg Traurig website.

[27] Mr. Moked appears to be a librarian who assisted Mr.
Giambrone in research prior to the commencement of the federal
lawsuit, and thus we recommend he be compensated as a paralegal
at the same rate as Mr. Giambrone.

[28] According to his biography on Greenberg Traurig's website,
Mr. Reich is apparently a "shareholder" with significant
experience in real estate law.

[29] Ms. Morris and Mr. Hay are neither identified in
plaintiff's application nor included in Greenberg Traurig's list
of current attorneys. As such, we recommend that they be
compensated slightly less that Mr. Giambrone for what we take to
be paralegal assistance that they provided, a differential
reflecting Mr. Giambrone's extensive experience.

[30] Mr. Penn is listed as a "contract attorney" on Greenberg
Traurig's billing records (Kushnick Reply Aff. Ex. G at p. 2),
although his hourly rate of $490.00 is nearly as high as that of
Mr. Kushnick, an "of counsel". We presume that Mr. Penn is
experienced in real estate litigation, and therefore recommend
that his work trigger fees that are slightly lower than those

73

court matter.

#### 4. Conclusion as to attorneys' fees

In order to calculate our final recommendation on attorneys' fees, we have categorized the time spent by plaintiff's counsel as relating to the Bronx Civil Court or federal-court proceeding, based on their descriptions in their contemporaneous time records of the time spent.[31] Then for each proceeding we have multiplied the number of hours billed by plaintiff's attorneys and paralegals, less our recommended reductions, by our recommended hourly rate for each attorney and paralegal.

---

incurred from Mr. Kushnick's work.

[31] As noted previously, we categorized a time entry reflecting time spent on both the Bronx Civil Court and federal-court proceeding based on the tasks that appeared to comprise the bulk of the time entry.

## a. Bronx Civil Court proceeding

| Attorney/ Paralegal | Hours originally billed | Hours with recommended reduction | Recommended Hourly Rate | Total |
|---|---|---|---|---|
| David J. Ansell | 13.6 | 12.0 | $525.00 | $6,300.00 |
| Keith E. Rich | 0.5 | 0.5 | $500.00 | $250.00 |
| Heath B. Kushnick | 85.4 | 73.9 | $300.00 | $22,170.00 |
| Michael P. Manning | 36.9 | 36.1 | $300.00 | $10,830.00 |
| Steven N. Kirkpatrick | 6.8 | 5.8 | $300.00 | $1,740.00 |
| Matthias Li | 43.6 | 39.6 | $150.00 | $5,940.00 |
| Michael A. Ambrose | 0.4 | 0.4 | $150.00 | $60.00 |
| Samuel C. Watkins | 0.7 | 0.7 | $150.00 | $105.00 |
| Salvatore Giambrone | 54.5 | 47.0 | $100.00 | $4,700.00 |
| Cynthia Palmer | 1.5 | 1.2 | $75.00 | $90.00 |
| Bension DeFunis | 0.2 | 0.2 | $75.00 | $15.00 |
| TOTAL | | | | $52,200.00 |

## b. Federal Court proceeding

| Attorney/ Paralegal | Hours originally billed | Hours with recommended reduction | Recommended Hourly Rate | Total |
|---|---|---|---|---|
| David J. Ansell | 8.5 | 8.3 | $600.00 | $4,980.00 |
| Heath B. Kushnick | 108 | 91.1 | $400.00 | $36,440.00 |
| Michael P. Manning | 68.9 | 62.5 | $400.00 | $25,000.00 |
| Steven N. Kirkpatrick | 0.3 | 0.3 | $400.00 | $120.00 |
| H.R. Penn | 4.7 | 3.5 | $350.00 | $1,225.00 |
| Matthias Li | 34.7 | 29.1 | $250.00 | $7,275.00 |
| Samuel C. Watkins | 1.4 | 1.4 | $250.00 | $350.00 |
| Salvatore A. Giambrone | 18.4 | 17.7 | $125.00 | $2,212.50 |
| Etyan Moked | 0.7 | 0.7 | $125.00 | $87.50 |
| Sarah E. Morris | 0.3 | 0.3 | $100.00 | $30.00 |
| Tom A. Hay | 0.5 | 0.5 | $100.00 | $50.00 |
| TOTAL | | | | $77,770.00 |

That calculation yields a total of $129,970.00, from which we deduct the voluntary reductions made by plaintiff totaling $48,908.25.[32] Therefore, we recommend that plaintiff be awarded $81,061.75 in attorneys' fees.

---

[32] This figure includes the lump-sum voluntary reductions totaling $30,766.00, as well as the ten-percent overall reduction in fees sought, which, based on the amount of fees requested at the time, totaled $18,142.25. (Kushnick Reply Aff. at ¶¶ 48, 54, 79, 80).

5. Disbursements

Defendant objects to reimbursing plaintiff for certain of its counsel's disbursements, including funds spent accomplishing service of papers and pleadings in connection with the Bronx Civil Court proceeding and the filing costs to recommence that proceeding. Defendant argues that the former should not be reimbursed because plaintiff has failed to submit invoices to substantiate these costs, and that the latter should not be repaid because he views the decision to recommence the proceeding as attorney error. (Wachtler Aff. ¶¶ 31, 42). Defendant also objects to paying electronic research fees for research that he characterizes as duplicative. (Id. at ¶ 30).

We recommend that plaintiff be reimbursed for all of its counsel's disbursements on its behalf. Requests for reimbursement of disbursements generally must be substantiated by invoices documenting counsel's expenditures. However, invoices submitted by the attorney to the client, as opposed to invoices from the vendor or other recipient of the funds to the law firm, can suffice. See Melnick, 2009 WL 2824586, at * 10; Jacobson v. Action Elevator, Inc., 2007 WL 1029593, * 7 (E.D.N.Y. Mar. 30, 2007). Here plaintiff's bills specifically itemize the disbursements made on

77

its behalf, and we have no reason to question the veracity of the figures cited. Furthermore, having recommended that plaintiff be reimbursed for its attorneys' fees in connection with the recommencement of the Bronx Civil Court proceeding, we also recommend that the disbursements relating to that effort be reimbursed. Finally, we note that electronic research charges can be included in fee awards, so long as it "is clear that counsel regularly charge paying clients separately for them." Rozell, 576 F. Supp. 2d at 547. Plaintiff's attorneys regularly bill their clients for online research costs. (Pl.'s Reply Mem. at 15; Kushnick Reply Aff. at ¶ 76). In this case we do not consider the charges to reflect duplicative research, and recommend that they be included in the award. Therefore, we recommend that plaintiff be awarded $7,806.72 in disbursements made on its behalf. (See Kushnick Jan. 22, 2009 Aff. at Ex. E, PL 0615 & Ex. G at p. 2).

### D. Pre-judgment interest

Plaintiff also seeks an award of pre-judgment interest. (Kushnick Reply Aff. at ¶ 90). Under New York law, pre-judgment interest is recoverable in breach-of-contract actions. Trinity Biotech, Inc. v. Reidy, __ F. Supp. 2d. __, 2009 WL 3294815, * 6 (S.D.N.Y. Oct. 13, 2009) (citing Graham v. James, 144 F.3d 229, 239

(2d Cir. 1998)). The interest is calculated from the date of the breach. Id. (citing N.Y.C.P.L.R. § 5001 (McKinney's 2007)). The rate of interest is set by statute at 9%, unless a contrary rate is specified in the contract. Id. (citing N.Y.C.P.L.R. § 5004). In this case, although the lease defines the term "interest rate" as used in the lease (Levine July 31, 2008 Aff., Ex. E at Main Lease ¶ 1.01), it does not specify a rate for the calculation of pre-judgment interest. Therefore, we recommend that plaintiff be awarded 9% interest on its award of damages and attorneys' fees from October 1, 2007 -- the date from which SSSR ceased making rent payments -- through the date of judgment.[33]

<u>Conclusion</u>

We recommend that plaintiff be awarded $180,709.90 in damages, subject to further reduction by any interest that has accrued on plaintiff's security deposit beyond the principal amount of $26,000.00. We also recommend that plaintiff be awarded $81,061.75 in attorneys' fees and $7,806.72 in disbursements. Finally, we recommend that this total amount of $269,578.37 be subject to an award of pre-judgment interest at the rate of 9% per year from

---

[33] The pre-judgment interest calculated through the end of December 2009 amounts to $52,648.66.

October 1, 2007 through the date of judgment.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Fed. R. Civ. P. 72(b)(2) (2009); see also Fed. R. Civ. P. 6(a), 6(d); 28 U.S.C. § 636(b)(1). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable William H. Pauley, Room 2210, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Thomas v. Arn, 470 U.S. 140, 150-55 (1985), reh'g denied, 474 U.S. 1111 (1986).

**DATED: New York, New York**
**December 30, 2009**

**RESPECTFULLY SUBMITTED,**

**MICHAEL H. DOLINGER**
**UNITED STATED MAGISTRATE JUDGE**

80

Copies of the foregoing Report and Recommendation have been
mailed this date to:

Heath Brian Kushnick, Esq.
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166

Lauren J. Wachtler, Esq.
Mitchell Silberberg & Knupp, LLP
12 E. 49th Street
New York, NY 10017